UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  | x |  |
|---|---|---|
| IN RE NINE WEST LBO SECURITIES | : | 20-MD-2941 (JSR) |
| LITIGATION | : |  |
|  | : |  |
| Pertains to All Associated Actions | : |  |
|  | x |  |

## STATUS REPORT OF SHAREHOLDER DEFENDANTS

Ropes & Gray LLP ("Ropes & Gray"), on behalf of its clients and with support of the vast majority of the shareholder defendants represented by counsel in these proceedings,[1] respectfully submits this Status Report in response to the Court's June 4, 2020 order and in advance of the telephonic conference scheduled for June 12, 2020.

## I.      STATUS OF THE ACTIONS.

This MDL proceeding includes thirteen substantively identical actions that were originally filed by Marc S. Kirschner, as Trustee for the NWHI Litigation Trust (the "Litigation Trustee") and Wilmington Savings Fund Society, FSB (the "Indenture Trustee" and, together with the Litigation Trustee, the "Plaintiffs"), in six federal district courts asserting constructive and intentional fraudulent conveyance claims (and, in certain of the actions, breach of fiduciary duty and related claims) arising out of the 2014 acquisition (the "Merger") of the New York-based, publicly-traded fashion company The Jones Group Inc. ("Jones Group" or the "Company"), and

---

[1]    A list of defendants represented by Ropes & Gray LLP in these actions is included in the signature block hereto.  Clients of Ropes & Gray LLP are alleged to have received approximately $228 million in merger proceeds, representing 40% percent of the total fraudulent conveyance exposure in the Actions (these figures do not include the four actions filed in New York on June 5, 2020).  Ropes & Gray LLP has been coordinating with all shareholder defendants who have appeared in these cases, and the vast majority of the shareholder defendants represented by other counsel agree with the positions set forth in this Status Report, and none have expressed any disagreement.

the subsequent 2018 bankruptcy of Jones Group's successor, Nine West Holdings, Inc. ("Nine West"). Two additional substantively identical actions later filed by Plaintiffs in the Central District of California, which were designated by Plaintiffs as tag-along actions before the United States Judicial Panel on Multidistrict Litigation (the "Panel"), are also subject to the Panel's conditional transfer order dated June 4, 2020 (together with the other thirteen actions, the "Actions"). (*See* MDL No. 2941 (hereinafter, "MDL Dkt"), Dkt No. 198.) [2]

The Actions collectively name a total of approximately 200 defendants, all but ten of which are named solely in their capacities as alleged former public shareholders of Jones Group (collectively, the "Shareholder Defendants"). The Actions seek to avoid and recover, as alleged fraudulent conveyances, approximately $550 million in total payments made to former public shareholders in connection with the Merger. Certain of the Actions also allege breach of fiduciary duty and related claims against ten former officers and directors of Jones Group (the "Director and Officer Defendants").

---

[2]    Five of the Actions were filed in the Central District of California; four were filed in the District of Massachusetts; two were filed in each of the Northern District of Illinois and the Southern District of Florida; and one was filed in each of the District of New Jersey and the Northern District of Texas. The original case captions of the Actions are as follows: *Kirschner v. Dickson, et al.*, C.D. Cal., Case No. 2:20-cv-01480; *Wilmington Savings Fund Society, FSB v. Dickson, et al.*, C.D. Cal., Case No. 2:20-cv-01484; *Kirschner, et al. v. Los Angeles Capital Management & Equity Research Inc., et al.,* C.D. Cal., Case No. 2:20-cv-01922; *Kirschner, et al. v. Robeco Capital Growth Funds,* C.D. Cal., Case No. 2:20-cv-03168; *Kirschner, et al. v. Schwab Capital Trust*, C.D. Cal., Case No. 2:20-cv-03169; *Kirschner v. Cade, et al.,* S.D. Fla., Case No. 0:20-cv-60343; *Wilmington Savings Fund Society, FSB v. Cade, et al.,* S.D. Fla., Case No. 0:20-cv-60344; *Kirschner v. Georgiadis, et al.*, N.D. Ill., Case No. 1:20-cv-01129; *Wilmington Savings Fund Society, FSB v. Georgiadis, et al.*, N.D. Ill., Case No. 1:20-cv-01136; *Wilmington Savings Fund Society, FSB v. Card, et al.*, D. Mass., Case No. 1:20-cv-10286; *Kirschner v. Card, et al.*, D. Mass., Case No. 1:20-cv-10288; *Kirschner v. Card, et al.,* D. Mass., Case No. 1:20-cv-10396; *Wilmington Savings Fund Society, FSB v. Card, et al.*, D. Mass., Case No. 1:20-cv-10398; *Kirschner, et al. v. McClain, et al.,* D.N.J., Case No. 2:20-cv-01768; *Kirschner, et al. v. DFA Investment Dimensions Group Inc. U.S. Core Equity 1 Portfolio, et al.,* N.D. Tex., Case No. 3:20-cv-00374.

