UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: NINE WEST LBO SECURITIES LITIGATION | ) ) ) | No. 20-MD-2941 (JSR) |
| Pertains to All Associated Actions | ) ) ) | **PLAINTIFFS' STATUS REPORT** |

Plaintiffs Marc S. Kirschner, as Trustee (the "Litigation Trustee") for the NWHI

Litigation Trust (the "Litigation Trust"), and Wilmington Savings Fund Society, FSB, as

successor indenture trustee (the "Indenture Trustee") for the 6.875% Senior Notes due 2019, the

8.25% Senior Notes due 2019, and the 6.125% Senior Notes due 2034 of Nine West Holdings,

Inc., submit this Status Report in accordance with this Court's order dated June 4, 2020 (ECF

No. 2) to apprise the Court of where each of the cases that is, or shortly will be, part of MDL No.

2941 stands, and what Plaintiffs' counsel would like to have considered at the conference the

Court has scheduled for June 12, 2020.

### Background of These Proceedings

The *Nine West LBO Securities Litigation* arises out of an integrated series of

transactions (collectively, the "2014 Transaction") on April 8, 2014 that rendered the fashion

company The Jones Group Inc. ("Jones Group" or the "Company") insolvent.  The 2014

Transaction significantly increased the Company's debt, significantly decreased its assets,

distributed more than $1 billion to its shareholders, and rewarded its directors, officers, and other

employees with change-of-control payments and other substantial consideration—all to the

detriment of the Company and its creditors.  In the 2014 Transaction, Jones Group:

- merged with a shell company that was an affiliate of private equity sponsor
  Sycamore Partners Management, L.P. (together with its principals and certain
  affiliates, "Sycamore");

3521899.5

- sold off its "crown jewel" business units to other affiliates of Sycamore for a fraction of their value;

- saddled the much-diminished remaining company, renamed Nine West Holdings, Inc. ("NWHI"), with more than $1.5 billion in debt which could not be repaid; and

- distributed approximately $1.2 billion to its shareholders.

NWHI ultimately filed for bankruptcy on April 6, 2018 in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), inflicting hundreds of millions of dollars of losses on its unsecured creditors. *See In re: Nine West Holdings, Inc.*, No. 18-10947 (SCC) (Bankr. S.D.N.Y.).

In the actions that comprise MDL No. 2941, the Litigation Trust seeks to recover damages from Jones Group directors and officers for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and other causes of action, and the Litigation Trust and the Indenture Trustee seek as well to recover the cash distributed to Jones Group shareholders and to certain Jones Group officers and employees as fraudulent conveyances. These claims seek to vindicate the fundamental principles of law that (i) directors and officers of a corporation breach their fiduciary duties when they implement a transaction that renders the corporation insolvent, while enriching themselves and their fellow shareholders; and (ii) the shareholders of a corporation, as its owners, assume the primary risk of the corporation's failure, and thus when the corporation becomes insolvent, the shareholders should be paid only *after* the corporation's creditors are paid, not before, as was the case here.

In its order confirming NWHI's plan of reorganization, and in a subsequent order lifting the automatic stay, the Bankruptcy Court authorized the Litigation Trust and the Indenture Trustee to bring these actions. Commencing on February 13, 2020, Plaintiffs, either jointly or separately, sued nearly 200 of Jones Group's former directors, officers, and shareholders in 15

2

3521899.5

actions in the federal courts in Massachusetts, California, Texas, New Jersey, Illinois, and Florida, where those defendants reside or have their principal place of business.  Plaintiffs then moved the United States Judicial Panel on Multidistrict Litigation (the "Panel") to centralize those actions in the District of Massachusetts.  The defendants favored centralization in the Southern District of New York, arguing that Jones Group and NWHI had been headquartered there and that many potential witnesses may be located there.  The defendants also observed that some former Jones Group directors, and many former Jones Group shareholders, that had not been sued were located in New York.

