K6C6NINC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
IN RE: NINE WEST LBO SECURITIES
LITIGATION.                                        20 MD 2941(JSR)

------------------------------x
                                          New York, N.Y.
                                          June 12, 2020
                                          2:00 p.m.

Before:

                    HON. JED S. RAKOFF,

                                          District Judge

                        APPEARANCES

FRIEDMAN KAPLAN SEILER & ADELMAN, LLP
     Attorneys for Plaintiffs
BY:  EDWARD A. FRIEDMAN
     ROBERT J. LACK

DIAMOND MCCARTHY, LLP
     Attorneys for Plaintiffs
BY:  ALLAN B. DIAMOND
     RYAN M. LAPINE

SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
     Attorneys for Defendants
BY:  SCOTT D. MUSOFF
     CLIFF C. GARDNER

PAUL WEISS RIFKIND WHARTON & GARRISON
     Attorneys for Defendant
BY:  ANDREW S. GORDON
     GREG BENSON

ROPES & GRAY, LLP
     Attorneys for Defendants
BY:   GREGG L. WEINER
      ANDREW G. DEVORE

LAZARUS AND LAZARUS, P.C.
     Attorneys for Defendants
BY:  HARLAN M. LAZARUS

K6C6NINC

(Appearances cont'd)


WILMER CUTLER PICKERING HALE & DORR, LLP
     Attorneys for Defendants
BY:  PHILIP D. ANKER
     ROSS E. FIRSENBAUM

STRADLEY RONON STEVENS & YOUNG, LLP
     Attorneys for Defendants
BY:  JOSEPH T. KELLEHER

SEYFARTH SHAW, LLP
     Attorneys for Defendants
BY:  GREGORY A. MARKEL
     GIOVANNA A. FERRARI

MOSES & SINGER, LLP
     Attorneys for Defendants
BY:  MARK N. PARRY

SNELL & WILMER, LLP
     Attorneys for Defendants
By:  MICHAEL B. REYNOLDS

STRADLING YOCCA CARLSON & RAUTH, PC
     Attorneys for Defendants
BY:  TRAVIS P. BRENNAN

WILLKIE FARR & GALLAGHER LLP
     Attorneys for Defendant
BY:  BRIENNE M. LETOURNEAU

DECHERT, LLP
     Attorneys for Defendants
BY: MICHAEL S. DOLUISIO
     JOSHUA D. N. HESS

MURPHY & KING, P.C.
     Attorneys for Defendants
BY:  WILLIAM R. MOORMAN, JR.

VEDDER PRICE, P.C.
     Attorneys for Defendants
BY:  WILLIAM W. THORSNESS

K6C6NINC

(Appearances cont'd)

K&L GATES, LLP
        Attorneys for Defendant
BY:  STEPHEN G. TOPETZES

JENNER & BLOCK, LLP
        Attorneys for Defendant
BY:  LANDON S. RAIFORD

TROUTMAN SANDERS, LLP
        Attorneys for Defendant
BY: BRETT DAVID GOODMAN
     MATTHEW J. AARONSON

MANDELL MENKES, LLC
        Attorneys for defendants
BY:  STEVEN P. MANDELL
     KEITH E. ALLEN

WINSTON & STRAWN, LLP
        Attorneys for Defendant
BY:  JOHN E. SCHREIBER

K6C6NINC

(Telephone Conference; Case Called)

THE COURT:  So first of all thank you all for calling in.  I don't think I have ever encountered so many lawyers who have chosen not to speak.  It must be traumatic for all of you. In any event, I thank you for your appearance.

I also want to thank counsel for both sides who submitted written submissions in advance of this conference, which is made my life an awful lot easier.  I think in light of those submissions I thought I would give you my tentative rulings on the initial scheduling matters that I thought needed to be discussed.  And then if you disagree or need clarification on any of those rulings, you may be heard and I may change my mind or not.

First, in addition to the actions that have already been transferred by the MDL panel, there are two actions filed under seal and two tagalong cases that have now been transferred and all of those will be consolidated with all the other cases for all pretrial purposes.

Second, I understand from plaintiffs that there are two actions -- Nos. 20 CV 4360 and 20 CV 4407 -- that they wish to dismiss without prejudice because they are duplicative of other actions, namely, 20 CV 4335 and 20 CV 4346.  So unless I hear after I issue all of my rulings any opposition, I will grant that motion.

