# EXHIBIT A



Shareowner Services

# Paying Agent Agreement
# for
# The Jones Group Inc.

April 4, 2014

Together we'll go far

[[NYCORP:3455425v4:3658w: 03/09/2014--07:43 PM]]

Wells Fargo Bank, N.A.

Paying Agent Agreement

This Paying Agent Agreement dated as of April 4, 2014 (this "Agreement") is by and between The Jones Group Inc., a Pennsylvania corporation (the "Surviving Corporation"), Jasper Parent LLC, a Delaware limited liability company ("Parent"), and WELLS FARGO BANK, NATIONAL ASSOCIATION, a national banking association, as paying agent (the "Paying Agent").

**WHEREAS,** pursuant to the terms of the Agreement and Plan of Merger dated December 19, 2013 (the "Merger Agreement"), by and among the Surviving Corporation, Jasper Parent LLC, a Delaware limited liability company ("Parent"), and Jasper Merger Sub, Inc., a Pennsylvania corporation and wholly owned subsidiary of Parent (the "Merger Subsidiary"), the Merger Subsidiary will be merged with and into the Surviving Corporation (the "Merger") and the separate existence of the Merger Subsidiary will cease, with the Surviving Corporation to be the surviving entity in the Merger;

**WHEREAS,** by virtue of the Merger, at the Effective Time (as such term is defined in the Merger Agreement), each share of common stock, par value $0.01 per share (the "Common Shares"), of the Surviving Corporation outstanding immediately prior to the Effective Time (other than Excluded Shares and Restricted Shares, each as defined below) will be cancelled and converted into and become the right to receive $15.00 in cash (without interest) (the "Merger Consideration"), payable in accordance with Article IV of the Merger Agreement, and the Surviving Corporation will become a wholly-owned subsidiary of Parent;

**WHEREAS,** the Merger Agreement provides for a Paying Agent in connection with the exchange of certificates and book-entry shares representing the Common Shares (other than Excluded Shares and Restricted Shares) for cash pursuant to the Merger Agreement;

**WHEREAS**, the Surviving Corporation desires that the Paying Agent act as its special agent for the purpose of distributing the Merger Consideration to the holders of Common Shares (other than Excluded Shares and Restricted Shares) entitled to payment thereon pursuant to the Merger Agreement; and

**WHEREAS,** the contents of this Agreement shall be treated as Confidential Data as defined herein,

**NOW THEREFORE**, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

**ARTICLE I**

**Section 1.1.  Shareholder Information.**  The Surviving Corporation will deliver or cause to be delivered to the Paying Agent a complete and correct list of the owners of Common Shares as of immediately prior to the Effective Time (each, a "Shareholder"), identifying each Shareholder by name, address, and the number of shares owned (excluding Excluded Shares and Restricted Shares), including any share ownership information necessary for the Paying Agent to perform its duties pursuant to this Agreement. Such share ownership information shall include, but shall not be limited to (as applicable) certificate numbers, the number of whole shares represented by each certificate, the date of issuance for each certificate, book-entry share amounts and book-entry share issuance dates and whether any stop transfer instructions or adverse claims are outstanding against such Common Shares.

**Section 1.2.  Merger Agreement**.  The Surviving Corporation acknowledges that the Paying Agent is not a party to the Merger Agreement and as such is assumed to be wholly unfamiliar with, and not bound by, the terms contained therein, except where referenced herein.  The Surviving Corporation, however, shall provide the Paying Agent with:

(a)  the Notice of Special Meeting of shareholders of the Surviving Corporation;

(b)  the Definitive Proxy Statement mailed by the Surviving Corporation to its shareholders on or about March 7, 2014, relating to their consideration of and vote upon the adoption of the Merger Agreement (which Definitive Proxy Statement contains a copy of the Merger Agreement); and

(c)  copies of the written consent of the Board of Managers of Parent and the resolutions of the pre-Effective Time Board of Directors of the Surviving Corporation approving the Merger and the other transactions contemplated by the Merger Agreement.

**Section 1.3.  Excluded Shares and Restricted Shares.**  At or prior to the Effective Time, the Surviving Corporation shall provide or cause to be provided to the Paying Agent a list of all Common Shares outstanding immediately prior to the Effective Time which are excluded from payment entitlement in accordance with the Merger Agreement,  which may include but is not limited to (i) Common Shares owned by Parent, the Merger Subsidiary or any other direct or indirect wholly owned subsidiary of Parent and Common Shares owned by the Surviving Corporation or any direct or indirect wholly owned subsidiary of the Surviving Corporation, and in each case not held on behalf of third parties (collectively, "Excluded Shares") and (ii) Common Shares subject to restricted stock awards granted under the Stock Plan (as defined in the Merger Agreement) (such outstanding restricted stock awards, "Restricted Shares").   Such list will include whether the shares are in certificate form or in book-entry form and if in book-entry form will provide the locations of such shares, and such list shall be delivered to the Paying Agent along with the certificated shares (if any).  If such shares are in book-entry form with a broker, the Surviving Corporation shall promptly instruct that broker to submit such shares to the Paying Agent for cancellation prior to the Effective Time.  Further, the Surviving Corporation instructs and authorizes the Paying Agent to cancel all such shares upon delivery, for shares that are in book-entry form with a broker, and at the Effective Time for any shares held in certificate form or in book-entry form by the Paying Agent.

**Section 1.4**.  **Payment Fund.**  At or immediately following the Effective Time, Parent shall deposit (or cause to be deposited) with the Paying Agent, in trust for the benefit of Shareholders in respect of the Common Shares (excluding Excluded Shares and Restricted Shares) held by them as of immediately prior to the Effective Time, cash in immediately available funds (such cash amount being hereinafter referred to as the "Payment Fund") sufficient to pay the Merger Consideration to be paid in respect of each Common Share issued and outstanding immediately prior to the Effective Time, less any Excluded Shares and Restricted Shares.  The Payment Fund shall not be used for any other purpose. The Paying Agent agrees that it will not release or pay any funds from the Payment Fund to or for the account of any of the Shareholders (including to DTC or CEDE, as defined below) unless and until Parent has notified the Paying Agent that the Effective Time of the Merger has occurred (which notice may be made by email).

**ARTICLE II**

The Paying Agent covenants and agrees that:

**Section 2.1.  Letter of Transmittal Mailing.**  As soon as practicable (and in any event within two business days) after the Effective Time of the Merger, the Paying Agent shall send a Letter of Transmittal, in substantially the form attached as **Exhibit A**, together with a return envelope addressed to the Paying Agent, to each record holder (a "Record Holder") of an outstanding certificate

or certificates or book-entry shares which immediately prior to the Effective Time of the Merger evidenced Common Shares (excluding, for the avoidance of doubt, Excluded Shares and Restricted Shares) which shall have been converted into the right to be exchanged for the applicable Merger Consideration payable with respect thereto  pursuant to the provisions of the Merger Agreement.  Such Letter of Transmittal will advise such Record Holder of the terms of such conversion and the procedure for surrendering to the Paying Agent such certificate or certificates and/or book-entry shares in exchange for cash as provided pursuant to the terms of the Merger Agreement.

