**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: NINE WEST LBO SECURITIES LITIGATION<br><br>Pertains to All Associated Actions | Case No. 20-MD-2941 (JSR) |

**MEMORANDUM OF LAW IN SUPPORT OF FORMER DIRECTOR AND OFFICER**
**DEFENDANTS' MOTION TO DISMISS UNDER THE**
**SECTION 546(e) SECURITIES SAFE HARBOR**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 2

STATEMENT OF FACTS ..................................................................................................... 3

ARGUMENT......................................................................................................................... 5

I.      All of Plaintiffs' Fraudulent Transfer Claims Are Equally Barred by Section
        546(e) ...................................................................................................................... 6

        A.      Payments for Restricted Shares and Share Equivalent Units in Connection
                With the LBO Were Both "Settlement Payments" and Transfers "In
                Connection With a Securities Contract" .................................................... 8

        B.      Shareholder Payments for Restricted Shares and Share Equivalent Units in
                Connection With the LBO Were "Made By or To (or For the Benefit Of)"
                A "Financial Institution".......................................................................... 9

                1.      Nine West Qualifies as a "Financial Institution" in Connection
                        with the LBO.............................................................................. 10

                2.      Nine West Was a "Financial Institution" for Payments Made
                        Through Payroll .......................................................................... 11

II.     Plaintiffs' Unjust Enrichment Claims Relating to Payments for Common Shares,
        Restricted Shares, and Share Equivalent Units Are Also Barred Under Section
        546(e) .................................................................................................................... 14

CONCLUSION.................................................................................................................... 15

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*AP Servs. LLP* v. *Silva*,
483 B.R. 63 (S.D.N.Y. 2012)..................................................................................................14

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009)........................................................................................................5, 13

*In re Bernard L. Madoff Inv. Sec. LLC*,
773 F.3d 411 (2d Cir. 2014)......................................................................................................9

*In re Boston Generating LLC*,
--- B.R. ---, 2020 WL 3286207 (Bankr. S.D.N.Y. June 18, 2020) ...............................8, 12, 14

*Contemporary Indus. Corp.* v. *Frost*,
564 F.3d 981 (8th Cir. 2009) ..............................................................................................7, 14

*Enron Creditors Recovery Corp.* v. *Alfa, S.A.B de C.V.*,
651 F.3d 329 (2d Cir. 2011)........................................................................................................8

*Gamm* v. *Sanderson Farms, Inc.*,
944 F.3d 455 (2d Cir. 2019)........................................................................................................5

*In re Hechinger Inv. Co. of Del.*,
274 B.R. 71 (D. Del. 2002)........................................................................................................14

*Merit Mgmt. Grp., LP* v. *FTI Consulting Inc.*,
138 S. Ct. 883 (2018)..................................................................................................................6

*In re NASDAQ Market Makers Antitrust Litig.*,
929 F. Supp. 174 (S.D.N.Y. 1996)............................................................................................13

*Nicosia* v. *Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)........................................................................................................5

*In re Plassein Int'l Corp.*,
590 F.3d 252 (3d Cir. 2009)........................................................................................................7

*In re QSI Holdings, Inc.*,
571 F.3d 545 (6th Cir. 2009), *abrogated on other grounds by Merit Mgmt.*
*Grp.*, 138 S. Ct. ........................................................................................................................7

*Rico Records Distributors, Inc.* v. *Ithier*,
No. 04 CIV. 9782 (JSR), 2005 WL 2174006 (S.D.N.Y. Sept. 8, 2005)..................................5

*In re: Tribune Company Fraudulent Conveyance Litigation*,
   946 F.3d 66 (2d Cir. 2019).................................................................................... passim

*TufAmerica, Inc.* v. *Diamond*,
   968 F. Supp. 2d 588 (S.D.N.Y. 2013)..................................................................................6

*In re U.S. Mortg. Corp.*,
   491 B.R. 642 (Bankr. D.N.J. 2013) ...................................................................................14

*Williams* v. *GMAC Mortg., Inc.*,
   No. 13 Civ. 4315(JPO), 2014 WL 2560605 (S.D.N.Y. June 6, 2014) ....................................6