On March 30, 2020, Plaintiffs filed a motion before the Panel seeking to consolidate the Actions that had been filed as of that date and to transfer them for pretrial purposes to the District of Massachusetts (the "Motion to Transfer").  (MDL Dkt. No. 1).  As Plaintiffs readily admitted to the Panel, in lieu of filing a single action in the Southern District of New York utilizing the nationwide personal jurisdiction provisions of Bankruptcy Rule 7004(d), Plaintiffs instead filed multiple actions across the country and sought consolidation in the District of Massachusetts— intentionally omitting any action within the Second Circuit—to attempt to avoid application of the Second Circuit's controlling decision in *In re Tribune Co. Fraudulent Conveyance Litig.,* 946 F.3d 66 (2d Cir. 2019).  (*See* MDL Dkt. No. 196 (hereinafter, "Transfer Order") at 1 ("Plaintiffs, at oral argument, readily agreed" that they "ha[d] not sued entities and individuals in New York to avoid unfavorable Second Circuit precedent [in *Tribune*] regarding the 'safe harbor' in Bankruptcy Code Section 546(e).").)[3]

The *Tribune* decision, which addressed virtually identical claims against public shareholders, held that the safe harbor of Section 546(e) of the Bankruptcy Code precluded the constructive fraudulent transfer claims asserted in those cases.  Importantly, unlike in *Tribune*, the safe harbor would preclude *both* the constructive *and intentional* fraudulent transfer claims asserted in these Actions, thus barring *all* claims asserted against the public shareholders.[4]

---

[3]    Plaintiffs were well aware that *Tribune* controls in this case and is dispositive of all claims against the Shareholder Defendants.  The Actions here are brought by the same litigation trustee, using the same law firm as lead counsel, and an indenture trustee directed by the same principal hedge fund bondholder beneficiaries, as in *Tribune*.

[4]    The safe harbor of Section 546(e) applies to all fraudulent transfer claims, with the sole exception of intentional fraudulent transfer claims brought under Bankruptcy Code Section 548(a)(1)(A).  *See* 11 U.S.C. § 546(e).  The Litigation Trustee in these actions, however, is unable to assert intentional fraudulent transfer claims under Bankruptcy Code Section 548(a)(1)(A) because the transfers at issue were made more than two years prior to the bankruptcy.  As a result, the Litigation Trustee only asserts fraudulent transfer claims utilizing

On June 2, 2020, the Panel issued an order transferring the Actions that were the subject of the Motion to Transfer to this Court for coordinated or consolidated pretrial proceedings. (*See* Transfer Order.)  The Panel recognized the centrality of New York to the litigation, and saw Plaintiffs' attempt to transfer the cases to the District of Massachusetts for what it was:  a blatant attempt to forum shop and avoid unfavorable controlling precedent.

Further confirming their gamesmanship, following transfer to this Court, on June 5, 2020, Plaintiffs filed four additional complaints in this Court against approximately 180 new defendants naming, for the first time, allegedly New York-based former shareholders (and officers and directors) of Jones Group as defendants.[5]  Two of those complaints were filed electronically, and were consolidated into this MDL proceeding pursuant to this Court's order dated June 9, 2020. *See Kirschner, et al. v. Kimmel, et al.*, S.D.N.Y., Case No. 20-04287 (filed June 5, 2020) and *Kirschner v. AQR Funds*, S.D.N.Y., Case No. 20-04289 (filed June 5, 2020).