The Panel agreed with the defendants and on June 2, 2020 ordered the 13 actions that were the subject of the transfer motion transferred to this Court for coordinated or consolidated pretrial proceedings.  Two related actions were the subject of a conditional transfer order entered on June 3, 2020.  This Court consolidated the original 13 actions in its June 4 order.  At the time of transfer, the transferor courts in each of the actions had entered orders partially staying the actions, which included an extension until June 30, 2020 of the defendants' time to answer, move, or otherwise respond to the complaints.

After the Panel's transfer order was entered, Plaintiffs filed four actions in this Court on June 5, 2020 against 180 additional defendants, almost half of which are located in New York.  These additional defendants include the remaining former directors of Jones Group as well as shareholders located in New York, Connecticut, Pennsylvania, and other states.  These claims are timely because the statutes of limitations applicable them have been tolled by Executive Orders issued by New York's Governor on March 7, April 7, May 7, and June 6, 2020.  Service of these additional defendants, which will be done by mail pursuant to Bankruptcy Rule 7004, is expected to commence within the next week.

3

As of the filing of this Report, the following actions are, or shortly will be, part of MDL 2941:

| SDNY Docket No. | Short Caption | Number of Defendants |
|---|---|---|
| 20-cv-4262 | Kirschner, et al. v. McClain, et al. | 31 |
| 20-cv-4265 | Kirschner v. Cade, et al. | 9 |
| 20-cv-4267 | Wilmington Savings Fund Society, FSB v. Cade, et al. | 8 |
| 20-cv-4287 | Kirschner, et al. v. Kimmel, et al. | 123 |
| 20-cv-4289 | Kirschner v. AQR Funds (AQR Diversified Arbitrage Fund) | 1 |
| 20-cv-4299 | Kirschner, et al. v. DFA Investment Dimensions Group Inc. U.S. Core Equity 1 Portfolio, et al. | 28 |
| 20-cv-4335 | Wilmington Savings Fund Society, FSB v. Card, et al. | 40 |
| 20-cv-4346 | Kirschner v. Card, et al. | 57 |
| 20-cv-4360 | Kirschner v. Card, et al. | 31 |
| 20-cv-4404 | Wilmington Savings Fund Society, FSB v. Card, et al. | 17 |
| | Kirschner v. Dickson, et al. | 44 |
| | Wilmington Savings Fund Society, FSB v. Dickson, et al. | 20 |
| | Kirschner, et al. v. Los Angeles Capital Management & Equity Research Inc., et al. | 5 |
| | Kirschner v. Georgiadis, et al. | 13 |
| | Wilmington Savings Fund Society, FSB v. Georgiadis, et al. | 12 |
| | Kirchner, et al. v. Advisors Series Trust (Kellner Merger Fund), et al. | 48 |
| | Kirchner v. Voya Russell Small Cap Index Portfolio, et al. | 8 |
| | Kirschner, et al. v. Robeco Capital Growth Funds – Robeco BP US Premium Equities | 1 |
| | Kirschner, et al. v. Schwab Capital Trust | 1 |

Prior to transfer, and after certain issues concerning confidentiality were resolved, Plaintiffs moved to voluntarily dismiss without prejudice two of the *Card* actions (Nos. 20-cv-4360 and 20-cv-4404) as duplicative of earlier-filed actions (Nos. 20-cv-4335 and 20-cv-4346), so there are in total 17 unique actions. In addition, because certain defendants are sued in separate actions brought by the Litigation Trust and the Indenture Trustee, there are in total 369 unique defendants.

Due to confidentiality designations made by certain parties under a confidentiality order issued by the Bankruptcy Court during the NWHI bankruptcy, the filings of the *Advisors*

4

*Series Trust* and *Voya* actions were accompanied by motions to seal the complaints and to redact certain defendant names and transfer amounts, pending resolution of the confidentiality designations that currently apply to them. As outlined in the motions, this sealing and redaction is expected to be temporary, as essentially identical confidentiality issues relating to the previously-filed cases were expeditiously resolved through agreement or through a de-designation order of the Bankruptcy Court.