Third, I am concerned about the questions both about

K6C6NINC

confidentiality based on previous confidentiality orders or future confidentiality issues.  The Court has a standard form confidentiality order, which you can all find on the court's website.  You should enter into that confidentiality order making whatever changes you jointly may feel are necessary and should do that in the next week.  To the extent that there are already existing from I would assume mainly from the bankruptcy confidentiality provisions, they will be superseded by the joint order that you will get to me.  If necessary -- though, I am sure it will not be necessary -- I will withdraw the reference from the bankruptcy for the limited purpose of amending the confidentiality order.

The reason I am going through all this is that in my court confidential treatment is accorded honestly and I almost never do anything that will be the subject of the Court's ruling.  So in that regard I will want to hear in a few minutes from plaintiffs' counsel about the two actions filed under seal.  To be frank I probably would not have approved their being filed under seal, and what I propose is that you either reach agreement of unseal that within a week or I may unseal them sua sponte.  The only things that I normally approve for confidential treatment are first personal home addresses and other personal identifying information about a given individual; and second, something that can genuinely be said to be a trade secret, which I narrowly defined.  Of course, I will

K6C6NINC

hear from anyone who wants to be heard further on that in a minute.

Fourth, there was some indication from the plaintiffs that there were certain information that they felt could be unsealed right now and they would want to work with the clerk, and that the clerk will be directed to unseal all documents on various dockets to replace pseudonyms with corresponding names of defendants so that the hearing from anyone at the end of this. That makes sense to me.

Fifth, plaintiffs propose that the defendants' answer move by July 31st. In that regard I am concerned of course about defendants in the new complaints who, as I understand it, have not even been served yet. I want to hear in a minute from plaintiffs' counsel as to what steps counsel is taking to quickly serve those many people who have not been served. But dealing today with those who have been served, July 31st is the date to move for answer.

Sixth, this again applies to all present parties but I will endeavor to make it apply as best I can to any subsequently served parties with well. I do not agree that there should be two rounds of motions to dismiss. I don't agree to the schedule as proposed. The schedule I propose is as follows: Any and all motions to dismiss of any kind whatsoever should be filed on July 31st. Plaintiffs should file their answer on August 28th. Defendants should file their

replies on September 11th.  The Court will hear oral argument on all those motions on September 18th at 2:00 p.m., and the Court will decide those motions in writing by no later than October 5th.

Seventh, the cases are not stayed after today and document discovery as well as the very, very limited interrogatories permitted by Local Rule 33.3(a), which are the only interrogatories I permit, and commence whenever the parts wish; but all document discovery must be completed by October 5th.  In my order deciding the motions to dismiss, if any of the case is not dismissed, I will set out a schedule for all remaining discovery, namely, depositions and summary judgment.

Let me look at my notes.

(Pause)

Finally, I agree with the appointment of Ropes & Gray, Skadden Arps, and Paul Weiss as interim liaison counsel for the shareholder defendants, the direct defendants, and the officer defendants respectively.

So let me hear from anyone who wants to make an argument to change any of those orders that I just elaborated.

MR. FRIEDMAN:  So, your Honor, this is Edward Friedman speaking on behalf of plaintiffs.  There were a number of questions your Honor directed at plaintiffs and so if it is all right with the Court, I will start and try to respond to what

K6C6NINC

your Honor was asking us.

One of the items was the dismissal without prejudice of two of the actions that had been filed.  Yes, that is correct, that those are actions that had been filed in Massachusetts.  They were duplicative for reasons having to do with confidentiality, which we do not have to belabor, and all the parties agree that they can be dismissed with prejudice. So thank you, your Honor, for including that.

Then your Honor raised a number of --

Sorry.  I thought I heard someone else speaking.

THE COURT:  I think it was someone who didn't have their phone on mute and you were probably hearing their children, their relatives, maybe their pets.

Anyway, go ahead.

MR. FRIEDMAN:  So I will continue.

Your Honor raised a number of concerns about confidentiality.  What I would say there is fundamentally on behalf of the plaintiffs, we agree with your Honor.  We as plaintiffs have been complying with obligations we have under the confidentiality order issued by the bankruptcy court.  So again to be clear, we're not fighting to maintain confidentiality, sealing of any of the pleadings.  So we will cooperate with the Court and with other parties in whatever way possible to arrange for everything that has been filed to be filed publicly.