**Section 2.2.  Request for Information by Shareholders**.  The Paying Agent will promptly respond to any telephone, email or mail requests for information relating to the surrender of stock certificates and/or book-entry shares and the payment of cash therefor.

**Section 2.3.  Proper Form**.  The Paying Agent will examine the Letters of Transmittal and certificates and/or book-entry positions for Common Shares delivered or mailed to the Paying Agent by Shareholders to ascertain that (i) the Letters of Transmittal are properly completed and duly executed in accordance with the instructions set forth therein, (ii) no stop transfer instructions are outstanding against such certificates or book-entry positions (which determination shall be based solely on the information provided to the Paying Agent under Section 1.1 above), (iii) the certificates or shares held in book-entry form have been duly endorsed or assigned for transfer or have been delivered to the Paying Agent, where required, and are otherwise in proper form for surrender, (iv) any other documents contemplated by a Letter of Transmittal are properly completed and duly executed in accordance with the Letter of Transmittal, (v) such Common Shares do not constitute Excluded Shares or Restricted Shares, and (vi) no payment pursuant to the Merger Agreement was previously made with respect to such Common Shares.  In cases where the Letter of Transmittal has been improperly completed or executed or where the shares presented are not in proper form for transfer, or if some other irregularity exists in connection with their surrender, including any irregularity relating to stop transfer instructions, the Paying Agent will consult with the Surviving Corporation on taking  such actions as are necessary to cause such irregularity to be corrected.  In this regard, the Paying Agent is authorized to waive an irregularity in connection with the surrender of Common Shares after review of the irregularity with the Surviving Corporation and after approval in writing of any of the officers or agents of the Surviving Corporation listed in Section 4.4 herein, provided that the Paying Agent agrees that waiving such irregularity shall not cause the Paying Agent to be subjected to any potential liability related thereto.

**Section 2.4.  Submission of Stock Certificates and/or Shares Held in Book-entry and Payment of Exchange Price**.  The Paying Agent will promptly, consistent with this Agreement and the Letter of Transmittal, mail by first class mail to each Shareholder who has surrendered exchangeable Common Shares or at the request of such Shareholder make available for pick-up upon reasonable advance notice to allow for processing time, a check drawn in an amount equal to $15.00 for each Common Share represented by the certificate or certificates or book-entry position submitted by such Shareholder; *provided*, that the Paying Agent shall, in the alternative,  make such payment to a Shareholder if so instructed by the Surviving Corporation.  Without duplication of amounts, payment to the Depositary Trust Company ("DTC" or "CEDE") will be made by Federal Funds wire as soon as reasonably practicable following the Closing  (and the funding of the Payment Fund).]  No interest will be paid or accrued on such amount for the benefit of the Shareholder.  The Paying Agent will forward all such payments by first-class mail, postage prepaid.  Such check shall be made payable to the holder of record of the Common Shares represented by such certificates or book-entry shares or to the person whose name has been specified in the New Registration Instructions contained in the Letter of Transmittal received by the Paying Agent with respect to such shares.

**Section 2.5.  Eligibility of Shares for Payment.** Other than Excluded Shares and Restricted Shares, all Common Shares are eligible for payment regardless of any restrictive legend affixed thereupon or applicable thereto.

**Section 2.6.  Lost, Stolen or Destroyed Certificates.**  If any Shareholder shall report that its, his or her failure to surrender any certificate or certificates representing Common Shares registered in its, his or her name is due to the loss, theft, misplacement or destruction of such certificate or certificates, the Paying Agent shall require such Shareholder to furnish a bond of indemnity in customary amount and form reasonably satisfactory to the Paying Agent and the Surviving Corporation before delivering to such Shareholder or its, his or her transferee the applicable Merger Consideration to which it, he or she is entitled.  The value of the bond of indemnity shall be calculated by the Paying Agent, based on the value of lost or misplaced shares.

**Section 2.7.  Tax Certifications and Reporting.**

(a) That the parties agree and acknowledge that the Paying Agent is a "Payer," "Withholding Agent," "Middleman" or "Broker" as defined in Chapters 3, 4, 24 and 61 of the Internal Revenue Code ("IRC"), Title 26, United States Code.  In addition the Paying Agent is bound by any applicable state laws regarding backup withholding requirements.  Therefore:

(i)    The Paying Agent may, but is not required to, accept for any Shareholders who are U.S. persons a certification and indemnification statement provided by the Surviving Corporation regarding its prior receipt of Taxpayer Identification Number (TIN) certification documentation on an IRS Form W-9 (or valid substitute form) pursuant to the requirements found in IRC §3406 and the Treasury regulations promulgated thereunder.

(ii)    The Paying Agent will solicit an applicable Form W-8 (including any required additional documentation) from any nonresident alien (NRA) individuals or foreign entities that are Shareholders pursuant to Chapters 3 and 4 of the IRC, as amended and effective, and the Treasury regulations promulgated thereunder.

(iii)    The Paying Agent will apply federal and state backup withholding as required by federal and state law and regulations on the applicable reportable date for any Shareholder who has not provided a TIN or certified TIN, as required.  The Surviving Corporation acknowledges that, as the Payer or Withholding Agent, the Paying Agent has full, complete and final authority regarding all determinations concerning withholding requirements and responsibilities in accordance with applicable federal and state tax certification and reporting regulations.

(iv)    If the Paying Agent is not provided applicable cost basis information in accordance with IRC § 6045A with respect to any Common Shares tendered to the Paying Agent for payment hereunder upon a request that complies with Treasury Regulation § 1.6045A–1(b)(12), the Paying Agent shall mark such security as "noncovered" and not subject to cost basis adjustments or reporting on a Form 1099-B upon the subsequent sale, exchange, maturity or other disposition of such security.  If the Paying Agent is provided applicable cost basis information in accordance with IRC § 6045A, the Paying Agent may rely on the cost basis information provided to it by the Surviving Corporation, and the Paying Agent shall have no responsibility whatsoever to verify or ensure the accuracy of the cost basis information provided to it.

(v)    The Paying Agent will prepare and file on behalf of the Surviving Corporation, if required in connection with payments made by the Paying Agent to former Shareholders under this Agreement, an IRS Form 1099-B, provided that to the extent directed otherwise by Parent or the Surviving Corporation, the Paying Agent shall provide

another required IRS Form to a former Shareholder.  Notwithstanding anything to the contrary, if required in connection with payments made by the Paying Agent to former Shareholders under this Agreement, to the extent a former Shareholder is required to receive an IRS Form W-2 rather than an IRS Form 1099, the Paying Agent shall not provide an IRS Form 1099-B and the Surviving Corporation shall be responsible for providing an IRS Form W-2 to any former Shareholder or holder of options or warrants. The Paying Agent and the Surviving Corporation shall cooperate in good faith to determine the correct information reporting for any Shareholder if required in connection with payments made by the Paying Agent to former Shareholders under this Agreement.

**(b)  Indemnification.**  The Surviving Corporation shall indemnify, defend and hold the Paying Agent harmless from and against any tax, late payment, interest, penalty or other cost or expense that may be assessed against the Paying Agent arising out of or in connection with the performance of the Paying Agent's obligations under the terms of this § 2.7 unless such tax, late payment, interest, penalty or other expense was directly caused by the gross negligence or willful misconduct of the Paying Agent.  The indemnification provided by this § 2.7(b) is in addition to the indemnification provided in § 4.6 and shall survive the resignation or removal of the Paying Agent and the termination of this Agreement.