**STATUTES**

11 U.S.C. § 101(22)(A)..............................................................................................9, 10, 11

11 U.S.C. § 546(e) ..................................................................................................... *passim*

11 U.S.C. § 548(a)(1)..........................................................................................................6, 7

11 U.S.C. § 741(7)(A)..........................................................................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)......................................................................................................5, 6

Office of the Comptroller of the Currency, National Banks & Federal Branches
   and Agencies active as of May 31, 2020.  Available at
   https://www.occ.treas.gov/topics/charters-and-licensing/financial-institution-
   lists/index-financial-institution-lists.html (last accessed June 29, 2020)................................10

Defendants Gerald C. Crotty, John D. Demsey, Robert L. Mettler, Mary Margaret Hastings Georgiadis, Matthew H. Kamens, Sidney Kimmel, Ann Marie C. Wilkins, James A. Mitarotonda, Jeffrey Nuechterlein, and Lowell W. Robinson (collectively, the "Former Non-Management Directors"), along with Christopher R. Cade, Wesley R. Card, Ira M. Dansky, Richard L. Dickson, Cynthia DiPietrantonio, Joseph T. Donnalley, Tami Fersko, John T. McClain and Aida Tejero-DeColli (the "Former Officers" and, together with the Former Non-Management Directors, the "Former Directors and Officers"), by and through their undersigned counsel, submit this memorandum of law in support of their motion to dismiss claims alleged in the consolidated MDL Complaints by Plaintiffs, Marc S. Kirschner, as Trustee for the NWHI Litigation Trust, and Wilmington Savings Fund Society, FSB, as successor indenture trustee for specified Notes for Nine West Holdings Incorporated directed at payments for Restricted Shares and share equivalent units.[1]  For the reasons that follow, Former Director and Officer Defendants respectfully request an order dismissing these claims pursuant to the securities safe harbor under Section 546(e) of the Bankruptcy Code.

The Former Directors and Officers join in full the Public Shareholder Defendants' motion to dismiss Plaintiffs' claims directed at payments for Common Shares and move to dismiss Plaintiffs' claims with respect to payments on Common Shares paid to the Former Directors and Officers for the reasons stated in that motion, which apply equally to Former Directors and Officers.  To the extent that the Former Directors and Officers are alleged to have

---

[1]   The undersigned counsel also represent defendants The Sidney Kimmel Revocable Indenture of Trust, Robert & Susan Mettler Family Trust U/A 2/27/06, Robert L. Mettler, Susan T. Mettler, Trustees, Telendos LLC, Dianne Card and the Ira Martin Dansky Revocable Trust (the "Common Shares Defendants"), who are sued only in their capacities as public shareholders.  For all of the reasons set forth in the Public Shareholders' Motion to Dismiss adopted herein, the claims against the Common Shares Defendants should likewise be dismissed.

received Shareholder Transfers that included payments for Restricted Shares and share equivalent units, they write separately only to address the Section 546(e) issues concerning such payments.

## PRELIMINARY STATEMENT

This motion concerns Plaintiffs' attempts to recoup payments made to shareholders to redeem common stock and restricted stock in connection with a 2014 leveraged buyout.  Plaintiffs conceded that they forum-shopped their claims to avoid the Second Circuit, because of its precedent in *In re: Tribune Company Fraudulent Conveyance Litigation*, 946 F.3d 66 (2d Cir. 2019).  That case definitively examined, in the context of an LBO, the scope of a securities safe harbor provision of the Bankruptcy Code, which limits the circumstances in which fraudulent conveyance claims can be brought relating to securities transactions.  The securities safe harbor was designed specifically to minimize the displacement caused in commodities and securities markets when major bankruptcies occur.  The Second Circuit emphasized that the language of that safe harbor is extremely broad, consistent with Congressional intent of promoting certainty and finality for investors.