Shareholder Defendants understand that the other two actions were filed manually because certain information in the complaints is subject to confidentiality orders; as a result, those complaints are not yet available via the Court's ECF system.  *See Kirschner, et al. v. Advisors Series Trust (Kellner Merger Fund)*, S.D.N.Y., Case No. 20-cv-____ (filed June 5, 2020); *Kirschner*

---

the provisions of Bankruptcy Code Section 544.  The safe harbor defense applies to all fraudulent transfer claims—both intentional and constructive—brought under Section 544 by the Litigation Trustee.  *See id.* ("Notwithstanding section[] 544 . . . the trustee may not avoid . . . .").

[5]  Remarkably, all four of these new cases include fraudulent transfer claims by the Litigation Trustee against public shareholders that are unquestionably time-barred under 11 U.S.C. § 546(a).  Section 546(a) requires all fraudulent transfer claims by a bankruptcy trustee (including the Litigation Trustee here) to be commenced before the earlier of (i) two years after the underlying bankruptcy, and (ii) the time the case is closed.  The new actions were filed more than two years after the underlying April 6, 2018 bankruptcy filing, and were also filed after the chapter 11 cases were closed, rending the claims time-barred.

*v. Voya Russell Small Cap Index Portfolio*, S.D.N.Y., No. 20-cv-___ (filed June 5, 2020). These two manually filed cases have not yet been consolidated with the Actions. With respect to the four newly filed actions, no counsel has yet appeared for any of the defendants, and Plaintiffs have indicated that none of the more than 180 new defendants have been served yet.

As the Panel noted in transferring the Actions to this Court, "there has been no significant activity in any action." (Transfer Order at 2.) While the Motion to Transfer was pending, Plaintiffs and numerous defendants filed joint motions for partial stays, which were granted in each of the Actions. Pursuant to the partial stays ordered in each Action, all deadlines to respond to the complaints, engage in conferences pursuant to Rules 16(b) or 26(f), submit joint scheduling reports or elections to jurisdiction by a magistrate judge, or make initial disclosures pursuant to Rule 26(a)(1), were stayed until June 30, 2020. To date, just one of the approximately 200 defendants in the Actions has filed a responsive pleading, no court conferences have taken place, and discovery has yet to commence.

Ropes & Gray, certain counsel to other Shareholder Defendants, and counsel to the D&O Defendants engaged in a telephonic conference with counsel to Plaintiffs on June 9, 2020, during which the parties discussed scheduling and case management matters. In addition, shortly after the telephonic conference, Plaintiffs circulated a draft Case Management Order ("CMO"). Shareholder Defendants are generally in agreement with the various administrative issues raised in the draft CMO but, as addressed further below, do not agree with Plaintiffs' position on the scope of motions to dismiss.