Aside from orders in response to motions to seal and unseal, to extend time, and to partially stay proceedings, there have been no rulings in any of the actions. Only one defendant (Blue Shield of California) has filed an answer (in former N.D. Cal. No. 20-1480). Two defendants (PanAgora Asset Management Inc. in Nos. 20-cv-4335, 20-cv- 4346, 20-cv-4360, and 20-cv-4404, and Los Angeles Capital Management & Equity Research Inc. in former N.D. Cal. No. 20-1922) have been dismissed without prejudice.

The Litigation Trust and the Indenture Trustee are represented by the same counsel. At the time of the Panel's ruling, all of the former Jones Group directors who were then named as defendants were represented by Skadden and all of the former Jones Group officers who were then named as defendants were represented by Paul Weiss. Ropes & Gray, which represents 53 of the shareholder defendants, took the lead in filing a joint shareholder response to the motion to transfer. Accordingly, although Plaintiffs do not know who will be representing the newly added defendants, there is reason to believe that the defendants' counsel will be able to work out an executive committee and liaison counsel arrangement that will facilitate joint briefing and presentation of issues common to many defendants. Indeed, Plaintiffs' counsel conferred telephonically with attorneys from Ropes & Gray, Skadden, Paul Weiss, and other

3521899.5

firms representing defendants on June 9 in an effort to determine whether common ground could be found on how to proceed with the organization of the cases.

**Plaintiffs' Proposal Concerning Initial Procedures in These Cases**

Plaintiffs have attached to this report as Exhibit 1 a proposed form of Case Management Order No. 1 that would deal with various open procedural matters, advance the organization of the cases, and set a framework for any initial motions addressed to the complaints. The proposed order has been shared with defense counsel, who concur with the provisions in paragraph 1-8, but have alternative proposals with respect to paragraphs 9 and 10. The parties' different positions are set forth in the proposed order.

The proposed order, with Plaintiffs' proposed provisions, would:

- Consolidate additional related cases into the MDL (¶ 1);

- Dismiss without prejudice two duplicative actions (¶ 2);

- Unseal various filings where confidentiality issues have been resolved (¶ 3);

- Partially lift this Court's June 4 stay so as not to prohibit activities such as amending the complaints or dismissing parties from the actions (¶ 4);

- Extend the time for the defendants to respond to the complaints to the later of 21 days after service or July 31, 2020 (¶ 5);

- Set procedures for the appearance of counsel and the efficient service of papers by email (¶ 6);

- Provide for service of redacted pleadings pending the resolution of open confidentiality issues (¶ 7);

- Set a timetable for defendants to select liaison counsel and designate as interim liaison counsel those lawyers who took the lead in representing the defendants before the Panel (¶ 8);

- Limit the first phase of motions to dismiss to motions by former Jones Group directors and officers directed to the claims against them for breach of fiduciary duty, aiding and abetting, violation of Pennsylvania dividend statutes, and unjust enrichment (¶ 9); and

3521899.5

- Defer scheduling of motions to dismiss based on the Bankruptcy Code's Section 546(e) safe harbor until it is determined whether the Supreme Court will review the Second Circuit's recent *Tribune* decision, and similarly defer scheduling other potential motions to dismiss (¶ 10).

Plaintiffs recognize that the earliest of these cases have been pending now for almost four months (half of which was devoted to the proceedings before the Panel). Plaintiffs believe, however, that an additional brief extension of the time to begin any motion practice in the cases, to July 31, is warranted given that nearly 200 additional defendants were added to the MDL on June 5 and service on these parties is just getting underway.