The next item I have from what your Honor was asking plaintiffs has to do with the July 31 date for answers or motions and how to deal with defendants who have not yet been served.  So the first point is all the defendants who have appeared so far have agreed with the plaintiffs on July 31.  We are endeavoring to serve the remaining defendants as expeditiously as possible.  My understanding is that we are still waiting for summons to be issued in the case of many defendants, but we hope to effectuate service next week.  We can certainly report to the Court more specifically next week on the status.

THE COURT:  That is fine.  If you have any problems obtaining take summons, you can unilaterally call my law clerk and he will contact the clerk of our court and expedite that so that there is no reason why you would not have all those summons by Monday.  Be sure to call him, say, by Monday.  And, yes, I agree that all those parties should be then served if at all possible by the end of the week.

MR. FRIEDMAN:  Understood and we will proceed that way.

Then the next item what your Honor referred to as six relates to the motion practice and discovery.  As your Honor saw the parties had reached certain agreements.  Certainly speaking for myself, we all understood that what the parties are agreeing is subject to your Honor's final decision.  What I

would say, if I may disagree somewhat with what your Honor has proposed, is that this is an extremely complicated case with hundreds of parties and a myriad of issues that will be raised by various parties.  One area where the plaintiffs and defendants reached agreement was that conceptually there should be some kind of priority in terms of timing for motions that defendants at least think have the potential for leading to dismissal of claims against all the defendants.

We disagree obviously in terms of merits of the motions, but as a conceptual matter this is how the defendants wanted to proceed and this is something plaintiffs agreed to. The reason is that we understand there are many different motions that will be available to small numbers of defendants, which might or might not ultimately be made, which we might or might not even need to be made depending on rulings.  For example, the defendants were proposing to defer motions relating to statute of limitations, personal jurisdiction because from the defendants' perspective they see basically two areas of initial motion practice as your Honor saw, one relating to breach of fiduciary claims and the like against officers and directors and the others relating to the shareholder defense of 546(e).

Having said all of that, I hear your Honor.  I understand that your Honor would like to see every defendant with a motion to dismiss, making that motion on July 31.  I

K6C6NINC

will just note that I believe I will be in agreement with defendants to the extent they are interested in staging the motions, but I hear your Honor and we will proceed in accordance obviously with what your Honor is directing.

THE COURT:  Well, let me say something about that and I am sure defense counsel will want to be heard on that as well.

First and foremost, and you will forgive my saying this, this does not strike me as the most complicated case I have ever had or even close to it.  There are lots of parties. At least from what I have seen so far it pales in complexity to other MDL cases that I have had in the past.

Second, and this has been my view for all 24 years that I have been on the bench, the greatest problem with the American legal system is delay -- delay that is expensive and delay that prevents resolution of issues.  So I am predisposed against anything that will in my view artificially delay things.  It is true that in so doing I give myself more work than I might need.  If I were to agree with defendants the one issue would dispose of all the cases and why am I worrying about other issues, which I may still have to address in the alternative whatsoever.  So that is my problem.

I would be open to having the one issue that the defendants seem to think may be case-dispositive be the subject of motion practice if it were on a much more expedited schedule

so that, say, moving papers were by the end of June, reply papers by the third week of July -- excuse me, answer papers by the end of July, reply papers by the end of July and I would hear oral argument and decide that motion by the middle of August. Under those circumstances I might be willing to then have a second round beginning in the middle of August if the cases were not resolved. But I took to heart your joint proposal about starting all of this on July 31st; and if we start on July 1st, we'll just have one round of motions.

MR. FRIEDMAN: Thank you, your Honor. I appreciate all of that. I certainly would not favor two rounds of motions on the schedule your Honor suggested might be available. So in a way you've talked me out of two rounds of motions on that basis.

I would like to just correct one thing I said. I believe I misspoke when I was referring to the dismissal of two of the actions. Those of course should be dismissed without prejudice. I may have said with prejudice by mistake.

THE COURT: I understood.

MR. FRIEDMAN: I know there are other counsel who want to speak. I do want to be sure that I have addressed everything that your Honor was directed at plaintiffs. If I did, I will stop talking.