**Section 2.8.  Submission of Stock Certificates and/or Book-entry Shares by Shareholders Not of Record but Who Have Acquired Their Shares in Due Course**.  Certain stock certificates and or book-entry shares may be tendered by Shareholders who are holders in due course but are not registered holders.  Upon submission of such a certificate or book-entry shares duly endorsed or with assignments duly executed by the registered holder (or his duly appointed agent, attorney, executor, administrator, guardian or other fiduciary), together with the requisite medallion guarantee of signature (and evidence of authority if appropriate) if such certificate or book-entry share(s) is accompanied by a duly completed and executed Letter of Transmittal, the Paying Agent will be entitled to treat such certificate or book-entry share(s) as if surrendered by the registered holder thereof.

**Section 2.9.  Cancellation of Surrendered Stock Certificates and/or Book-entry Shares, Shareholders Lists**.  At the time of the Paying Agent's issuance of a check or wire transfer as described in Section 2.4 above, the Paying Agent will cancel each stock certificate and/or book-entry share(s) surrendered in exchange for such check or wire transfer.  For the term of this Agreement the Paying Agent will maintain on a continuing basis a list of those Shareholders who have surrendered their stock certificates and book-entry shares, and at the request of the Surviving Corporation, the Paying Agent will inform it as to whether certain Shareholders have surrendered their shares.  The Paying Agent will also make available to the Surviving Corporation such other information as it may have in its possession and as it may reasonably request from time to time.

**Section 2.10.  Canceled Stock.**  Subject to applicable law and regulation, the Paying Agent shall maintain (i) in a retrievable database electronic records or (ii) in hard copy form physical records of all cancelled or destroyed stock certificates which have been canceled or destroyed by the Paying Agent. The Paying Agent shall maintain such electronic records or physical records for the time period required by applicable law and regulation.  Upon written request of the Surviving Corporation, the Paying Agent shall provide to the Surviving Corporation or its designee copies of such electronic records or physical records relating to stock certificates cancelled or destroyed by the Paying Agent.

**Section 2.11.  Mailing of Second Letter of Transmittal and Unexchanged Shareholder Program.**  The Paying Agent shall send a second Letter of Transmittal to all shareholders that have failed to send in their Common Shares entitled to Merger Consideration for exchange at a time deemed appropriate by the Paying Agent, which will occur after approximately one hundred twenty (120) days (but not later than one-hundred eighty (180) days) after the Effective Time of the Merger.] On the 180 day anniversary of the Effective Time, any amounts remaining in the Payment Fund will be returned to Parent.

If mutually agreed  upon by the parties in writing,  after the Effective Time of the Merger, the Paying Agent may (with the prior written consent of the Surviving Corporation) utilize the services of an unexchanged shareholder search company (a "Search Company") for the purpose of locating unexchanged shareholders and assisting them in exchanging their shares.  If it is agreed upon by the parties that any such Search Company be engaged by the Paying Agent,  the terms of any such engagement of such Search Company to retained by the Paying Agent (including any fees that such Search Company may charge the shareholder in respect  its search services), shall be mutually agreed upon by the parties hereto.

## ARTICLE III

**Section 3.1.  Unclaimed Property Administration.**  Subject to applicable unclaimed property laws, if any, upon the written request of the Surviving Corporation, the Paying Agent will initiate unclaimed property reporting services for unclaimed shares and related cash distributions, which may be deemed abandoned or otherwise subject to applicable unclaimed property law or regulation.  Such services may include preparation of unclaimed property reports, delivery of abandoned property to various states, completion of required due diligence notifications, responses to inquiries from owners, and such other services as may reasonably be necessary to comply with applicable unclaimed property laws or regulations.

**Section 3.2.  Information about Unclaimed Property.** The Surviving Corporation shall assist the Paying Agent and provide such cooperation as may reasonably be necessary in the performance of the services hereunder.

**Section 3.3.  Inquiries about Unclaimed Property.**  The Paying Agent shall assist the Surviving Corporation in responding to inquiries from administrators of state unclaimed property law or regulation regarding reports filed on the Surviving Corporation's behalf pursuant to this Article III or in response to requests to confirm the name of a reclaiming owner. The Paying Agent shall exercise reasonable efforts to obtain release agreements from the various states offering such release agreements with respect to reports and abandoned property delivered to them and indemnification agreements from those states willing to provide them.

**Section 3.4.  Remittance of Unclaimed Property.** To the extent directed by the Surviving Corporation in writing from time to time, the Paying Agent or its duly appointed agent shall timely remit unclaimed funds to the appropriate state or jurisdiction, as required under applicable unclaimed property law or regulation.  The Paying Agent shall provide such reports regarding unclaimed property services hereunder as the Surviving Corporation may reasonably request from time to time. Neither the Surviving Corporation nor the Paying Agent shall be liable to any former Shareholder for any amount properly delivered in respect of such Common Shares to a public official pursuant to any applicable abandoned property, escheat or similar laws. Any amounts remaining unclaimed by Shareholders at such date as is immediately prior to the time at which such amounts would otherwise escheat to or become property of any applicable governmental body shall become, to the extent permitted by applicable legal requirements, the property of the Surviving Corporation, free and clear of all claims or interest of any person or entity previously entitled thereto.

For purposes of clarification, unless otherwise mutually agreed upon by the parties, the Paying Agent's obligation under this Article III shall concurrently terminate with any termination of this Agreement.

## ARTICLE IV

**Section 4.1.  Advice of Counsel.**

**(a) Advice in Case of Defective Submission**.  The Paying Agent is authorized to cooperate with and furnish information to the Surviving Corporation and shall seek and follow, and may rely upon, advice of the Surviving Corporation or its counsel with respect to any action to be taken by the Paying Agent if the Paying Agent receives any of the following:

    (i)    any request for payment with respect to certificates claimed to be lost or stolen;

    (ii)    any submission of stock certificates not accompanied by a duly completed and executed Letter of Transmittal;

    (iii)    any request that payment be made with respect to any Common Shares to any person other than the registered holder thereof (except as provided for in Section 2.8 above); or

    (iv)    any request by a Shareholder that the Paying Agent take any action other than that specified in this Agreement with respect to the exchange of its, his or her Common Shares for cash.

(b) **Advice in Other Cases**.  Notwithstanding the provisions of Section 4.1(a) above, the Paying Agent may, when the Paying Agent deems it desirable and after prior consultation with the Surviving Corporation, seek advice of the Paying Agent's own counsel in connection with the Paying Agent's services as Paying Agent hereunder and the Paying Agent shall be entitled to rely in good faith upon any such advice received in writing and, if pre-approved by the Surviving Corporation to be compensated for the reasonable and documented out-of-pocket fees and expenses of such counsel (if such counsel is outside counsel) as provided in Section 4.2 below.