Although Plaintiffs have sought to confuse matters by pleading that some payments were made "through the payroll and by other means," this is a distinction without a difference.  Artful pleading does nothing to bring their claims outside the Section 546(e) safe harbor.  The facts alleged and otherwise embraced in the Complaint or of which the Court can take judicial notice make clear that the transfers at issue here all fall within that securities safe harbor because they were made by Nine West as a financial institution as settlement payments for securities and in connection with a securities agreement.  Any argument by Plaintiffs to the contrary would contradict the plain language of Section 546(e) and contravene the intent of

2

Congress in enacting the securities safe harbor to promote finality and certainty in securities markets.

**STATEMENT OF FACTS**

The Jones Group, Inc. ("Jones Group") was a wholesale footwear and apparel business.  (Compl. ¶ 44.)[2]  In 2014, private equity firm Sycamore Partners Management, L.P. ("Sycamore") acquired Jones Group in a leveraged buyout (the "LBO"); the resulting entity was renamed Nine West Holdings, Inc. ("Nine West" or "NWHI").  (*Id.* ¶¶ 1-2.)  As part of the LBO, shares of common stock ("Common Shares") were converted into the right to receive $15 in cash, and shares of restricted stock and accumulated dividends ("Restricted Shares") and restricted share equivalent units automatically vested and were cancelled and converted into the right to receive $15 per share in cash.  (*Id.* ¶¶ 38, 134.)

In April 2018, NWHI filed for bankruptcy.  (*Id.* ¶¶ 7, 146.)  In the course of that proceeding, the creditors of NWHI obtained expansive discovery from the debtors and third parties related to the LBO.  (*See id.* ¶¶ 13-17.)  Plaintiffs in this case are the trustee of the litigation trust created as part of NWHI's plan of reorganization and an indenture trustee of certain noteholders of NWHI.  (*Id.* ¶¶ 13-14.)  They assert claims for constructive and intentional fraudulent conveyance relating to monies paid to shareholders in connection with the LBO, and, in certain actions, breach of fiduciary duty and related claims.  (Compl. ¶ 8, Feb. 19, 2020, 2:20-cv-01768 (D.N.J.), Dkt. No. 1.)  This motion only addresses treatment of claims under Section 546(e) of the Bankruptcy Code for fraudulent conveyance claims as to payments in connection

---

[2]   Plaintiffs have filed seventeen (17) separate but substantially identical complaints in connection with its claims in these matters.  Unless otherwise noted, citations to the "Complaint" refer to the complaint filed in *Wilmington Savings Fund Society FSB* v. *Card et al.*, No. 1:20-cv-10286 (D. Mass.), Dkt. No. 1, and each cited allegation is found in each of the other operative complaints.

3

with Restricted Shares and share equivalent units, because fraudulent conveyance issues relating to payments in connection with Common Shares are addressed in the Public Shareholder Defendants' Motion to Dismiss.  This motion also addresses treatment of claims under Section 546(e) of the Bankruptcy Code for unjust enrichment claims as to all payments made in connection with securities.

In their Complaints, Plaintiffs refer to payments for Common Shares, Restricted Shares, and share equivalent units as "Shareholder Transfers." (Compl. ¶ 39.)  They allege that payments were made through different mechanisms for Common Shares on one hand, and Restricted Shares and share equivalent units on the other.  (*See, e.g.*, *id.* ¶ 134.)  As to Common Shares, Plaintiffs alleged in their Complaints that payments were "made by a non-agent contractor that performed the ministerial function of processing share certificates and cash, and whose rights and obligations were governed solely by contract." (*Id*.)  The merger agreement governing the transaction ("Merger Agreement"), however, makes clear that all such payments were to be effectuated by a "paying agent" and "pursuant to a paying agent agreement in customary form."  *See* Devore Decl. Ex. B, Merger Agreement, § 4.2.[3]  NWHI indeed engaged Wells Fargo to "act as its special agent for the purpose of distributing the Merger Consideration" as reflected in a document titled the "Paying Agent Agreement."  *See* Devore Decl. Ex. A, Paying Agent Agreement, at 2.  The Paying Agent Agreement also authorized Wells Fargo to cancel outstanding Common Shares and Restricted Shares.  *Id.* §§ 1.2, 1.3.

As to the Restricted Shares and share equivalent units, Plaintiffs allege only that payments "were processed through the payroll and by other means." (Compl. ¶ 134.)  The

---

[3]    "Devore Decl." refers to the declaration of Andrew Devore submitted in support of the Public Shareholder Defendants' motion to dismiss.