## II.    PROPOSED MATTERS FOR CONSIDERATION AT THE JUNE 12, 2020 CONFERENCE.

### A.    Scope of Motions To Dismiss

The Shareholder Defendants intend to move to dismiss all of the claims asserted against them as barred by the "safe harbor" in Bankruptcy Code Section 546(e), as the Second Circuit held under identical circumstances in *Tribune,* 946 F.3d 66.  The safe harbor precludes all fraudulent conveyance claims—except claims under Section 548(a)(1)(A), which are not at issue here— brought to avoid transfers made by or to a "financial institution."  11 U.S.C. §§ 101(22), 546(e).  In *Tribune*, the Second Circuit concluded based solely on a pleading stage record that the Tribune Company, as the transferor, qualified as a "financial institution" within the meaning of Section 546(e) because it was a "customer" of a financial institution (Computershare Trust Company) that, in its capacity as a depositary and paying agent in the LBO, was acting as Tribune's agent.  946 F.3d at 78-80; *see also In re Tribune Co. Fraudulent Conveyance Litig.*, 2019 WL 1771786, at *9-11 (S.D.N.Y. Apr. 23, 2019) (DLC) (Judge Cote denying motion for leave to amend complaint filed by one of the Plaintiffs here in a separate fraudulent transfer suit arising out of Tribune's leveraged buyout and subsequent bankruptcy, because Section 546(e) safe harbor would render the claim futile for the same reasons).  As such, the safe harbor insulated the payments to all Tribune's public shareholders from state law fraudulent conveyance claims.  946 F.3d at 97.  The exact same reasoning applies to—and forecloses—all of the fraudulent conveyance claims asserted against the Shareholder Defendants in these Actions because, for all relevant purposes, the payments to shareholders were made in the same manner as in *Tribune*, with Wells Fargo Bank, N.A., acting as the depositary and paying agent instead of Computershare.

Accordingly, with respect to the claims against the Shareholder Defendants, the Shareholder Defendants respectfully request that the Court set a schedule to brief motions to

dismiss in the Actions that solely address the safe harbor defense, with all other dismissal arguments reserved. Requiring the parties to brief other grounds for dismissal in the first instance, such as statute of limitations, personal jurisdiction, or arguments that a defendant is not an existing legal entity that can be sued, among many others that would apply piecemeal to individual or subgroups of Shareholder Defendants, would be inefficient for the parties and the Court given the number of parties and potential defenses, and the fact that application of the safe harbor defense is governed by controlling Second Circuit precedent and would be dispositive of all claims asserted against the public shareholders. In the *Tribune* case, even before there was binding circuit precedent, motions to dismiss were similarly bifurcated with phase one motions addressing solely the safe harbor defense. Master Case Order No. 3, *In re Tribune Company Fraudulent Conveyance Litig.*, Case No. 11-MD-2296 (S.D.N.Y.), Dkt. No. 1395 at 10-12.

During the parties' June 9, 2020 conference (and in their draft CMO), Plaintiffs propose that only motions to dismiss by the D&O Defendants should proceed, and that any motions to dismiss by the Shareholder Defendants should be deferred indefinitely until the United States Supreme Court acts on a yet-to-be-filed petition for certiorari in *Tribune*. Tellingly, Plaintiffs' proposal—and their efforts through the MDL process to evade the Second Circuit—recognize that *Tribune* is binding precedent in this Circuit and disposes of all claims against public shareholders. Precisely for that reason, motions to dismiss based on the safe harbor should be briefed and decided first. There is no basis to delay resolution of these claims when there is binding precedent in this Circuit and no petition for certiorari has even been filed with, let alone accepted by, the Supreme

Court.[6]   Plaintiffs' proper remedy is to seek appeal following dismissal, not to keep these cases and shareholder defendants in indefinite limbo.

### B.    Requested Stay of Discovery

The Shareholder Defendants respectfully submit that all discovery should be stayed in these Actions pending resolution of their motion to dismiss under the Section 546(e) safe harbor. The Shareholder Defendants are unquestionably innocent, public company shareholders that had no involvement in the transactions at issue aside from receiving merger proceeds.  Thus, while the shareholders would not themselves be subjected to any meaningful fact discovery, to properly defend these allegations in the unlikely event the claims against shareholders survive a motion to dismiss, the shareholders would need to be extensively involved in any fact discovery directed at other parties and third parties, as well as any expert discovery, including by participating in discovery from advisors in the transactions, among others, and obtaining experts to address solvency and other issues.