**The Court's Consideration of the Applicability of the Section 546(e) Safe Harbor**

Defendants are likely to argue, as they did to the Panel, that Plaintiffs' fraudulent conveyance claims are barred by the safe harbor in Section 546(e) of the Bankruptcy Code in light of the Second Circuit's recent ruling in *In re Tribune Co. Fraudulent Conveyance Litigation*, 946 F.3d 66 (2d Cir. 2019). Plaintiffs agree that the applicability of the safe harbor is a key issue in the Court's consideration of those claims, and because it could potentially be dispositive as to many of those claims, should be addressed before the Court considers other defenses that might be asserted by only a subset of the shareholder defendants.

However, there are good reasons why the Section 546(e) issue should not be the subject of immediate motion practice. First, the time for the filing of a petition for certiorari in the *Tribune* case does not expire until July 6, 2020, and if such a petition is filed, the Supreme Court is likely to act on it by the fall of 2020. If the Supreme Court grants the petition, it would be prudent to await the Supreme Court's decision in *Tribune* before this Court proceeds to address issues that likely would be dealt with in that decision.

Even if the Supreme Court denies certiorari, consideration of the Section 546(e) issue would be premature pending the completion of discovery into factual issues bearing on the

7

safe harbor's applicability. The defendants will likely argue, as the defendants did in *Tribune*, that the safe harbor applies because NWHI was a "customer" of a bank (Wells Fargo Bank, N.A.), which acted as NWHI's "agent" in connection with a "securities contract," thus rendering NWHI itself a "financial institution" under 11 U.S.C. § 101(22)(A), and making its transfers to shareholders safe-harbored under Section 546(e). But whether Wells Fargo was an "agent" within the meaning of the statute involves disputed issues of fact. The complaints all allege that "[t]he payments for Common Shares in the LBO, totaling $1.105 billion, were made by a non-agent contractor that performed the ministerial function of processing share certificates and cash." *See, e.g.*, *McClain* Complaint ¶ 135; *Kimmel* Complaint ¶ 135. The complaints also allege that certain of the payments sought to be clawed back were not even made by the so-called "agent": "The payments made for Restricted Shares, accumulated unpaid dividends on Restricted Shares, and Share Equivalent Units, collectively totaling $78 million, were processed through the payroll and by other means." *Id*. And the so-called "agent" had no role in the change-in-control payments paid to various officers and employees.

Accordingly, even if this Court were to prioritize decision of the Section 546(e) issue, it would first need to permit discovery bearing on the role of Wells Fargo and the methods by which the various challenged payments were made (other discovery, such as relating to solvency issues, could remain stayed). For this reason, Plaintiffs have proposed that motions directed to the fraudulent transfer claims not be part of the first phase of briefing. If, notwithstanding the possible Supreme Court consideration of *Tribune*, this Court were to determine that litigation of the Section 546(e) issue should proceed at this time, it should authorize an initial period of discovery focused on this issue prior to the submission of any shareholder motions to dismiss.

8

3521899.5

Plaintiffs look forward to discussing the status and organization of the cases with the Court at the upcoming conference.

Dated:  New York, New York
June 10, 2020

Respectfully submitted,

FRIEDMAN KAPLAN SEILER
  & ADELMAN LLP


s/ Edward A. Friedman
Edward A. Friedman (efriedman@fklaw.com)
Robert J. Lack (rlack@fklaw.com)
Jeffrey C. Fourmaux (jfourmaux@fklaw.com)
Stan Chiueh (schiueh@fklaw.com)
Priyanka Wityk (pwityk@fklaw.com)
7 Times Square
New York, NY 10036-6516
(212) 833-1100

*Attorneys for Plaintiffs except as against certain defendants in Actions Nos. 20-cv-4299, yyy, zzz*

DIAMOND McCARTHY LLP
Allan B. Diamond
(adiamond@diamondmccarthy.com)
Ryan M. Lapine
(ryan.lapine@diamondmccarthy.com)
295 Madison Avenue, 27th Floor
New York, NY 10017
 (212) 430-5400

*Attorneys for Plaintiffs as against certain defendants in Actions Nos. 20-cv-4299, yyy, zzz*

9

3521899.5