THE COURT: There is one other thing which I just thought of while you were talking, which is that as you serve

K6C6NINC

the people who have not yet been served and as their counsel appears, you should tell counsel that my preliminary intention is to have the same case management schedule apply to them.  If they have no disagreement with that, so be it; but if they disagree and want a different schedule, they need to jointly with you call chambers and I will take that into account.  But I see no reason if someone is served within the next week why they cannot abide by the schedule.

MR. FRIEDMAN:  I do understand that, your Honor.  We will do that.  There may be less of a problem than there might otherwise be because a number of the defendants' counsels who will be speaking, my understanding is that those same counsel are also representing new defendants who have not net been served.  So they may be able to address whether there is an issue in terms of scheduling for these defendants or at least for some of them whom as I say I understand they are representing.

THE COURT:  Thank you very much.

Let me hear from defense counsel.

MR. WEINER:  Your Honor, this is Gregg Weiner from Ropes & Gray, the shareholder defendant.  I will go first on the defense side.

We have no objection to the tentative rulings you have laid out on the various items, including schedule; but I did want to at least address or consider what you laid out as a

possible alternative schedule for motion practice on what we believe are the dispositive issue of Rule 546(e). We do think that from the shareholders' side that we had proposed bifurcated briefing, if you will, because we thought it was the most efficient way and the quickest way to get to a resolution. The shareholder defendants believe that they have a clear statutory defense here and certainly they have the benefit of the *Tribune* ruling. We know what efforts plaintiffs have made to avoid being in the Second Circuit. So our thought was that that would be the most efficient way to proceed to do that first and not burden your Honor with the other potential grounds for dismissal and that was the thinking.

The only hesitation I have in terms of the expedited schedule you put forward or suggested in response to Mr. Friedman was that we have these additional cases that have been filed against 180 new defendants. We've talked to some of the new defendants. Some of them are not even named and we don't know who they are. So we haven't talked to a lot of them and they are all certainly new. I my part I would want to make sure that we were in a position to make that motion in accordance with the expedited schedule, but I do think that it would provide efficiency benefits. Again, we think it is a dispositive issue.

There is a suburb issue on that just to be clear, which is that the 546(e) applies both to a financial

institution making the transfer and a financial institution receiving the transfer, and it expressly includes 40 act entities as financial institutions.  So a large number of the defendants would qualify for that defense as sort of a subpart of 546(e).  So at a minimum we think, A, it will cover all the defendants; but if not, it probably would cover a large percentage of the defendants as well.  I think that there is some merit to that approach and that is why we proposed it.

Maybe just for clarification, your Honor, so I understand were you proposing that if we did that we would reach the 546(e) issue on this shortened deadline and any other issues would still be briefed on the July 31st timeline, or would those additional issues be --

THE COURT:  No.  No.  No.  Let me make that clear.

If we went that route, it would be moving papers on the 546 issue on June 29th and if everyone gets served by next week, I presume they will call you folks.  So then I can't imagine any of them saying, Oh, no, no, please don't move to dismiss the case against us.  We want to litigate this for at least five years.  I don't see any real problem if we go that route.

Your papers would be due on July 29th.

MR. WEINER:  Do you mean June 29th, your Honor?

THE COURT:  Thank you very much.  June 29th.

I think I would give the plaintiff until July 20th to

respond.  That's three weeks normally.  I only give two weeks. This obviously is a critical motion for them and also the July 4th holiday comes in there.  So their papers will be due on July 20th.  Your reply papers would be due on July 27th.  I would hold oral argument August 3rd.  We will set the exact date and time in a minute if we go this route.  I would get you a decision no later than August 17th.

If at that point the actions are not dismissed in whole or in part, then any other motions would have to be filed no later than 10 days later, August 27th.  I would give defense counsel until September 25th to respond.  Reply papers would be due on October 2nd.  I would get you my decision by October 16th.  So I could live with that alternative schedule, but nothing more extended than that.

MR. WEINER:  Understood and appreciated, your Honor. So for Ropes & Gray and our clients that would be both acceptable and preferable.  Again, we do think that is the most efficient way to get right to the 546(e) defense.

THE COURT:  Let me hear from other counsel.

MR. ANKER:  Your Honor, this is Phillip Anker from Wilmer, Cutler, Pickering Hale & Dorr also for a large group of shareholder defendants.