**Section 4.2.  Fees and Expenses**.  The Surviving Corporation will pay or cause to be paid to the Paying Agent fees for the Paying Agent's services hereunder as set forth in **Exhibit B** attached hereto, payable upon the Paying Agent's invoice to the Surviving Corporation.  All reasonable out-of-pocket costs pre-approved by the Surviving Corporation and incurred by the Paying Agent hereunder will be reimbursed to the Paying Agent by the Surviving Corporation.  Such costs may include, but are not limited to, postage, mail insurance, stationery and supplies, checks, envelopes, paper stock and fees and reasonable expenses of counsel.  The Paying Agent agrees that it will endeavor to obtain competitive rates for out-of-pocket costs.

**Section 4.3.  Timeliness and Accuracy of Records.**  The Paying Agent's agreement to the terms and conditions of this Agreement and the fee schedule attached assumes that the records of the Surviving Corporation or its transfer agent are accurate, received in a timely fashion and in good order so that conversion of the records may be completed efficiently and additional balancing and/or correcting of the records shall not be not required.  If the records are received late, or are inaccurate, incomplete and/or otherwise not in good order, the mailing of materials to shareholders may need to be delayed and additional fees may apply as appropriate for time spent correcting and/or balancing the records, during which time the Paying Agent shall use its reasonable best efforts to work with the Company to correct and/or balance the records and additional fees may apply as appropriate for time spent correcting and/or balancing such records.

**Section 4.4.  Authorized Surviving Corporation Representatives**.  Each of the following is authorized by the Surviving Corporation to give the Paying Agent any further instructions in connection with the Paying Agent acting as Paying Agent hereunder:

Name                Title                            Phone Number

| Ira M. Dansky | Authorized Representative | (212) 536 9526 |
| Chris Cade | Authorized Representative | (215) 781-5508 |

**Section 4.5   Reliance upon Certificates, Instructions.**  The Paying Agent shall be protected in relying and acting, or refusing to act, without further investigation upon any certificate or certification, instruction, direction, statement, request, consent, agreement, or other instrument (collectively "Certificates and Instructions") whatsoever furnished to the Paying Agent by an authorized representative of the Surviving Corporation, not only as to its due execution and validity and the effectiveness of its provisions, but also as to the truth and accuracy of any information therein contained, which the Paying Agent shall in good faith believe to be genuine or to have been signed or presented by a proper person or persons.  The Paying Agent shall have no responsibility or liability for the accuracy or inaccuracy of such Certificates and Instructions.

**Section 4.6   Indemnification**.  The Surviving Corporation will indemnify, defend, protect and hold harmless the Paying Agent from and against any and all losses, liabilities, costs, damages or expenses, including, without limitation, reasonable and documented attorneys' fees and expenses, incurred or made, arising out of or in connection with the performance of the Paying Agent's obligations under the provisions of this Agreement, including but not limited to, acting, or refusing to act, in reliance upon any signature, endorsement, assignment, certificate, order, request, notice, report, record, instructions or other instrument or document believed by the Paying Agent in good faith to be valid, genuine and sufficient; provided, however, such indemnification shall not apply to any such act or omission finally adjudicated to have been directly caused by the willful misconduct or gross negligence of the Paying Agent.  The Paying Agent shall be under no obligation to institute or defend any action, suit, or legal proceeding in connection herewith or to take any other action likely to involve the Paying Agent in expense, unless first indemnified to the Paying Agent's satisfaction.  The indemnities provided by this paragraph shall survive the resignation or discharge of the Paying Agent or the termination of this Agreement.  Anything in this Agreement to the contrary notwithstanding, in no event shall the Paying Agent or the Surviving Corporation be liable under or in connection with the Agreement for indirect, special, incidental, punitive or consequential losses or damages of any kind whatsoever, including but not limited to lost profits, whether or not foreseeable, even if the Paying Agent or the Surviving Corporation has been advised of the possibility thereof and regardless of the form of action in which such damages are sought.

**Section 4.7.   Term**.  The Surviving Corporation and the Paying Agent agree that, unless terminated in writing by either party with 30 days' notice (or by Parent, prior to the Effective Time of the Merger, upon written notice from Parent to the Surviving Corporation and the Paying Agent – which termination by Parent shall be effective immediately), this Agreement shall terminate either upon completion of the exchange of all Common Shares and other payments subject to this Agreement or upon completion of all unclaimed property reporting and escheatment obligations arising in connection with the Merger and the duties of the Paying Agent pursuant to this Agreement. Subject to the proviso hereto, upon termination of this Agreement for any reason, the Paying Agent shall deliver to the Surviving Corporation any and all funds which have been made available to the Paying Agent hereunder (and all interest and other income received by the Paying Agent in respect of any funds made available to it) and not disbursed prior to the time of such termination to the former holders of Common Shares pursuant to this Agreement and the Merger Agreement; provided, however, that, notwithstanding any provision herein to the contrary, in the event that this Agreement is terminated prior to the Effective Time of the Merger, any and all funds which have been made available to the Paying Agent hereunder (including the funds deposited into the Payment Fund) shall be returned to Parent.  Upon termination of this Agreement, the Paying Agent shall retain all canceled certificates and related documentation as required by applicable law.  If after 7 years any Common Shares remain unexchanged or other payments remain unpaid and moneys and/or securities on deposit hereunder are not escheatable in accordance with unclaimed property laws and regulations, then the Paying Agent may terminate this

Agreement (if this Agreement has not been previously terminated) and any remaining property shall be delivered to the Surviving Corporation.  Thereafter, the Surviving Corporation shall be responsible for compliance with unclaimed property obligations.

**Section 4.8.  Amendments, etc.**  No provision of this Agreement may be changed, waived, discharged or terminated except by an instrument in writing signed by Parent and the party against which enforcement of the provision which is the subject of such change, waiver, discharge or termination is sought.  Any inconsistency between this Agreement on the one hand and the Merger Agreement and the Letter of Transmittal on the other shall be resolved in favor of the Merger Agreement and the Letter of Transmittal, with the qualification that (a) the Paying Agent is not a party to the Merger Agreement and as such is not subject to its terms, as noted in Section 1.2 above, and (b) the rights and obligations of the Paying Agent shall be governed solely by the provisions of this Agreement.  In the absence of written notice from the Surviving Corporation to the effect that an inconsistency exists between the Merger Agreement or Letter of Transmittal and this Agreement, the Paying Agent shall be entitled to assume that no such inconsistency exists.

**Section 4.9.  Notices.**  All notices to be given by one party to the other under this Agreement shall be in writing and shall be sufficient if made to such party at their respective address set forth below by:

(a)  personal delivery (including delivery by any commercial delivery service);

(b)  registered or certified mail, postage prepaid, return receipt requested; or

(c)  facsimile transmission ("Fax") followed by mail delivery pursuant to subsection (b);

If notice to the Surviving Corporation:

The Jones Group Inc.
1411 Broadway, 36th Floor
New York, NY 10018

Attention:  Ira M. Dansky

Telephone: (212) 536 9526
Facsimile: (212) 790-9988

With a copy to:

Winston & Strawn LLP
Attn: James P. Faley
35 W. Wacker Drive
Chicago, Illinois 60601

Telephone: (312) 558-5600
Facsimile: (312) 558-5700

If notice to Parent:

Jasper Parent LLC
c/o Sycamore Partners
9 West 57th Street, 31st Floor
New York, NY 10019
Attention:   Stefan Kaluzny

Facsimile:   (212) 796-8560


With a copy to:

Winston & Strawn LLP
Attn: James P. Faley
35 W. Wacker Drive
Chicago, Illinois 60601

Telephone: (312) 558-5600
Facsimile: (312) 558-5700


If notice to the Paying Agent:

Wells Fargo Shareowner Services
Attn: Erik Amundson
1110 Centre Pointe Curve, Suite 101
Mendota Heights, Minnesota  55120-4101

Telephone:     651-450-4042
Facsimile:     651-450-4078

These addresses may be changed by giving written notice to the other party.