Merger Agreement provides that upon consummation of the merger, these shares would be cancelled and the holder of each share would be entitled to receive $15 in cash plus accumulated unpaid dividends, as applicable, from Jones Group "in full settlement of such Restricted Share." Devore Decl. Ex. B, Merger Agreement, § 4.3.

Plaintiffs allege that all components governed by the Merger Agreement, including the Shareholder Transfers, constituted "a single integrated transaction."  (Compl. ¶¶ 4, 60(a)-(e), 130-35.)

## ARGUMENT

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*,  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  While the Complaint's allegations should be accepted as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient.  *Id*. (citation omitted).

On a motion to dismiss, "[a] complaint is deemed to include . . . any statements or documents incorporated in it by reference" or that are "'integral' to the complaint." *Nicosia* v. *Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (citations omitted).  Courts "may consider documents not attached to the pleadings when the party whose claims is sought to be dismissed has notice of those documents and has relied on them in framing the claim in issue," *Rico Records Distributors, Inc.* v. *Ithier*, No. 04 CIV. 9782 (JSR), 2005 WL 2174006, at *2 n.1 (S.D.N.Y. Sept. 8, 2005), and may also take judicial notice of matters of public record, including "public disclosure documents filed with the SEC." *Gamm* v. *Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) (citing *Kramer* v. *Time Warner Inc.*, 937 F.2d 767, (2d Cir. 1991)).  Where "a document relied on in the complaint contradicts the allegations in the complaint, the

document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *TufAmerica, Inc.* v. *Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) (citation omitted). This "prevents plaintiffs from surviving Rule 12(b)(6) motions because of clever drafting alone, where the incorporated material is a legal document containing obligations upon which the plaintiffs' complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiffs' claims—was not attached to the complaint." *Williams* v. *GMAC Mortg., Inc.*, No. 13 Civ. 4315(JPO), 2014 WL 2560605, at *1 (S.D.N.Y. June 6, 2014) (citation and internal quotation marks omitted).

As set forth below, the facts alleged in the Complaint, documents that are integral to it, and matters of which the Court may take judicial notice establish that Section 546(e) provides a safe harbor for the Former Director and Officer Defendants against Plaintiffs' fraudulent transfer and unjust enrichment claims.

## I.   All of Plaintiffs' Fraudulent Transfer Claims Are Equally Barred by Section 546(e)

The "securities safe harbor" set forth in Section 546(e) of the Bankruptcy Code bars a trustee from recouping (1) a "settlement payment" or "transfer made . . . in connection with a securities contract," that was made (2) "by or to (or for the benefit of) a . . . financial institution"—unless the trustee seeks to recoup the payments under Section 548(a)(1)(A) of the Bankruptcy Code, which provides a federal remedy for intentional fraudulent conveyance. 11 U.S.C. § 546(e); *see Merit Mgmt. Grp., LP* v. *FTI Consulting Inc.*, 138 S. Ct. 883, 889 (2018). The purpose of the securities safe harbor is "to promot[e] finality . . . and certainty for investors, by limiting the circumstances, e.g., to cases of intentional fraud, under which securities transactions could be unwound." *In re: Tribune*, 946 F.3d at 92 (internal quotations and citations omitted, ellipsis in original). Congress wished to "minimiz[e] the displacement caused in the

commodities and securities markets in the event of a major bankruptcy affecting those industries." *Id.* (citations omitted). "The broad language used in Section 546(e) protects transactions rather than firms, reflecting a purpose of enhancing the efficiency of securities markets in order to reduce the cost of capital to the American economy." *Id.* (citations omitted). The language of Section 546(e) embraces both transactions involving securities traded on public markets and those not traded on the public markets. *In re Plassein Int'l Corp.*, 590 F.3d 252, 258 (3d Cir. 2009).[4]

Plaintiffs did not bring any intentional fraudulent conveyance claims under Section 548(a)(1)(A) of the Bankruptcy Code, and for good reason. Any such claims would be time-barred since those transfers took place more than two years before Nine West's bankruptcy filing. *See* 11 U.S.C. § 548(a)(1) ("The trustee may avoid any transfer . . . that was made or incurred on or within 2 years before the date of the filing of the petition [for bankruptcy]."). Accordingly, for the reasons explained below, Plaintiffs' claims seeking recoupment of payments relating to Restricted Shares and share equivalent units are, like all of Plaintiffs' transfer claims, barred by Section 546(e).