The Shareholder Defendants are in a unique position in these cases.  Unlike Plaintiffs (who have access to vast amounts of discovery taken by the creditors committee in the bankruptcy) and the director and officer defendants (who were involved in the transactions), as a general matter the

---

[6]   Plaintiffs admitted in briefing before the MDL Panel that *Tribune* is the only circuit-level precedent addressing the safe harbor's application to state-law fraudulent conveyance claims like those brought here against former public company shareholders.  (MDL Dkt. 159 at 14.) Any suggestion that the Supreme Court would grant a petition for certiorari in *Tribune* (if one is filed), in the absence of a circuit split over the application of the safe harbor, is called into further question by the Supreme Court's prior (and unprecedented) statement that "there might not be a quorum in this Court" to hear the appeal.  *Deutsche Bank Trust Co. Americas v. Robert R. McCormick Foundation*, 138 S. Ct. 1162, 1163 (2018) (citing 28 U.S.C. § 2109).  That statement caused the Second Circuit to recall its mandate, and resulted in the Second Circuit again affirming dismissal of claims against public shareholders under the safe harbor.  *Tribune*, 946 F.3d at 97.  In the absence of a quorum in the Supreme Court to hear a petition for certiorari, the Second Circuit's decision is required to be affirmed.  *See* 28 U.S.C. § 2109.

Shareholder Defendants have no familiarity with these Actions, the allegations, or the transactions at issue, beyond what is alleged in the complaints. Thus, if discovery were to proceed before their motion to dismiss under the safe harbor was determined, the Shareholder Defendants would be required to incur very significant litigation expenses when they properly believe they have a meritorious motion to dismiss under binding circuit precedent. This is a particularly untenable position in these unique circumstances of claims against public shareholders. For example, the largest Shareholder Defendants are mutual funds that received merger proceeds six years ago; there is typically a high degree of turnover of investors in any given mutual fund; and there has unquestionably been significant turnover after six years. Thus, significant litigation costs in these cases would be borne by mutual fund investors that received no benefit from the merger proceeds. These circumstances not only underscore the importance of the safe harbor, but also the unique burden that would be imposed on Shareholder Defendants if discovery were to proceed at this stage. Indeed, even in the then-absence of controlling circuit precedent, discovery in the *Tribune* cases was stayed pending the shareholders' successful motion to dismiss under the safe harbor. *See* Master Case Order No. 3, *In re Tribune Company Fraudulent Conveyance Litig.*, Case No. 11-MD-2296 (S.D.N.Y.), Dkt. No. 1395 at 10-12, 26 (bifurcating motions to dismiss and staying discovery in the same manner as requested here). The Shareholder Defendants respectfully request that discovery in these Actions be similarly stayed.

As noted above, plaintiffs seek to have any motion to dismiss by the Shareholder Defendants be indefinitely stayed pending a potential, yet-to-be-filed petition for certiorari in Tribune. As an apparent fallback position, during the parties' June 9, 2020 telephonic conference, Plaintiffs indicated their view that discovery would be required prior to any motion to dismiss on the safe harbor. Specifically, Plaintiffs indicated that discovery would be necessary to determine

if Wells Fargo Bank, N.A., which acted as the "depositary" and "paying agent" in the transaction for the payments made to public shareholders, acted as an "agent" for Nine West in the transaction. Wells Fargo's role as agent for Nine West is the reason why Nine West comes within the definition of "financial institution" under 11 U.S.C. § 101(22)(A), which in turn triggers application of the safe harbor to the entire transaction.

Both the Second Circuit and (in a separate but related action) Judge Cote considered, and rejected, exactly the same arguments in *Tribune*—arguments which were made by the same litigation trustee, using the same counsel, as in these cases. There, the Second Circuit held that Computershare's paying agent agreement with Tribune was properly considered at the pleading stage, and established that Computershare was Tribune's agent for purposes of the safe harbor defense. *See Tribune*, 946 F.3d at 78-80. In so ruling, the Second Circuit rejected the *Tribune* plaintiffs' arguments that the existence of an agency relationship presented factual disputes that could not be resolved absent remand, holding that plaintiffs did "not present a factual dispute about the content or accuracy of th[e] [agent agreements]; instead, [they] only challenge[d] the legal significance of the documents, raising a pure question of law." *Id.* at 75. Judge Cote also reached the same conclusion in a separate, but related action, holding that the complaint, "when read in combination with documents that are either judicially noticeable or are integral to the complaint, establish[ed] that [Computershare] was acting as Tribune's agent" for purposes of the safe harbor. *See Tribune*, 2019 WL 1771786, 11. In short, both the Second Circuit and Judge Cote have rejected the argument that the role of a paying agent is a factual issue not ripe to be determined on the pleadings, the exact same argument the Plaintiffs seek to reassert in these cases.[7]