We join and echo Mr. Weiner's comments.  I think that would be more efficient and preferable.  I do think there is a dispositive issue here given the Second Circuit's ruling of

*Tribune* that at least as to the shareholder defendants on the fraudulent transfer claims will be completely outcome-determinative or cause there to be -- I hope your Honor will agree -- a prompt dismissal.

THE COURT:  I am going to assume for the moment at least that all defendants prefer that approach.

MR. MUSOFF:  Your Honor, sorry to interrupt.  Scott Musoff from Skadden Arps for director defendants and on behalf of the lead directors and the management defendants.

We also have fiduciary duty claims that we do have dispositive motions on based on releases and Pennsylvania corporate law.  So we're all okay with expediting the 546 issue because we believe that is dispositive to the fraudulent conveyance claims; but I did want to point out that we still would have remaining dispositive motions.  We are happy to go on whatever schedule your Honor determines.

THE COURT:  I understand there will be a second round of motions if we do go that round.  They include some that are dispositive.

MR. MUSOFF:  Right.  For the shareholder defendants they may be out completely.  We didn't want to leave you the impression ruling in our favor on that would get rid of the entire case.  We would still need a second round of motions.

THE COURT:  Oh, I see.  Well, that is certainly music to my ear.

K6C6NINC

Counsel should be aware that Mr. Musoff only appears approximately in 90 percent of my securities class actions.

UNIDENTIFIED PERSON:  (Inaudible).

THE COURT:  Sorry.  We're not hearing you.

UNIDENTIFIED PERSON:  (Inaudible).

THE COURT:  Counsel, I can't hear you, sir.

MR. FRIEDMAN:  So, your Honor, I don't know if there are more defendants the Court would like to hear from or whether --

THE COURT:  So as between the two alternatives, you indicated you preferred the first, but let me hear from you on that because it seems to me that at least you might want to consider the benefits from your standpoint.

First, the 546 *Tribune* issue is out there.  It's glaring.  It is better for all sides, one might think, to get that resolved.  The other motions will still be resolved fairly expeditiously.

In the meantime, you can go forward with discovery, document discovery, as I have already indicated.  Document discovery will be mostly, one would think, documents you are asking for and not documents that they are asking for.  That will be a great benefit to you in moving this case along.  So I wonder whether you are not equally well served by that second alternative.

MR. FRIEDMAN:  So what I would say, your Honor, is

that we do very much oppose the second alternative.  We think the original schedule is extremely expedited in light of the issues in the case, recognizing that this is not the most complex case your Honor has had but there are a lot of issues and a lot of complexity.  The discovery that the plaintiffs will be seeking does include discovery relating to the 546(e) issue, which we would end up in a situation where discovery that could be highly relevant to your Honor's consideration of the 546(e) issue would be truncated and not available to the plaintiffs and the Court in time for your Honor's consideration.  So I have a real concern that expediting motion practice on 546(e) with the schedule starting on June 29 rather than July 31 would be much too expedited and prejudicial for the plaintiffs in terms of their ability to present everything that they would like to present.

THE COURT:  What discovery would you need in that regard?

MR. FRIEDMAN:  Well, the 546(e) defense and the assertions raise issues of fact that would be part of our opposition to a motion addressed to the pleadings and we would be pursuing discovery that would enlighten the plaintiffs and the Court as to what entity actually paid cash to the former holders of common shares as well as who made the payments to holders of restricted shares.  There were also payments that as we understand it were not even paid through the alleged agent

K6C6NINC

for Jones Group, that is Wells Fargo, that there were substantial payments in the vicinity of or in excess of $100 million that went through payroll or otherwise, not through the alleged agent, but the discovery would seek to determine among other things these basic facts as well as the --

THE COURT:  Maybe I am misunderstanding, and of course I haven't yet gotten into this case in any detail, but motion to dismiss is addressed in the pleadings.  So all the facts that you state with sufficient plausibility are taken as true and all reasonable inferences therefrom.  So the only relevance of discovery as far as I can see would be if you felt that there was a possible inadequacy in your complaint that could be cured by amendment based on what you had learned from discovery.  And that assertion, namely, Judge, we don't think you should dismiss the case but if you do, it should be without prejudice to the pleading because X, Y, Z it is something you would not have to raise until your reply papers, which is many weeks into the document discovery period.  So it is hard for me to see how you are being prejudiced.