All notices and communications hereunder shall be in writing and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, including facsimile capable of transmitting or creating a written record directly to the office of the recipient, when received by the recipient party at the address shown above, or at such other addresses as may hereafter be furnished to the parties by like notice.  Any such demand, notice or communication hereunder shall be deemed to have been received on the date received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt, or in the case of facsimile, the date noted on the confirmation of such transmission).

**Section 4.10.  Counterparts**.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

**Section 4.11. Law**.  This Agreement shall be governed in all respects, including validity, interpretation and effect, by the laws of the State of New York.

**Section 4.12.  Compliance.** The Paying Agent has verified to its satisfaction of all regulatory requirements applicable to the Parent and the Surviving Corporation (including any applicable requirements under the USA Patriot Act Customer Identification Program (CIP), the Bank Secrecy Act (BSA), and the U.S. Department of the Treasury Office of Foreign Assets Control (OFAC), each as may be amended from time to time), including a successful completion of a final background check. Following the date hereof, the Paying Agent may terminate this Agreement pursuant to Section 4.7 (subject to it compliance with its obligations thereunder), in the event that Parent and the Surviving Corporation fail to be in compliance with such applicable requirements under the USA Patriot Act Customer Identification Program (CIP), the Bank Secrecy Act (BSA), and the U.S. Department of the Treasury Office of Foreign Assets Control (OFAC) such that such applicable legal requirements would prohibit the Paying Agent from continuing to serve as the Paying Agent hereunder.

**ARTICLE V**

**Section 5.1.  Confidential Data.**  The Paying Agent acknowledges that during the course of this Agreement, the Surviving Corporation may make confidential data available to the Paying Agent or the Paying Agent may otherwise obtain proprietary or confidential information regarding the Surviving Corporation, its shareholders, affiliates or other rights owners (collectively, hereinafter "Confidential Data").  Confidential Data includes all information of the Surviving Corporation not generally known or used by others which is confidential or proprietary to the Surviving Corporation.  Such information includes, but is not necessarily limited to, data or information which identifies past, current or potential customers, shareholders, business practices, financial results, research, development, systems and plans; and/or certain information and material identified by the Surviving Corporation as "Proprietary" or "Confidential"; and/or data received from the Surviving Corporation.  Confidential Data may be written, oral, recorded, or maintained on other forms of electronic media.  Because of the sensitive nature of the information that the Paying Agent and its employees or agents may obtain as a result of this Agreement, the intent of the parties is that these provisions be interpreted as broadly as possible to protect Confidential Data of the Surviving Corporation.

**Section 5.2.  Relief.**  The Paying Agent acknowledges that all Confidential Data furnished by the Surviving Corporation is considered proprietary and strictly confidential.  The Paying Agent also acknowledges that the unauthorized use or disclosure of any Confidential Data may cause irreparable harm to the Surviving Corporation.  Accordingly, the Paying Agent agrees that the Surviving Corporation shall be entitled to equitable relief, including injunctive relief, in addition to all other remedies available at law for any threatened or actual breach of this agreement or any threatened or actual unauthorized use or disclosure of Confidential Data.

**Section 5.3.  Security Measures.**  The Paying Agent will employ the same security measures to protect Confidential Data received from or on behalf of the Surviving Corporation that it would employ for its own comparable confidential information (but in no event less than a reasonable degree of care in handling Confidential Data). Without limiting the foregoing, the Paying Agent further agrees, subject to applicable law and regulations, that: (i) Confidential Data shall not be distributed, disclosed, or conveyed to any third party except by prior written approval of the Surviving Corporation; (ii) no copies or reproductions shall be made of any Confidential Data, except as needed to provide the services described in this Agreement; and (iii) the Paying Agent shall not use any Confidential Data for its own benefit or for the benefit of any third party.

**Section 5.4.  Subpoena, Summons or Legal Process.**  Except as prohibited by applicable law or regulation, the Paying Agent shall promptly notify the Surviving Corporation in writing of any subpoena, summons or other legal process served on the Paying Agent for the purpose of obtaining Confidential Data, including any action involving Confidential Data (i) consisting of a shareholder list, such as an identified class of shareholders, or (ii) relating to significant regulatory action or litigation that would have a material effect on the performance of the Paying Agent or corporate status of the Surviving Corporation.  In such cases, the Surviving Corporation shall have a reasonable opportunity to seek appropriate protective measures; provided, however, that this subsection shall not require the Paying Agent to notify the Surviving Corporation of its receipt of any subpoena, summons or other legal process seeking Confidential Data for a single shareholder or group of related shareholders in connection with routine tax levies or other routine third party litigation involving a shareholder or if the Paying Agent is prohibited by law or regulation from making such disclosure.  The Surviving Corporation will reimburse the Paying Agent for all reasonable out-of-pocket expenses  incurred by the Paying Agent in connection with determining the lawful release of the Confidential Data.

**Section 5.5.  Exceptions.**  The obligations set forth in Sections 5.1 through 5.4 above shall not apply to:

> (a)    any disclosure specifically authorized in writing by the Surviving Corporation;

(b)    subject to the Paying Agent's compliance with Section 5.4 hereof, any disclosure required by applicable law or regulation, including pursuant to a court order; or

(c)    Confidential Data which:

(1)    has become public without violation of this Agreement; or

(2)    was disclosed to the Paying Agent by a third party not under an obligation of confidentiality to any party; or

(3)    was independently developed by the Paying Agent not otherwise in violation or breach of this Agreement or any other obligation of the Paying Agent to the Surviving Corporation or Parent; or

(4)    was rightfully known to the receiving party prior to entering into this Agreement.

**Section 5.6.  Obligations Beyond Termination or Assignment.**  The obligations of each party set forth in this Article V shall survive termination or assignment of this Agreement.

**Article VI**

**Section 6.1  Security Procedure for Funds Transfers.**  Wells Fargo shall confirm each funds transfer instruction received hereunder in respect of the Payment Fund or otherwise (whether from Parent, the Surviving Corporation or otherwise) by means of the security procedure selected by Parent and communicated to Wells Fargo through a signed certificate in the form of Exhibit C attached hereto, which upon receipt by Wells Fargo shall become a part of this Agreement.  Once delivered to Wells Fargo, Exhibit C may be revised or rescinded only by a writing signed by an authorized representative of Parent.  Such revisions or rescissions shall be effective only after actual receipt and following such period of time as may be necessary to afford Wells Fargo a reasonable opportunity to act on it.  If a revised Exhibit C or a rescission of an existing Exhibit C is delivered to Wells Fargo by an entity that is a successor-in-interest to Parent, such document shall be accompanied by additional documentation satisfactory to Wells Fargo showing that such entity has succeeded to the rights and responsibilities of Parent under this Agreement.  Parent understands that Wells Fargo's inability to receive or confirm funds transfer instructions pursuant to the security procedure selected by Parent may result in a delay in accomplishing such funds transfer, and agrees that the Wells Fargo shall not be liable for any loss caused by any such delay.