---

[4]   *See also Contemporary Indus. Corp.* v. *Frost*, 564 F.3d 981, 986 (8th Cir. 2009) ("Nothing in the relevant statutory language suggests Congress intended to exclude these payments from the statutory definition of 'settlement payment' simply because the stock at issue was privately held."), *abrogated on other grounds by Merit Mgmt. Grp.*, 138 S. Ct. at 892 n.6. *In re QSI Holdings, Inc.*, 571 F.3d 545, 550 (6th Cir. 2009) ("[T]here is no reason to think that unwinding [privately held securities] settlement[s] would have any less of an impact on financial markets than publicly traded securities."), *abrogated on other grounds by Merit Mgmt. Grp.*, 138 S. Ct. at 892 n.6; *Frost*, 564 F.3d at 987 (finding Section 546(e) shielded payments to a single family in exchange for $26.5 million in privately held shares due to the amount of money at stake and rejecting the argument that reversing these payments "would in no way impact the nation's financial markets").

A.     **Payments for Restricted Shares and Share Equivalent Units in Connection With the LBO Were Both "Settlement Payments" and Transfers "In Connection With a Securities Contract"**

Payments to shareholders in exchange for the Restricted Shares and share equivalent units qualify as both "settlement payments" and transfers made "in connection with a securities contract" under Section 546(e).

**Settlement payments.**  The Second Circuit has recognized that the securities safe harbor defines a settlement payment "extremely broad[ly]" to encompass any "transfer of cash or securities made to complete a securities transaction." *Enron Creditors Recovery Corp.* v. *Alfa, S.A.B de C.V.*, 651 F.3d 329, 334 (2d Cir. 2011) (citation omitted).  This "broad statutory language defining the transaction covered" by Section 546(e) is consistent with the "larger purpose" of Congress to promote finality in securities transactions.  *In re:Tribune*, 946 F.3d at 92.   Here, Plaintiffs seek to avoid payments that were made to the Former Director and Officer Defendants for their Restricted Shares and share equivalent units; there can be no reasonable dispute that these meet the definition of "settlement payments."

**Transfers in connection with a securities contract.**  Likewise, the Second Circuit has explained that the term "securities contract" is defined "capaciously to include, *inter alia*, a 'contract for the purchase [or] sale . . . of a security, . . . including *any repurchase . . .* transaction on any such security,' [under 11 U.S.C. § 741(7)(A)(i),] as well as 'any other agreement or transaction that is similar to an agreement or transaction referred to in this subparagraph [of 11 U.S.C. § 741(7)(A)(vii)]." *Id.* at 80-81.  The Merger Agreement is such a securities contract because it sets forth the terms for the repurchase and redemption of Nine West's shares from its shareholders.  11 U.S.C. § 741(7)(a)(1); *In re Boston Generating LLC*, --- B.R. ---, 2020 WL 3286207, at *29-32 (Bankr. S.D.N.Y. June 18, 2020) (finding that a tender offer was a securities contract covered by Section 546(e)).

8

Section 546(e) likewise "sets a 'low bar' for the required relationship between the securities contract and the transfer sought to be avoided"—merely requiring that the transfer be "related to" or "associated with" the securities contract in some way. *In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411, 421 (2d Cir. 2014). Payments for the Restricted Shares and share equivalent units were made "in full settlement" of shares that were cancelled pursuant to the Merger Agreement—a securities contract—and thus fit easily within this definition. Devore Decl. Ex. B, Merger Agreement, § 4.3.