---

[7]    Plaintiffs' efforts to create a factual dispute around the role of Wells Fargo as paying agent in the transaction does nothing to save their fraudulent transfer claims against mutual funds registered under the Investment Act of 1940, which comprise among the largest shareholder

Likewise, here, the Shareholder Defendants will demonstrate in their forthcoming motions to dismiss that the safe harbor bars Plaintiffs' fraudulent conveyance claims at the pleading stage. Plaintiffs' efforts to create factual issues (where there are none) to delay motions to dismiss—all in the hope that the Supreme Court changes controlling Second Circuit law in the interim—should be rejected.

### C.    Schedule For Motions To Dismiss

Shareholder Defendants are amenable to Plaintiffs' proposal concerning the time for the defendants to respond to the complaints, namely the later of (i) 21 days after service, or (ii) July 31, 2020. Such a schedule will facilitate a coordinated motion to dismiss on the safe harbor by current Shareholder Defendants in the Actions, and the approximately 180 new shareholder defendants that were recently named in actions filed just last week. Shareholder Defendants have conferred with counsel to the D&O Defendants, and propose that the following briefing schedule govern the first phase of motions to dismiss:

- Defendants shall file motions to dismiss based on the safe harbor under 11 U.S.C. § 546(e), as well as any motions by D&O Defendants directed to the claims against them for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, violation of Title 15, Sections 1551 and 1553 of the Pennsylvania Statutes, and unjust enrichment, with coordinated briefing to the extent practicable, by July 31, 2020. Any defendant with a response deadline after such date due to delays in service may file a joinder, or separate brief, on or before that defendant's response deadline.

- Plaintiffs shall file a single, consolidated opposition no later than 45 days after the filing of motions to dismiss and, with respect to any separate briefs filed by defendants after July 31 as set forth above, within 15 days after the filing of such separate briefs, which later oppositions shall only address arguments not previously addressed in Plaintiffs' earlier-filed consolidated opposition.

---

defendants in these cases. This is because '40 Act mutual funds separately qualify as "financial institutions" under 11 U.S.C. § 101(22)(B). Similarly, other defendants may separately qualify as "financial institutions" or "financial participants."

- Defendants shall file replies, with coordinated briefing to the extent practicable, no later than 30 days after the filing of the consolidated opposition and, with respect to any oppositions filed after plaintiffs' consolidated opposition, within 15 days of such oppositions.

### D.   Liaison Counsel to the Shareholder Defendants

Finally, Ropes & Gray agrees to serve as interim liaison counsel for shareholder defendants, pending final designation of liaison counsel after additional time is provided for the approximately 180 new shareholder defendants to be served.[8]   Clients of Ropes & Gray are alleged to have received approximately $228 million in merger proceeds, representing 40% percent of the total fraudulent conveyance exposure in the Actions, which is the largest group of Shareholder Defendants by exposure in these Actions (these figures exclude the newly filed actions).   Since these cases were filed, Ropes & Gray has been coordinating with all Shareholder Defendants that have appeared.   For example, Ropes & Gray already maintains a distribution email address that includes counsel to all Shareholder Defendants that have appeared, prepared the joint response to the Motion to Transfer, which the vast majority of Shareholder Defendants joined, and was designated by shareholders to present oral argument on behalf of the Shareholder Defendants at the Panel's May 28, 2020 hearing session.   Ropes & Gray also has experience in similar circumstances, having served as liaison counsel to the shareholder defendants in the *Tribune* litigation.   Ropes & Gray has conferred with counsel to the vast majority of the Shareholder Defendants and they support Ropes & Gray serving as interim liaison counsel, with none indicating any dissent.   Shareholder Defendants are in general agreement that deferring final appointment of

---

[8]   For the avoidance of doubt, Ropes & Gray acting as liaison counsel would not create any professional, ethical, fiduciary, or attorney-client relationship between Ropes & Gray and any Shareholder Defendants other than Ropes & Gray's own clients.  All Shareholder Defendants would continue to be represented, in all respects, by counsel that have appeared on their behalves in these Actions.

liaison counsel to provide additional time for the approximately 180 new shareholder defendants to be served is appropriate.