MR. FRIEDMAN:  Well, I understand what you are saying, your Honor, but we anticipate from what we have heard that there will be significant disagreement from the defendants as to what it means to make a motion addressed to the pleadings because we believe that our pleadings with respect to the 546(e) issue could not be subject to a motion properly

addressed to the pleadings.  The fundamental issue on 546(e) in this case is whether there was a bank, namely Wells Fargo, that was acting as agent for Jones Group in making the payments to the former shareholders.  And the complaint very specifically alleges -- first of all, no mention of Wells Fargo -- that payments were made by a nonagent contractor that performed ministerial functions for process and shares certificates and cash.

THE COURT:  Let me interrupt you and go ask any of defense counsel who wants to answer:  Did I misunderstand?  I thought you were planning to bring in this first round -- if you go this route -- motions to dismiss based on that the pleadings fail to state a claim given the Second Circuit's ruling on 546.  It is not that you are referring to summary judgment motions or anything like that.

MR. WEINER:  That's correct, your Honor.  In fact, in the *Tribune* case, Judge Cote at the District Court level granted a motion to dismiss.  In *Tribune* they found there was no factual issue around whether that there was an agency or not.  And the complaint, including the documents incorporated therein by reference, will establish we think quite clearly that the payments that were made to Wells Fargo, which then held north of a billion dollars, which then took a billion dollars and exchanged that to the shareholders in exchange for their certificates that that clearly and unequivocally created

an agency relationship with a financial institution thereby coming within the 546(e).

Judge Cote said it very simply: You entrusted billions of dollars in exchange for the company's cash, Tribune's cash, in exchange for making payments on their behalf of shareholders for the stock certificates. So that is a principal-agent relationship. So that is what we intend to make the basis of our motion to dismiss. It's not a summary judgment motion.

THE COURT: I understand the arguments from both sides. I will mull them over and issue my order adopting one or the other of these two alternatives no later than Monday.

Is there anything else that we need to discuss today?

MR. FRIEDMAN: Your Honor, I would make one request, which is that if your Honor adopts the proposal from the defendants to have the initial motion and initial briefing on 546(e) on the expedited schedule, I would respectfully request that your Honor provide at least somewhat more time for the plaintiffs to deal with it. So I appreciate that your Honor--

THE COURT: I understand that. I gave you three weeks. What are you asking for?

MR. FRIEDMAN: I would ask for five. I understand that your Honor will decide, but it is a very important issue and if we could have more time on this important motion, we would respectfully request it.

THE COURT:  I will consider that as well.

UNIDENTIFIED PERSON:  Your Honor, if that is the case, if there is additional time, certainly we would like more time for the reply brief.  As it stands now, we only have one week.

THE COURT:  No.  No.  No.  First of all replies should not be occasions to redo what you already told me on your opening brief particularly when we're talking about this particular issue.  My guess is that both of you know right now most of the arguments that your adversary will make.  Therefore even in making the motion, you can anticipate what those arguments are and put your answering arguments upfront.

Second, if I accommodate the defense request for these two grounds, it cannot be in my view a way that materially undercuts this Court's overriding desire to push this interesting group of cases forward.  So I am probably not going to give you more than a week.

Now, it is true that the law firms on the defense side of this case collectively only have about a thousand lawyers.  So, gosh, how are they going to get this done in a week?  But I suspect you will manage.

Anything else we need to take up?

MR. MUSOFF:  Your Honor, it may be moot if you go with the second proposed schedule; but on the first proposed schedule, oral argument was set I believe for 2:00 p.m. on September 18th.  That is Rosh Hashanah.  If there is a way to

K6C6NINC

perhaps start a little earlier than 2:00 p.m.

THE COURT:  Thank you.  If we go that route, it will be earlier.

MR. MUSOFF:  Thank you.

THE COURT:  Although, one could argue that in light of that, I should make it 3:00 p.m. because then everyone will be finished by 3:30.

MR. MUSOFF:  I was thinking that might have been the motivation, your Honor.

THE COURT:  I don't accept that argument.

Anything else that anyone wants to raise?

I thank you all very much.  I will get you that order no later than Monday.

o0o