[Signature Page to follow.]

**IN WITNESS WHEREOF,** the Surviving Corporation and the Paying Agent have caused their names to be signed hereto by their duly authorized officers, all as of the date first written above.

**THE JONES GROUP INC.**

By _____
Name: Ira M. Dansky
Title:   Executive Vice President, General Counsel
and Secretary


**JASPER PARENT LLC**

By _____
Name: Stefan Kaluzny
Title:   Chief   Executive   Officer,   President   and
Assistant Secretary


**WELLS    FARGO    BANK,    NATIONAL
ASSOCIATION**

By_____
Name:
Title:

[Paying Agent Agreement]

**IN WITNESS WHEREOF,** the Surviving Corporation and the Paying Agent have caused their names to be signed hereto by their duly authorized officers, all as of the date first written above.

### THE JONES GROUP INC.

By: _____
Name: _____
Title: _____

### JASPER PARENT LLC

By: _____
Name: _____
Title: _____

### WELLS FARGO BANK, NATIONAL ASSOCIATION

By: _Andrea Severson 4/4/14_____
Name: _Andrea Severson_____
Title: _AVP- Client Services_____

[[NYCORP:3455425v4:3658w: 03/09/2014--07:43 PM]]

**Exhibit A**

FORM OF LETTER OF TRANSMITTAL

# LETTER OF TRANSMITTAL

Exchange of Shares of Common Stock of The Jones Group Inc. **–** CUSIP #48020T101

for Cash

On April 8, 2014, The Jones Group Inc., a Pennsylvania corporation ("Jones"), Jasper Parent LLC, a Delaware limited liability company ("Parent"), and Jasper Merger Sub, Inc., a Pennsylvania corporation and wholly-owned subsidiary of Parent ("Merger Subsidiary"), completed the merger (the "Merger") of Merger Subsidiary into Jones pursuant to the Agreement and Plan of Merger dated December 19, 2013 (the "Merger Agreement") by and among Jones, Parent and Merger Subsidiary.  As a result of the Merger, Merger Subsidiary was merged with and into Jones, with Jones being the surviving entity in the Merger, and Jones became a wholly-owned subsidiary of Parent.

By virtue of the Merger, each share of common stock, par value $0.01 per share, of Jones ("Common Stock") outstanding immediately prior to the Merger (other than certain shares excluded from payment entitlement in accordance with the Merger Agreement), was automatically cancelled and converted into the right to receive $15.00 in cash (without interest and less any applicable withholding taxes) (the "Merger Consideration").

To receive the applicable Merger Consideration for your shares of Common Stock, please complete this Letter of Transmittal and return it (**ALONG WITH THE CERTIFICATES REPRESENTING THOSE SHARES OF COMMON STOCK THAT YOU HOLD IN CERTIFICATED FORM AND ANY RELATED FORMS REQUIRED TO BE DELIVERED BY YOU PURSUANT TO THIS LETTER OF TRANSMITTAL**) to Wells Fargo Shareholder Services at the address shown on this form.  Instructions concerning the completion of the Letter of Transmittal are set forth on the following pages.

**All shareholders must complete Boxes A, B, and G.  Please also read the "General Instructions" beginning on page 3.**

**FOR OFFICE USE ONLY   Approved _____   W-9 Completed _____**

| BOX A – Signature of Registered Shareholders | BOX B – Certificate(s) Enclosed | |
|---|---|---|
| (Must be signed by all registered shareholders; include legal capacity if signing on behalf of an entity) | Certificate Number(s) (Attach additional signed list, if necessary) | Number of Shares Represented by Each Certificate |
| | | |
| **Signature** | | |
| | | |
| **Signature** | | |
| | | |
| **Telephone Number** | **Total Shares Surrendered:** | |

☐ **Lost Certificates. I have lost my certificate(s) for _____ shares and require assistance in replacing them. A $50.00 replacement fee must be sent in with the completed letter of transmittal. The check must be made payable to Shareowner Services. If additional forms and fees are needed, you will be contacted.**

| BOX C – New Registration Instructions | BOX   D – One Time Delivery Instructions |
|---|---|
| To be completed *ONLY* if the check is to be issued in the name(s) of someone other than the registered holder(s) in Box E. ISSUE TO: | To be completed *ONLY* if the check is to delivered to an address other than that listed in Box E. MAIL TO: |
| | |
| **Name** | **Name** |
| **Street Address** | **Street Address** |
| **City, State and Zip Code** | **City, State and Zip Code** |

**Please remember to complete and sign the Substitute Form W-9 in Box G on the next page or, if applicable, the enclosed W-8BEN form.**

| BOX E – Name and Address of Registered Holder(s) | BOX F – Medallion Guarantee |
|---|---|
| Please make any address corrections below | If you have completed Box C, your signature must be *Medallion Guaranteed* by an eligible financial institution. |

**Error! Unknown document property name.**

☐ indicates permanent address change

**Note: A notarization by a notary public is not acceptable**

| **BOX G – Request for Taxpayer Identification Number and Certification – Substitute Form W-9** |
|---|

Certification: Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (as defined in the instructions below)

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

Social Security Number

☐☐☐ - ☐☐ - ☐☐☐☐

Employer Identification Number

☐☐ / ☐☐☐☐☐☐☐

Notification of Backup Withholding

____ I have been notified by the Internal Revenue Service (IRS) that I am currently subject to backup withholding as a result of a failure to report all interest and dividends on my tax return. I understand that marking this box will result in backup withholding on any disbursements made to this account. You must also cross out item 2 above. "The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding."

Exemptions:

Required: Check appropriate box for federal tax classification:

☐ Individual/sole proprietor  ☐ C Corporation  ☐ S Corporation  ☐ Partnership ☐ Trust/estate

☐ Limited liability company.  Enter tax classification (C=C corporation, S=S corporation, P=partnership):

Exempt payee code (if any)_____

Exemption from FATCA reporting code (if any)_____

Signature: _____   Date: _____

**NOTICE TO NON-RESIDENT ALIEN INDIVIDUALS OR FOREIGN ENTITIES (e.g. foreign corporation, partnership or trusts):** *DO NOT COMPLETE THE ABOVE SUBSTITUTE FORM W-9.* **YOU MAY OBTAIN THE APPROPRIATE FORM W-8 AT www.irs.gov OR BY CALLING 877-262-8260. COMPLETE THE APPROPRIATE FORM W-8 AND RETURN THE FORM W-8 CERTIFICATION TO WELLS FARGO SHAREHOLDER SERVICES AT THE ADDRESS SHOWN ON THIS FORM UNDER THE "GENERAL INSTRUCTIONS" BEGINNING ON PAGE 3. PLEASE CONSULT YOUR OWN TAX ADVISOR TO DETERMINE THE APPROPRIATE FORM W-8.  FAILURE TO DO SO WILL SUBJECT YOU TO FEDERAL BACKUP WITHHOLDING AT THE CURRENT APPLICABLE RATE.**

**Error! Unknown document property name.**

# General Instructions

- **BOX A-Signatures:** All registered shareholders must sign as indicated in Box A. If you are signing on behalf of a registered shareholder or entity your signature must include your legal capacity.