**B. Shareholder Payments for Restricted Shares and Share Equivalent Units in Connection With the LBO Were "Made By or To (or For the Benefit Of)" A "Financial Institution"**

The Bankruptcy Code defines a "financial institution" for purposes of Section 546(e)'s safe harbor provision not only as a "commercial bank," but also, when a bank is "acting as agent or custodian for a customer . . . in connection with a securities contract," the customer itself. 11 U.S.C. § 101(22)(A). This is because 546(e) "reflects a concern over the use of avoidance powers not only after the bankruptcy of a commodities or securities firm, but also after a 'customer' or 'other participant' in the securities markets enters bankruptcy." *In re: Tribune*, 946 F.3d at 92.

Nine West satisfies this definition in two ways. First, Nine West was a "financial institution" because it was a "customer" of Wells Fargo, and Wells Fargo acted as Nine West's agent in connection with the Merger Agreement. Second, Nine West qualifies as a financial institution because it was the customer of a financial institution in connection with any Restricted Share or share equivalent unit payments allegedly made "through payroll and by other means."

9

1.      **Nine West Qualifies as a "Financial Institution" in Connection with the LBO**

For the reasons set forth in the Public Shareholder Defendants' motion, Nine West qualifies as a "financial institution" in the LBO under Section 546(e)'s safe harbor. *See In re: Tribune*, 946 F.3d at 78. Nine West engaged Wells Fargo, a commercial bank,[5] as its "paying agent" in connection with the Merger Agreement. Just as in *Tribune*, under the terms of the Paying Agent Agreement, Nine West became Wells Fargo's "customer," inasmuch as "[Wells Fargo] agreed to collect items for [Nine West] by receiving the tendered shares . . . and [Nine West] bought [Wells Fargo's] services by retaining [Wells Fargo] to act as Depositary." *Id.*; *see also id.* at 79 (recognizing that "the 'core' ordinary definition of 'customer' is 'someone who buys goods or services'"). Wells Fargo, as "Paying Agent," undertook a principal-agent relationship with Nine West for purposes of the Merger Agreement.

Although the Public Shareholder Defendants' motion addresses only Common Shares, Nine West's capacity as a financial institution extends equally to all Shareholder Transfers in connection with the Merger Agreement, including payments for Restricted Shares and share equivalent units. For instance, among other things, the Paying Agent Agreement required Nine West to provide Wells Fargo a list of all Restricted Shares and any shares it had in certificate form, and "instruct[ed] and authoriz[ed]" Wells Fargo to cancel all such shares. *See* Devore Decl. at Ex. A, Paying Agent Agreement, §1.3.

---

[5]     See, e.g., Office of the Comptroller of the Currency, National Banks & Federal Branches and Agencies active as of May 31, 2020. (Available at https://www.occ.treas.gov/topics/charters-and-licensing/financial-institution-lists/index-financial-institution-lists.html (last accessed June 29, 2020).) At all relevant times, Wells Fargo qualified as a "financial institution" as defined in section 101 of the Bankruptcy Code. 11 U.S.C. § 101(22)(A) (defining "financial institution" to include "an entity that is a commercial or savings bank").

Plaintiffs identify only one distinction between payments for Common Shares and payments for Restricted Shares and share equivalent units: they make a conclusory allegation that, unlike Common Shares, payments for the Restricted Shares and share equivalent units were made through "payroll and by other means." (Compl. ¶ 134.) That allegation cannot avoid dismissal of their fraudulent conveyance claims with respect to these payments under the securities safe harbor. Under Sections 101(22)(A) and 546(e) of the Bankruptcy Code, Nine West's agency relationship with Wells Fargo qualifies it as a "financial institution" for purposes of the applicable securities contract: the Merger Agreement. That securities contract provided for payments related to each of Common Shares, Restricted Shares, and share equivalent units. Even Plaintiffs allege that the LBO "was carried out as a single, integrated transaction." (Compl. ¶¶ 60, 130-35; *see also id.* ¶ 4; Compl. ¶ 155, *Kirschner v. McClain et al.*, No. 2:20-cv-01768 (D.N.J.), Dkt. No. 1.) Indeed, Plaintiffs admit that "all of the proceeds" of the debt acquired as part of the Mergers "went directly to Jones Group's former shareholders . . . or to pay credit facility fees and expenses" as "integrated" parts of the same LBO. (Compl. ¶¶ 60, 133-34.) It follows that Nine West qualifies as a "financial institution" in connection with the payments for Restricted Shares and share equivalent units, and that these payments are shielded by Section 546(e)'s safe harbor.