The Shareholder Defendants welcome the opportunity to discuss these matters with Your Honor at the June 12, 2020 conference.

Dated: June 10, 2020

Respectfully submitted,

*/s/ Gregg L. Weiner*
Gregg L. Weiner
Andrew G. Devore
Adam M. Harris
Christian Reigstad
Ani-Rae Lovell
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
(212) 596-9000
gregg.weiner@ropesgray.com
andrew.devore@ropesgray.com
adam.harris@ropesgray.com

*Counsel for Defendants identified as Blackrock MSCI USA Small Cap Equity Index Fund; Brighthouse Funds Trust II f/k/a Brighthouse Funds Trust Met-Series; Columbia Management Investment Advisers LLC; Columbia Multimanager Alternative Strategies Fund; Diversified Alpha Group Trust; DWS Investment Management Americas, Inc. f/k/a Deutsche Asset Management; DWS Small Cap Index VIP; Extended Equity Market Fund a/k/a Blackrock Institutional Trust Company, N.A. Extended Equity Market Fund; Extended Equity Market Master Fund B; FIAM LLC a/k/a Fidelity Institutional Asset Management f/k/a Pyramis Global Advisors; Fidelity Asset Allocation Currency Neutral Private Pool; Fidelity Asset Allocation Private Pool; Fidelity Balanced Currency Neutral Private Pool; Fidelity Balanced Income*

-13-

*Currency Neutral Private Pool; Fidelity Balanced Income Private Pool; Fidelity Balanced Private Pool; Fidelity Concord Street Trust - Fidelity Extended Market Index Fund; Fidelity Concord Street Trust - Fidelity Total Market Index Fund; Fidelity Income Allocation Fund f/k/a Fidelity Monthly High Income Fund; Fidelity Investments; Fidelity Investments Charitable Gift Fund; Fidelity Monthly Income Fund; Fidelity Northstar Fund; Fidelity Small Cap Index Fund; Fidelity Total Market Index Fund; FlexShares Morningstar US Market Factor Tilt Index Fund; Geode Diversified Fund, a Segregated Account of Geode Capital Master Fund Ltd. f/k/a GDF1,a Segregated Account of Geode Capital Master Fund Ltd.; iShares Europe; iShares Morningstar Small-Cap Value ETF; iShares MSCI USA Small Cap UCITS ETF; iShares Russell 2000 ETF; iShares Russell 2000 Value ETF; iShares Russell 3000 ETF; JNL/DFA U.S. Small Cap Fund c/o Jackson National Asset Management LLC; Master Small Cap Index Series of Quantitative Master Series LLC a/k/a iShares Russell 2000; MSCI U.S. IMI Index Fund B2 a/k/a Blackrock MSCI U.S. IMI Index Fund B2; Northern Small Cap Core Fund; Northern Small Cap Value Fund; Northern Small Cap Index Fund; Pacific Select Fund – PD Small-Cap Value Index Portfolio; Pacific Select Fund – Small-Cap Equity Portfolio; Pacific Select Fund – Small-Cap Index Portfolio; Pentwater Capital Management LP; Russell 2000 Alpha Tilts Fund B; Russell 2000 Index Fund; Russell 2000 Index Non-Lendable Fund a/k/a Blackrock Russell 2000 Index Non-Lendable Fund; Russell 2000 Value Fund B; Russell 2500 Index Fund a/k/a iShares Russell Small/Mid-Cap Index Fund; Russell 3000 Index Fund a/k/a*

-15-

*iShares Total U.S. Stock Market Index Fund; Russell 3000 Index Non-Lendable Fund; Small-Cap Index Fund; U.S. Equity Market Fund; U.S. Equity Market Fund B*