  **YOUR GUARANTOR (BANK/BROKER) WILL REQUIRE PROOF OF YOUR AUTHORITY TO ACT. CONSULT YOUR GUARANTOR FOR THEIR SPECIFIC REQUIREMENTS. YOU OR YOUR GUARANTOR MAY ACCESS THE SECURITIES TRANSFER ASSOCIATION (STA) RECOMMENDED REQUIREMENTS ON-LINE AT www.stai.org.**

- **BOX B-Certificate Detail:** List all certificate numbers and shares submitted in Box B. Any book-entry shares held by you will be automatically exchanged upon receipt of this properly completed Letter of Transmittal. If your certificates are lost, please check the box and complete below Box A. A $50 lost certificate replacement fee must be mailed in with your completed Letter of Transmittal. If there are additional forms or fees needed, you will be contacted.

- **BOX C-New Registration:** Provide the new registration instructions (name and address) in Box C. Complete Box G to certify tax identification number for new registration of U.S. citizen, resident or entity. Signature must be that of the new registration indicated. See notice to non-resident aliens above. All changes in registration require a Medallion Signature Guarantee. Joint registrations must include the form of tenancy. Custodial registrations must include the name of the Custodian (only one). Trust account registrations must include the names of all current acting trustees and the date of the trust agreement. If this transaction results in proceeds at or above $14,000,000.00 in value please contact Wells Fargo Shareowner Services at the number listed below.

  Tax implications apply to the registered shareholder (i.e., person identified in Box E) at the time of transfers unless Gift or Inheritance rules apply. For tax-related information or questions, contact your tax advisor.

- **BOX D-One Time Delivery:** Any address shown in Box D will be treated as a one-time only mailing instruction.

- **BOX E-Current Name and Address of Registered Shareholder:** If your permanent address should be changed on Wells Fargo Shareowner Services records, please make the necessary changes in Box E.

  Tax implications apply to the registered shareholder (i.e., person identified of Box E) at the time of the transfer unless Gift or Inheritance rules apply. For tax-related information or questions, contact your tax advisor.

- **BOX F-Signature Guarantee:** Box F (*Medallion* Guarantee) only needs to be completed if the name on the check will be different from the current registration shown in Box E. This guarantee is a form of signature verification which can be obtained through an eligible financial institution such as a commercial bank, trust company, securities broker/dealer, credit union or savings institution participating in a Medallion program approved by the Securities Transfer Association.

- **BOX G-Request for Taxpayer Identification Number and Certification - Substitute Form W-9:** Complete Box G for registration of U.S. citizen, resident or entity to certify tax identification number. Please provide the social security or employer identification number of the person or entity receiving payment, including signature and date for the above described shares. Completion of the Substitute Form W-9 certifies that receiver of the payment is not subject to backup withholding. Failure to complete the form will subject the recipient to the applicable federal income tax withholding from any cash payment made to them pursuant to the exchange. Exempt recipients and recipients exempt from FATCA reporting should provide the appropriate code in the provided space. Consult the Form W-9 instructions available at www.irs.gov to determine the applicable code, if any.

  If you have any additional questions about completing the Substitute IRS Form W-9, please contact Wells Fargo Shareowner Services for additional instructions.

- **Penalties:** (1) If you fail to furnish your correct TIN, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect; (2) if you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty; and (3) willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

- **Definition of U.S. Person:** For federal tax purposes, you are considered a U.S. person if you are (1) An individual who is a U.S. citizen or U.S. resident alien, (2) A partnership, corporation, company or association created or organized in the United States or under the laws of the United States, (3) An estate (other than a foreign estate), or (4) A domestic trust (as defined in regulation 301.7701-7).

- **Deficient Presentments:** If you request a registration change that is not in proper form, the required documentation will be requested.

- **Returning Certificates:** Return this Letter of Transmittal with the certificate(s) to be exchanged _only_ to Wells Fargo Shareowner Services at the address below. The method of delivery is at your option and your risk, but it is recommended that documents be delivered via a registered method, insured for 2% of the value of your shares.

| *By Mail to:* | *By Overnight Courier or Hand-Delivery to:* |
|---|---|
| Wells Fargo Shareowner Services | Wells Fargo Shareowner Services |
| Corporate Actions Department | Corporate Actions Department |
| P.O. Box 64858 | 1110 Centre Pointe Curve, Suite 101 |
| St. Paul, MN 55164-0858 | Mendota Heights, MN 55120-4100 |

For additional information please contact our Shareowner Relations Department at 1-877-262-8260.

**Error! Unknown document property name.**

**THIS PAGE INTENTIONALLY LEFT BLANK**

**Exhibit B**

DEPOSITARY AND PAYING AGENT'S FEES AND EXPENSES



*Wells Fargo Bank, N.A.*
*Shareowner Services*
*1110 Centre Pointe Curve, Suite 101*
*Mendota Heights, MN 55120*

*Erik Amundson*
*Officer*
*CTS Relationship Manager*
*erik.a.amundson@wellsfargo.com*
*651-450-4042*

# SCHEDULE OF FEES
For Services as Paying Agent for
## The Jones Group Inc.

**Total Paying Agent Fees………..……………………………………… $21,500**

This is a one-time fee payable upon the effective date of appointment, including the review, negotiation and execution of the paying agent agreement, OFAC and USA Patriot Act due diligence, funding of DTC, Letter of Transmittal production, mailing, collection, and processing, on-going account maintenance, tax reporting and/or withholding for merger consideration payments, mailing of tax forms, postage, stationary, and all known out of pocket, shareholder calls, compliance review, record retention and escheatment services for un-exchanged holders.

*Wells Fargo's bid is based on the following assumptions:*

- Number of distributions to stockholders: 1
- Number of equity holders:  Up to 500
- Use of Wells Fargo Letter of Transmittal and Paying Agent Agreement
- Pricing includes waiver of transfer agent termination fee (10% of annualized fees)
- **ALL FUNDS WILL BE  RECEIVED FROM OR DISTRIBUTED TO A DOMESTIC OR AN APPROVED FOREIGN ENTITY**

**<u>Out-of Pocket Expenses</u>:**                                                                    **At Cost**

We only charge for out-of-pocket expenses in response to specific tasks assigned by the client and not contemplated in the above. Therefore, we cannot anticipate what specific out-of-pocket items will be needed or what corresponding expenses will be incurred. Possible expenses would be, but are not limited to, express mail and messenger charges, travel expenses to attend closing or other meetings.  There are no charges for indirect out-of- pocket expenses.

## Exhibit C

Jasper Parent LLC, a Delaware limited liability company ("Parent") certifies that the names, titles, telephone numbers, e-mail addresses and specimen signatures set forth in Parts I and II of this Exhibit C identify the persons authorized to provide direction and initiate or confirm transactions, including funds transfer instructions, on behalf of Parent, and that the option checked in Part III of this Exhibit C is the security procedure selected by Parent for use in verifying that a funds transfer instruction received by Wells Fargo is that of Parent.