2.      **Nine West Was a "Financial Institution" for Payments Made Through Payroll**

Nine West also qualifies as a "financial institution" in connection with payments for the Restricted Shares and share equivalent units allegedly made through "payroll." While Plaintiffs attempt to avoid dismissal by omitting the financial institution that remitted funds for the shares or acted as Nine West's payroll agent—just as it omitted mention of Wells Fargo as the paying agent—the relationship between Nine West and these entities is analogous to the

11

agency relationships in both *Tribune* and *Boston Generating*, which found that the respective debtors qualified as "financial institutions" in connection with the disputed transactions and thus that the Section 546(e) safe harbor required dismissal of the plaintiffs' claims.  Under that reasoning, Plaintiffs' claims should also be dismissed.

In *Tribune*, the debtors retained Computershare, a trust company and a bank, to act as a "depository" in connection with an LBO.  946 F.3d at 78.  As part of this role, Computershare "received and held Tribune's deposit of the aggregate purchase price for the shares," "received tendered shares, retained them on Tribune's behalf, and paid the tendering shareholders."  *Id.*  Based on these facts, the court concluded that "Tribune was Computershare's 'customer' with respect to the LBO payments."  *Id.*  Applying a common law meaning of "agent," the Second Circuit then found an agency relationship between Tribune and Computershare because (1) "Tribune manifested its intent to grant authority to Computershare by depositing the aggregate purchase price for the shares with Computershare and entrusting Computershare to pay the tendering shareholders"; (2) "Computershare, in turn, manifested its assent by accepting the funds and effectuating the transaction"; and (3) "as the transaction proceeded, Tribune maintained control over key aspects of the undertaking."  *Id.* at 79-80.  The Second Circuit concluded that those facts established that Tribune was a "financial institution" with respect to the LBO payments.  *Id.* at 77-78.  Just recently, in *In re Boston Generating LLC*, the Bankruptcy Court for the Southern District of New York similarly found an agency relationship for purposes of qualifying as a Section 546(e) "financial institution" where the debtors retained the Bank of New York ("BONY") to act as a depositary in connection with an LBO, BONY received tendered shares for payment in connection with that LBO, and the debtor retained authority over those payments.  2020 WL 3286207, at *34-*36.

12

The same fact pattern exists here. Nine West had an obligation under the Merger Agreement to make $78 million payments to holders of Restricted Shares and share equivalent units in exchange for the cancellation of those shares, and Nine West did make those payments. (*See* Compl. ¶ 60(a)-(e).) Even accepting as true the Complaint's allegation that the payments "were processed through the payroll and by other means," it would be implausible for the payments to have been made from anywhere other than Nine West's deposited funds, or for Nine West not to have been in control of the relationship. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim to relief will . . . be a context-specific task that requires reviewing court to draw on its judicial experience and common sense."). Instead, the plausible conclusion is that, like *Tribune* and *Boston Generating*, Nine West qualifies as a "financial institution" in connection with the Restricted Share and share equivalent unit transactions.

Plaintiffs' suggestion that the fact of the payments ultimately flowing through NWHI's payroll should take them out of the securities safe harbor—even if NWHI was a financial institution and the payments were in settlement of securities and in connection with a securities agreement—contravenes the broad construction of 546(e) that Congress intended. The Second Circuit recognized that the "broad language" of 546(e) "is intended to protect the process or market from the entire genre of harms of which the particular problem was only one symptom." *In re: Tribune*, 946 F.3d at 92. Permitting claims like Plaintiffs' would undermine this policy by enabling Plaintiffs to artfully plead around the Section 546(e) by intentionally omitting that financial institutions were involved in an LBO from their factual allegations. *Cf. In re NASDAQ Market Makers Antitrust Litig.*, 929 F. Supp. 174, 178-79 (S.D.N.Y. 1996)

13

(providing that if a plaintiff artfully pleads a claim, a court may uphold removal as to not allow a plaintiff to defeat removal by omitting to plead necessary claims).