Parent has reviewed each of the security procedures and has determined that the option checked in Part III of this Exhibit C best meets its requirements; given the size, type and frequency of the instructions it will issue to Wells Fargo. By selecting the security procedure specified in Part III of this Exhibit C, Parent acknowledges that it has elected to not use the other security procedures described and agrees to be bound by any funds transfer instruction, whether or not authorized, issued in its name and accepted by Wells Fargo in compliance with the particular security procedure chosen by Parent.

NOTICE: The security procedure selected by Parent will not be used to detect errors in the funds transfer instructions given by Parent. If a funds transfer instruction describes the beneficiary of the payment inconsistently by name and account number, payment may be made on the basis of the account number even if it identifies a person different from the named beneficiary. If a funds transfer instruction describes a participating financial institution inconsistently by name and identification number, the identification number may be relied upon as the proper identification of the financial institution. Therefore, it is important that Parent take such steps as it deems prudent to ensure that there are no such inconsistencies in the funds transfer instructions it sends to Wells Fargo.

### Part I
**Name, Title, Telephone Number, Electronic Mail ("e-mail") Address and Specimen Signature for person(s) designated to provide direction, including but not limited to funds transfer instructions, and to otherwise act on behalf of Parent**

| Name | Title | Telephone Number | E-mail Address | Specimen Signature |
|---|---|---|---|---|
| Peter Morrow | Vice President | 212-796-8500 | pmorrow@ sycamorepartners.com | X _(signature)_ |
| John Woodworth | Treasurer | 212-796-8500 | jwoodworth@ sycamorepartners.com | X |

### Part II
**Name, Title, Telephone Number and E-mail Address for person(s) designated to confirm funds transfer instructions**

| Name | Title | Telephone Number | E-mail Address |
|---|---|---|---|
| Peter Morrow | Vice President pmorrow@sycamorepartners.com | 212-796-8500 | |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

Paying Agent Agreement

[[NYCORP:3455425v4:3658w: 03/09/2014--07:43 PM]]

## Exhibit C

Jasper Parent LLC, a Delaware limited liability company ("Parent") certifies that the names, titles, telephone numbers, e-mail addresses and specimen signatures set forth in Parts I and II of this Exhibit C identify the persons authorized to provide direction and initiate or confirm transactions, including funds transfer instructions, on behalf of Parent, and that the option checked in Part III of this Exhibit C is the security procedure selected by Parent for use in verifying that a funds transfer instruction received by Wells Fargo is that of Parent.

Parent has reviewed each of the security procedures and has determined that the option checked in Part III of this Exhibit C best meets its requirements; given the size, type and frequency of the instructions it will issue to Wells Fargo. By selecting the security procedure specified in Part III of this Exhibit C, Parent acknowledges that it has elected to not use the other security procedures described and agrees to be bound by any funds transfer instruction, whether or not authorized, issued in its name and accepted by Wells Fargo in compliance with the particular security procedure chosen by Parent.

NOTICE: The security procedure selected by Parent will not be used to detect errors in the funds transfer instructions given by Parent. If a funds transfer instruction describes the beneficiary of the payment inconsistently by name and account number, payment may be made on the basis of the account number even if it identifies a person different from the named beneficiary. If a funds transfer instruction describes a participating financial institution inconsistently by name and identification number, the identification number may be relied upon as the proper identification of the financial institution. Therefore, it is important that Parent take such steps as it deems prudent to ensure that there are no such inconsistencies in the funds transfer instructions it sends to Wells Fargo.

## Part I
### Name, Title, Telephone Number, Electronic Mail ("e-mail") Address and Specimen Signature for person(s) designated to provide direction, including but not limited to funds transfer instructions, and to otherwise act on behalf of Parent

| Name | Title | Telephone Number | E-mail Address | Specimen Signature |
|------|-------|------------------|----------------|--------------------|
| Peter Morrow | Vice President | 212-796-8500 | pmorrow@ sycamorepartners.com | X |
| John Woodworth | Treasurer | 212-796-8500 | jwoodworth@ sycamorepartners.com | X /L D woodworth |

## Part II
### Name, Title, Telephone Number and E-mail Address for person(s) designated to confirm funds transfer instructions

| Name | Title | Telephone Number | E-mail Address |
|------|-------|------------------|----------------|
| Peter Morrow | Vice President pmorrow@sycamorepartners.com | 212-796-8500 | |
| John Woodworth | CFO | 212 796 8512 | Jwoodworth@ Sycamorepartners.com |

Paying Agent Agreement

[[NYCORP:3455425v4:3658w: 03/09/2014--07:43 PM]]

**Part III**

**<u>Means for delivery of instructions and/or confirmations</u>**

The security procedure to be used with respect to funds transfer instructions is checked below:

☐ *Option 1.  Confirmation by telephone call-back*.  Wells Fargo shall confirm funds transfer instructions by telephone call-back to a person at the telephone number designated on Part II above.  The person confirming the funds transfer instruction shall be a person other than the person from whom the funds transfer instruction was received, unless only one person is designated in both Parts I and II of this Exhibit C.

    ☐ CHECK box, if applicable:
    If Wells Fargo is unable to obtain confirmation by telephone call-back, Wells Fargo may, at its discretion, confirm by e-mail, as described in Option 2.

☒ *Option 2.  Confirmation by e-mail*.  Wells Fargo shall confirm funds transfer instructions by e-mail to a person at the e-mail address specified for such person in Part II of this Exhibit C.  The person confirming the funds transfer instruction shall be a person other than the person from whom the funds transfer instruction was received, unless only one person is designated in both Parts I and II of this Exhibit C.  ["_____"] understands the risks associated with communicating sensitive matters, including time sensitive matters, by e-mail.  ["_____"] further acknowledges that instructions and data sent by e-mail may be less confidential or secure than instructions or data transmitted by other methods. Wells Fargo shall not be liable for any loss of the confidentiality of instructions and data prior to receipt by Wells Fargo.

    ☒ CHECK box, if applicable:
    If Wells Fargo is unable to obtain confirmation by e-mail, Wells Fargo may, at its discretion, confirm by telephone call-back, as described in Option 1.

☐ *Option 3. Delivery of funds transfer instructions by password protected file transfer system only - no confirmation*.  Wells Fargo offers the option to deliver funds transfer instructions through a password protected file transfer system. If ["_____"] wishes to use the password protected file transfer system, further instructions will be provided by Wells Fargo.  If ["_____"] chooses this Option 3, it agrees that no further confirmation of funds transfer instructions will be performed by Wells Fargo.

☐ *Option 4.  Delivery of funds transfer instructions by password protected file transfer system with confirmation*.  Same as Option 3 above, but Wells Fargo shall confirm funds transfer instructions by ☐ telephone call-back or ☐ e-mail (must check at least one, may check both) to a person at the telephone number or e-mail address designated on Part II above.  By checking a box in the prior sentence, the party shall be deemed to have agreed to the terms of such confirmation option as more fully described in Option 1 and Option 2 above.

Dated this 9th day of April, 2014.

**Jasper Parent LLC**

By: _____
Name: Peter Morrow
Title:  Chief Financial Officer, Vice President and Secretary

Paying Agent Agreement