For these reasons, Plaintiffs' fraudulent conveyance claims targeting Restricted Shares are preempted by Section 546(e) and should be dismissed.

**II.      Plaintiffs' Unjust Enrichment Claims Relating to Payments for Common Shares, Restricted Shares, and Share Equivalent Units Are Also Barred Under Section 546(e)**

Plaintiffs assert claims for unjust enrichment in connection with the same payments and transfers relating to Restricted Shares and share equivalent units described above, as well as transfers and settlement payments relating to the Common Shares.  These unjust enrichment claims are also preempted by Section 546(e)'s safe harbor.

Courts have ruled that Section 546(e) preempts the use of state law causes of action—such as unjust enrichment claims—seeking to avoid the settlement of a securities transaction that Section 546(e) would bar a trustee from avoiding under the Bankruptcy Code. *See Frost*, 564 F.3d at 988; *In re Boston Generating*, 2020 WL 3286207, at *27 (holding that Section 546(e) preempts unjust enrichment claim); *AP Servs. LLP* v. *Silva*, 483 B.R. 63, 71 (S.D.N.Y. 2012) ("Allowing recovery for unjust enrichment . . . would implicate the same concerns regarding the unraveling of settled securities transactions . . . which is precisely the result that section 546(e) precludes." (citation and internal quotation marks omitted)); *In re Hechinger Inv. Co. of Del.*, 274 B.R. 71, 96 (D. Del. 2002) ("Claims that Congress deemed unavoidable under sections 544(b) and 546(e) . . . cannot be avoided by simply re-labeling avoidance claims as [state law] unjust enrichment claims; if they could, the exemption set forth in section 546(e) would be rendered useless."); *In re U.S. Mortg. Corp.*, 491 B.R. 642, 666-67 (Bankr. D.N.J. 2013) (same).

14

Those precise circumstances exist here.  Section 546(e) bars Plaintiffs from avoiding the settlement of a securities transaction—like the payments made in exchange for the cancelled Restricted Shares and share equivalent units—under the guise of an unjust enrichment claim.  It also prevents Plaintiffs from sidestepping the statute by seeking the same relief under the color of an unjust enrichment claim.

## CONCLUSION

For the foregoing reason, Plaintiffs' fraudulent transfer and unjust enrichment claims related to payments for Common Shares, Restricted Shares or share equivalent units against the Former Directors and Officers should be dismissed.

Dated:  June 29, 2020

Respectfully submitted,

/s/ *Andrew G. Gordon*

Andrew G. Gordon
Craig A. Benson, *pro hac vice forthcoming*
Crystal Johnson Geise
Paul, Weis, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10036-8704
(212) 373-3543
agordon@paulweiss.com
cbenson@paulweiss.com
cgeise@paulweiss.com

*Counsel for Defendants Wesley R. Card, Dianne Card, Christopher R. Cade, Ira M. Dansky, Ira Martin Dansky Revocable Trust, Joseph T. Donnalley, Richard L. Dickson, Cynthia DiPietrantonio, Tami Fersko, John T. McClain, and Aida Tejero-DeColli*

*/s/ Scott D. Musoff* (with consent)
Scott D. Musoff (scott.musoff@skadden.com)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York  10001
Tel.: (212) 735-3000
Fax: (212) 735-2000

Robert S. Saunders, *pro hac vice*
(rob.saunders@skadden.com)
Cliff C. Gardner, *pro hac vice* forthcoming
(cliff.gardner@skadden.com)
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
Tel.: (302) 651-3000
Fax: (302) 651-3000

*Attorneys for Defendants Gerald C. Crotty, Robert L. Mettler, Mary Margaret Hastings Georgiadis, Ann Marie C. Wilkins, Sidney Kimmel, John D. Demsey, Matthew H. Kamens, James A. Mitarotonda, Jeffrey D. Nuechterlein, Lowell W. Robinson, Robert & Susan Mettler Family Trust U/A 3/27/06, Robert L. Mettler, Susan T. Mettler, Trustees, Telendos, LLC and The Sidney Kimmel Revocable Indenture of Trust*

16