UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

IN RE: NINE WEST LBO SECURITIES LITIGATION

                                                   :

Pertains to: *Kirschner v. Dickson, et al.*, 20-cv-04436 (JSR),   :
*Wilmington Savings Fund Society, FSB v. Dickson, et al.*,   :
20-cv-04569 (JSR), *Kirschner v. Georgiadis, et al.*,        :   20-MD-2941 (JSR)
20-cv-04292 (JSR), *Wilmington Savings Fund Society, FSB v.*   :
*Georgiadis, et al.*, 20-cv-04286 (JSR), *Kirschner v. Kimmel, et al.*,  :
20-cv-04287 (JSR), *Kirschner v. McClain, et al.*, 20-cv-04262 (JSR),:
*Wilmington Savings Fund Society, FSB v. Card, et al.*, 20-cv-04335  :
(JSR) and *Kirschner v. Card, et al.*, 20-cv-04346 (JSR)          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## FORMER NON-MANAGEMENT DIRECTORS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINTS

Defendants Gerald C. Crotty, Robert L. Mettler, Mary Margaret Hastings Georgiadis, Ann Marie C. Wilkins, Sidney Kimmel, John D. Demsey, Matthew H. Kamens, James A. Mitarotonda, Jeffrey D. Nuechterlein, Lowell W. Robinson, Robert & Susan Mettler Family Trust U/A 3/27/06, Robert L. Mettler, Susan T. Mettler, Trustees, Telendos, LLC and The Sidney Kimmel Revocable Indenture of Trust (collectively, the "Former Non-Management Directors") respectfully submit this memorandum of law in support of their motion to dismiss the complaints in *Kirschner v. Dickson, et al.*, 20-cv-04436 (JSR), *Kirschner v. Georgiadis, et al.*, 20-cv-04292 (JSR), *Kirschner v. Kimmel, et al.*, 20-cv-04287 (JSR), *Kirschner v. McClain, et al.*, 20-cv-04262 (JSR) and *Kirschner v. Card, et al.*, 20-cv-04346 (JSR) (the "Complaints") with prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ................................................................................................... 3

    A.    The Board Evaluates Jones Group's Strategic Alternatives. ................... 3

    B.    The Board Chooses The Best Strategic Alternatives For Jones Group. ................. 4

    C.    Sycamore's Plans Following The Merger. ................................................ 4

    D.    Jones Group Stockholders Approve The Merger, Which Closes. ........................... 5

    E.    Kaluzny And Morrow Close The Carve-Out Transactions. ....................... 5

    F.    The 2014 Litigation. ................................................................................. 5

    G.    The Board Appoints An SLC, Which Investigates All Alleged Wrongdoing. .......................................................................................... 6

    H.    The SLC Process Is Challenged, And All Claims Are Settled, Released And Waived. ........................................................................................... 7

    I.    NWHI Suffers Dramatic Losses Leading To Bankruptcy. ...................... 8

    J.    The Bankruptcy. ....................................................................................... 8

ARGUMENT ......................................................................................................... 8

I.    ALL REMAINING CLAIMS ARE BARRED BY THE SETTLEMENT OF THE 2014 LITIGATION AND THE DOCTRINE OF *RES JUDICATA.* ................. 9

II.    ALL REMAINING CLAIMS ARE BARRED BY THE SLC PROCESS ...................... 12

III.    ALL REMAINING CLAIMS ARE BARRED BY THE EXCULPATORY PROVISION IN JONES GROUP'S BYLAWS. ............................................... 15

IV.    COUNT I FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY. .................................................................................................... 16

    A.    The Business Judgment Rule Requires Dismissal. ................................ 16

    B.    The Litigation Trustee's Remaining Arguments Are Makeweight. ........... 20

V.    COUNT II FAILS TO STATE A CLAIM FOR AIDING AND ABETTING ................. 22

VI.    COUNT III OTHERWISE FAILS TO STATE A CLAIM FOR VIOLATION OF
PENNSYLVANIA STATUTE TITLE 15 SECTIONS 1551 AND 1553. ........................24

CONCLUSION ..........................................................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                                   **PAGE(S)**

*In re Alloy, Inc. S'holder Litig.*,
2011 WL 4863716 (Del. Ch. Oct. 13, 2011) ...................................................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................8, 9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ..............................................................................................8

*B.T.Z., Inc. v. Grove*,
803 F. Supp. 1019 (M.D. Pa. 1992) ...........................................................................12, 17

*Binks v. DSL.net, Inc.*,
2010 WL 1713629 (Del. Ch. Apr. 29, 2010) ...................................................................23

*In re BJ's Wholesale Club, Inc. S'holders Litig.*,
2013 WL 396202 (Del. Ch. Jan. 31, 2013) ......................................................................18

*Boguslavsky v. S. Richmond Sec., Inc.*,
225 F.3d 127 (2d Cir. 2000) ..........................................................................................11

*Braun v. USA Techs, Inc.*,
2017 WL 10087600 (Pa. Com. Pl. Mar. 8, 2017), *aff'd sub nom.*
*Braun v. Herbert*, 180 A.3d 482 (Pa. Super. Ct. 2018) ....................................................14

*In re Cogent, Inc. S'holder Litig.*,
7 A.3d 487 (Del. Ch. 2010) ...........................................................................................20

*In re Comverge, Inc. S'holders Litig.*,
2014 WL 6686570 (Del. Ch. Nov. 25, 2014) .............................................................22, 23

*Cortec Indus., Inc. v. Sum Hldg. L.P.*,
949 F.2d 42 (2d Cir. 1991) ............................................................................................25

*Cuker v. Mikalauskas*,
692 A.2d 1042 (Pa. 1997) ..................................................................................... *passim*

*Deylii v. Novartis Pharms. Corp.*,
2014 WL 2757470 (S.D.N.Y. June 16, 2014) ..................................................................11

*Durkin v. Shea*,
957 F. Supp. 1360 (S.D.N.Y. 1997) ................................................................................11

iii

*Edgar v. MITE Corp.*,
  457 U.S. 624 (1982) ...........................................................................................12

*In re EZCORP Inc. Consulting Agreement Deriv. Litig.*,
  130 A.3d 934 (Del. Ch. 2016) ...........................................................................11

*Fundamental Partners v. Gaudet*,
  2011 WL 7141418 (Pa. Com. Pl. Nov. 23, 2011) ......................................20, 21

*In re Gen. Motors (Hughes) S'holder Litig.*,
  2005 WL 1089021 (Del. Ch. May 4, 2005), *aff'd*,
  897 A.2d 162 (Del. 2006) .............................................................................24, 25

*Giannone v. York Tape & Label, Inc.*,
  548 F.3d 191 (2d Cir. 2008) ..............................................................................12

*Gilbert v. El Paso Co.*,
  1988 WL 124325 (Del. Ch. Nov. 21, 1988), *aff'd*,
  575 A.2d 1131 (Del. 1990) ................................................................................15

*Globis Partners, L.P. v. Plumtree Software, Inc.*,
  2007 WL 4292024 (Del. Ch. Nov. 30, 2007) ...................................................20

*In re H.J. Heinz Co. Deriv. & Class Action Litig.*,
  2013 WL 1905075 (Pa. Com. Pl. Apr. 29, 2013) .......................................6, 14

*Henik ex rel. LaBranche & Co. v. LaBranche*,
  433 F. Supp. 2d 372 (S.D.N.Y. 2006) ...............................................................11

*Ironworkers Dist. Council of Phila. & Vicinity Ret. & Pension Plan v. Andreotti*,
  2015 WL 2270673 (Del. Ch. May 8, 2015), *aff'd*,
  132 A.3d 748 (Del. 2016) (TABLE) ....................................................................6

*King v. Breach*,
  540 A.2d 976 (Pa. Commw. Ct. 1988) ..............................................................15

*Kramer v. Time Warner Inc.*,
  937 F.2d 767 (2d Cir. 1991) ...............................................................................24

*In re Lear Corp. S'holder Litig.*,
  967 A.2d 640 (Del. Ch. 2008) ...........................................................................18

*Lemenestrel v. Warden*,
  964 A.2d 902 (Pa. Super. Ct. 2008) ............................................................13, 14

iv

*Lyondell Chem. Co. v. Ryan*,
    970 A.2d 235 (Del. 2009) ...............................................................18

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) ...............................................................23

*MMC Energy, Inc. v. Miller*,
    2009 WL 2981914 (S.D.N.Y. Sept. 14, 2009)................................21

*In re Nat'l Forge Co.*,
    344 B.R. 340 (W.D. Pa. 2006)..........................................................25

*In Re: Nine West LBO Sec. Litig.*,
    2020 WL 5049621 (S.D.N.Y. Aug. 27, 2020) ...................................5

*Poland v. Caldwell*,
    1990 WL 158479 (E.D. Pa. Oct. 12, 1990)......................................20

*RA Glob. Servs., Inc. v. Avicenna Overseas Corp.*,
    843 F. Supp. 2d 386 (S.D.N.Y. 2012).......................................10, 11

*Seybold v. Groenink*,
    2007 WL 737502 (S.D.N.Y. Mar. 12, 2007) ...................................12

*Simmons v. Sutherland*,
    1998 WL 35550554 (Pa. Com. Pl. Nov. 25, 1998)................16, 17, 19

*Smith v. Brown-Borhek Co.*,
    200 A.2d 398 (Pa. 1964) ..................................................................19

*Tayar v. Camelback Ski Corp.*,
    47 A.3d 1190 (Pa. 2012) ..................................................................16

*TechnoMarine S.A. v. Giftports, Inc.*,
    2012 WL 3964734 (S.D.N.Y. Sept. 10, 2012), *aff'd*,
    758 F.3d 493 (2d Cir. 2014)..............................................................11

*In re Total Containment, Inc.*,
    335 B.R. 589 (Bankr. E.D. Pa. 2005) ..............................................22

*In re Tri-Star Pictures, Inc., Litig.*,
    1995 WL 106520 (Del. Ch. Mar. 9, 1995)......................................21

*In re Tri-State Telecomms., Inc.*,
    2012 WL 4904537 (Bankr. E.D. Pa. Oct. 15, 2012)......................25

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    2019 WL 294807 (S.D.N.Y. Jan. 23, 2019) ....................................................24

*In re Walt Disney Co. Deriv. Litig.*,
    907 A.2d 693 (Del. Ch. 2005), *aff'd*,
    906 A.2d 27 (Del. 2006) .......................................................................21, 23

*In re Wonderwork, Inc.*,
    611 B.R. 169 (Bankr. S.D.N.Y. 2020) ......................................................22

*In re WorldCom, Inc.*,
    296 B.R. 115 (Bankr. S.D.N.Y. 2003) ......................................................10

## AUTHORITIES

15 Pa.C.S. § 1103 .................................................................................................24

15 Pa.C.S. § 1551 .................................................................................................25

15 Pa.C.S. § 1712 ............................................................................................12, 16

15 Pa.C.S. § 1713 .................................................................................................15

15 Pa.C.S. § 1715 ...................................................................................17, 18, 19, 20

15 Pa.C.S. § 1717 .................................................................................................22

15 Pa.C.S. § 1741 *et seq.* ......................................................................................21

15 Pa.C.S. § 1781 .................................................................................................12

15 Pa.C.S. § 1783 ............................................................................................12, 13, 14

## PRELIMINARY STATEMENT

In 2014, Jones Group, Inc. ("Jones Group" or the "Company"), was performing poorly and facing a challenging economic environment.  In response, its Board determined to explore, with the help of sophisticated advisors, the Company's best strategic alternative.  Months later, after a public sales process, the Board concluded that Sycamore's offer to acquire by Merger all of Jones Group for $15 a share (a substantial cash premium) in an arm's-length transaction was in the best interests of the Company and its stockholders.  There is no allegation that the Board stood on both sides, lacked independence, or was rushed or uninformed when negotiating and approving the Merger.  In other words, the Board's exercise of fiduciary duty was a perfect example of a business judgment protected under Pennsylvania law.

Sycamore planned to finance the Merger with debt and, immediately after the closing of the Merger, to sell off certain businesses to Sycamore affiliates in Carve-Out Transactions.  Sycamore alone negotiated the terms of the Carve-Out Transactions, allegedly "manipulated" projections used to secure a solvency opinion (the "D&P Solvency Opinion") as to businesses that would remain thereafter and caused the Carve-Out Transactions to occur.  After the Former Non-Management Directors were no longer there, and under Sycamore's new management, the Company (renamed NWHI), experienced dramatic losses, ultimately resulting in a 2018 bankruptcy.  NWHI emerged from bankruptcy in 2019.

Shortly thereafter, NWHI creditors and a Litigation Trustee brought suit against hundreds of defendants, mostly former Jones Group stockholders, seeking to claw back the consideration paid to them as a result of the Merger.  In a few of those cases, the Litigation Trustee also sued the former directors of Jones Group (including the Former Non-Management Directors) on the strange theory that those directors breached their fiduciary duties by doing too good a job and securing too much value for Jones Group stockholders back in 2014.  According to the Litigation Trustee, the

directors caused Jones Group to "[t]ransfer[] virtually all of Jones Group's value to its shareholders" leaving the Company "with unreasonably small capital, and unable to pay its debts to creditors" as the business struggled under Sycamore's management.  (¶¶164, 168)[1]  The Litigation Trustee's theory turns the law of fiduciary duty on its head.  A director's duties do not require him or her to sacrifice the interests of current stockholders in maximizing the value of their shares in a sale of the company merely in order to benefit future stockholders and creditors, to whom the director owes no duties.  Unsurprisingly, the Litigation Trustee has failed to state a claim on this theory.

But at the outset, the Court need not even address the Litigation Trustee's topsy-turvy legal theory because its claims were released and are barred by *res judicata*.  The Former Non-Management Directors were sued in 2014 in connection with the Merger and Carve-Out Transactions.  Those claims were settled, released and dismissed with prejudice.  The Settlement and the doctrine of *res judicata* prohibit re-litigation of claims related to those transactions today.  Moreover, the Company formed a special litigation committee to investigate the Merger and Carve-Out Transactions, which concluded that the Former Non-Management Directors' did nothing wrong and should not be sued based on these transactions.

The Litigation Trustee's claims should still be dismissed even if they had not already been released.  Pennsylvania law and the Jones Group bylaws prohibit an action for money damages against the Former Non-Management Directors in these circumstances.  The venerable "business judgment rule" prohibits the sort of second-guessing of the Former Non-Management Directors' decisions that the Litigation Trustee attempts here.  Directors who make good faith business

---

[1]  Unless otherwise noted, citations to the "Complaints" (in the form of "¶\_") refer to the First Amended Complaint filed in *Kirschner v. Kimmel, et al.*, 20-cv-04287 (JSR) (S.D.N.Y.), Dkt. No. 130, and each cited allegation is found in each of the other seventeen complaints.

decisions are not insurers when, years later—especially after intervening events like Sycamore's bad acts and mismanagement—their business decisions do not meet expectations.  And directors of a solvent Pennsylvania corporation owe no duties to future stockholders or creditors. Accordingly, as set forth below, the claims against the Former Non-Management Directors should be dismissed.

<u>**BACKGROUND**</u>

Prior to 2014, Jones Group was a widely held, publicly traded wholesale footwear and apparel business incorporated in Pennsylvania.  (¶¶44-45)  "Mid-tier footwear and apparel businesses like Jones Group faced a challenging economic environment in 2012 and 2013," which analysts expected to continue into 2014.  (¶45)  During those years Jones Group was "repeatedly missing its own forecasts and budgets," revenue "was flat," it repeatedly "missed its internal earnings per share targets" by sometimes substantial amounts and its retail operations "were faltering."  (¶46)  By April 2013, Jones Group had "publicly announced restructuring actions, including a plan to close approximately 170 underperforming domestic retail stores by mid-2014." (¶51)

**A.     The Board Evaluates Jones Group's Strategic Alternatives.**

In the midst of this challenging environment, Jones Group retained Citigroup Global Markets Inc. ("Citigroup") "to advise it in evaluating strategic alternatives, including the sale of all or part of [the Jones Group's] business."  (¶48)  There is no allegation that this financial advice was flawed or unreliable in any respect.  "Beginning in June 2013, Citigroup contacted ten financial and strategic parties," including private equity firm Sycamore Partners Management, L.P. (with its affiliates, "Sycamore"), "that Citigroup identified as being potentially interested in a transaction" for all or part of Jones Group.  (¶53)  When the possibility of a Jones Group sale become public, Jones Group received additional indications of potential interest in a strategic

transaction, "bringing the total number of potentially interested parties to at least sixteen." (¶53)

By October 2013, every one of those potentially interested parties had told the Board that they were "no longer interested in pursuing a transaction for the entirety of Jones Group," except Sycamore. (¶58) "Sycamore offered to acquire Jones Group for $14 per share." (¶58) The Board ultimately negotiated that offer up to $15 per share. (¶58)

**B.**     **The Board Chooses The Best Strategic Alternatives For Jones Group.**

On October 29, 2013, the Board "determined that $15 per share 'represented a compelling value for the Company' and resolved to 'proceed with discussions with Sycamore on that basis.'" (¶58) Nevertheless, the Board refused Sycamore's request for exclusivity so that it could "remain free to consider alternative transactions." (¶58) "No alternative bid or transaction ever materialized." (¶58) Thus, the Board approved Sycamore's acquisition of Jones Group for $15 per share through an LBO transaction (the "Merger").[2] (¶65)

**C.**     **Sycamore's Plans Following The Merger.**

Following the Merger, Sycamore planned to sell off certain of the Company's businesses to its affiliates (the "Carve-Out Transactions"). To that end, Sycamore retained Duff & Phelps to render a solvency opinion as to "RemainCo," (which would be the NWHI business that remained after the Carve-Out Transactions). (¶84) In connection therewith, Sycamore created projections for RemainCo, which Sycamore directed Duff & Phelps to use for its solvency opinion. (¶¶84-86, 93-94, 116-21, 123, 139). The Litigation Trustee says that Sycamore "manipulated" those projections. (¶¶84, 123) He does not allege that the Former Non-Management Directors were

---

[2]   Sycamore worked with Morgan Stanley to assist with debt financing for the acquisition of Jones Group. (¶¶59-60). The Merger Agreement obligated the Company's "Representatives" to "provide all cooperation reasonably requested" in connection with Sycamore's efforts to arrange financing. (¶68; Merger Agreement Section 6.14)

involved in, or made aware of, the manipulation.

Sycamore's secret wrongdoing did not end there, according to the Litigation Trustee. (¶¶84-94)   When **Sycamore** recognized that "RemainCo would come nowhere close to the projections **Sycamore** had given Duff & Phelps, **Sycamore did nothing to apprise Duff & Phelps _or anyone in the outside world of this information_.** Instead, **Sycamore deliberately kept this bad news under wraps _until after the transaction closed_.** (¶94)   The Former Non-Management Directors are not alleged to have known about or participated in any of this alleged malfeasance. Moreover, the Litigation Trustee concedes that the Board did not approve the Carve-Out Transactions, or express any view as to the fairness of those transactions. (¶¶66-69)

**D.      Jones Group Stockholders Approve The Merger, Which Closes.**

On April 8, 2014, following stockholder approval, the Merger closed. (¶131)  Sycamore effectuated the Merger by creating a new subsidiary—Jasper Parent—into which Jones Group was merged, with Jones Group surviving the Merger and thereafter renamed Nine West Holdings, Inc. ("NWHI"). *In re: Nine West LBO Sec. Litig.*, 2020 WL 5049621, at *2 (S.D.N.Y. Aug. 27, 2020).

**E.      Kaluzny And Morrow Close The Carve-Out Transactions.**

Upon the closing of the Merger, the Former Non-Management Directors ceased to be directors of Jones Group, and Stefan Kaluzny and Peter Morrow—co-founders and managing directors of Sycamore—became NWHI's only directors. (¶¶42-43; Nine West Holdings, Inc. (f/k/a The Jones Group, Inc.) Current Report (Form 8-K) at 7 (Apr. 9, 2014); Merger Agreement Section 3.1). Thereafter, Kaluzny and Morrow caused the Carve-Out Transactions to occur. (¶136)

**F.      The 2014 Litigation.**

Meanwhile, after the announcement of the Merger six Jones Group stockholders filed suit in the Supreme Court of the State of New York, County of New York against Jones Group, the Board and Sycamore, among others.  These actions were consolidated into a single class action

complaint in New York Supreme Court (the "2014 Litigation"). *See generally* Consolidated Complaint, *In re The Jones Group Inc. S'holders Litig.*, No. 650096/2014, Dkt. 4 (N.Y.Sup.Ct. Mar. 7, 2014) (Ex. B.)  The 2014 Litigation asserted both stockholder direct claims and the Company's claims, derivatively.  To that end, certain of the plaintiffs made a demand on the Company, as required by Pennsylvania law, in which the others joined.  (Ex. B ¶44)  The consolidated complaint alleged that the Former Non-Management Directors breached their fiduciary duties to the Company in connection with the Merger and Carve-Out Transactions.  (Ex. B ¶¶1, 4, 12, 98, 102, 118-164,189-94).

### G.     The Board Appoints An SLC, Which Investigates All Alleged Wrongdoing.

In response to the lawsuits and several litigation demands made on the Board, on January 14, 2014, the Board formed a special litigation committee (the "SLC") to review and investigate, with the help of independent legal counsel at Dilworth Paxson LLP, the alleged breaches of fiduciary duty and other wrongdoing related to the Merger and Carve-Out Transactions.  (Ex. C)  The SLC reviewed relevant documents and materials, conducted eighteen interviews, and issued a 126-page report setting forth its findings (the "SLC Report").[3]  (*Id.*)  The SLC found, among other things "that the Board has acted on an informed basis in good faith and in the best interests of [Jones Group] in agreeing to the merger agreement with Sycamore" and that Jones Group "should not pursue the shareholder claims against the Board because they lack merit."  (Ex. A at

---

[3]   The Court may consider the SLC Report in connection with this motion.  *See In re H.J. Heinz Co. Deriv. & Class Action Litig.*, 2013 WL 1905075, at *3 (Pa. Com. Pl. Apr. 29, 2013) (considering SLC report on motion to dismiss and dismissing claims, holding "that the business judgment rule protects each of the conclusions reached by the SLC in its report") (citing *Cuker v. Mikalauskas*, 692 A.2d 1042, 1047 (Pa. 1997).  *See also Ironworkers Dist. Council of Phila. & Vicinity Ret. & Pension Plan v. Andreotti*, 2015 WL 2270673 (Del. Ch. May 8, 2015), *aff'd*, 132 A.3d 748 (Del. 2016) (TABLE).

4) An accompanying set of Board resolutions adopted the SLC's findings as "the decision of the Company." (Ex. A at 118)  The SLC Report was provided to the plaintiffs in the 2014 Litigation. (Ex. B ¶166; Ex. C at 5)

**H.      The SLC Process Is Challenged, And All Claims Are Settled, Released And Waived.**

After receiving the SLC report, the plaintiffs in the 2014 Litigation amended their pleading to challenge the SLC process. (Ex. C at 5-6)  The plaintiffs received discovery relating to the SLC's investigation, including a deposition of the chair of the SLC.  (Ex. C at 7)

After discovery, the stockholder plaintiffs and parties to the litigation negotiated a settlement that "finally and fully settled, compromised and dismissed, on the merits and with prejudice" all claims, whether direct, derivative on behalf of the Company, or otherwise, against the Former Non-Management Directors related to the Merger and Carve-Out Transactions (the "Settlement").  The Settlement also foreclosed any further challenge to the SLC process.  (*Id.* at 7; Ex. C at 7, 16 ¶3)  Further confirming that the Former Non-Management Directors would face no further litigation about any of this, the Settlement required all parties, including the Company, to waive all rights "which may have the effect of limiting the release." (Ex. C at 17)

The Settlement required notice to all Jones Group stockholders.  (Ex. C ¶¶9-10)  No stockholder objected or sought exclusion. (Ex. D).  On February 25, 2015, Justice Eileen Bransten of the Supreme Court of the State of New York approved the Settlement and dismissed the 2014 Litigation "with prejudice, on the merits."  (Ex. D ¶¶2, 5)  Thus, all litigation against the Former Non-Management Directors and all "Settled Claims" were "finally and fully settled, compromised and dismissed, on the merits and with prejudice."  (Ex. C at 8-9)  "Settled Claims" was drafted in broad terms and was defined to include "any and all manner of claims, demands, actions or causes of action … whether known or unknown … direct [or] derivative which have arisen, could have arisen, arise now or hereafter arise out of, or relate in any manner to the … Merger Agreement and

the transactions contemplated thereby, including the Merger … against any or all of the Released Persons."  (Ex. C at 12 ¶1(t), 16 ¶3)  Released Persons include the Former Non-Management Directors.  (Ex. C at 12 ¶1(q), 10 ¶1(f))

**I.      NWHI Suffers Dramatic Losses Leading To Bankruptcy.**

In the years following the closing of the Merger and Carve-Out Transactions, NWHI suffered dramatic losses, totaling $1.064 billion.  (¶144)  On April 6, 2018—approximately four years after the Merger and Carve-Out Transactions closed—NWHI filed for bankruptcy in the Court.  (¶147)  The Former Non-Management Directors had nothing to do with the management of the business and affairs of NWHI in the years following the closing of the Merger.

**J.      The Bankruptcy**

In bankruptcy, NWHI settled its claims against Sycamore and granted it a release.  (¶151) The bankruptcy plan created a litigation trust, with a New York-based trustee (the "Litigation Trustee"), to pursue claims on behalf of the NWHI estate.  (¶8)  The Litigation Trustee was permitted to assert claims "in respect of matters arising out of or relating to the [Merger] or the Carve-Out Transactions" that were "owned by, or asserted by or asserted by or on behalf of, or that may be asserted by or on behalf of, the Debtors or their Estates."  "Debtors" includes NWHI. *In re: Nine West Holdings, Inc. et al.* at 28 (C.A. No. 18-10947 (SCC)) (Bankr. S.D.N.Y.) (Feb. 27, 2019), Dkt. 1308.  NWHI emerged from bankruptcy in March 2019.  (¶8)

## ARGUMENT

In order to survive a motion to dismiss, a plaintiff must "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  When deciding a motion to dismiss, the Court "accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  Unlike factual allegations, however, legal conclusions

pleaded in a complaint are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

I.    **ALL REMAINING CLAIMS ARE BARRED BY THE SETTLEMENT OF THE 2014 LITIGATION AND THE DOCTRINE OF *RES JUDICATA*.**

There can be no serious dispute that the claims here are foreclosed by the Settlement. To start, everyone agrees that the claims the Litigation Trustee seeks to assert "arise out of" and "relate to" the Merger and Carve-Out Transactions. (*See* ¶8; Ex. C at 12 ¶1(t), 16 ¶3) Next, the Litigation Trustee stands in the shoes of the Company and seeks to assert those claims "on behalf" of its estate.[4] Indeed, the Litigation Trustee may ***only*** assert claims "arising out of or relating to" the Merger and Carve-Out Transactions that were "owned by, or asserted by or that may be asserted by or on behalf of" the Company. *In re: Nine West Holdings, Inc.*, Case No. 18-10947, Doc. 1308 at 14 § 141.

Just like the Litigation Trustee, the plaintiffs in the 2014 Litigation also sought to prosecute the Company's claims that arose out of or related to the Merger and Carve-Out Transactions. They asserted claims both directly, and derivatively on behalf of Jones Group, against, among others, the Former Non-Management Directors. They argued that they had the right to prosecute the Company's claims derivatively because under Pennsylvania law a demand on the Board would have been futile and because the SLC wrongfully refused their demands. (Ex. B ¶¶43-45, 165, 181).

The Company's claims that arose out of or related to the Merger and Carve-Out Transactions were precisely the claims settled in the 2014 Litigation. The Settlement "finally and

---

[4]    As explained above, Jones Group, Inc. was the "Company" before the Merger, when it was merged with "Jasper Merger Sub" (which was created solely to effectuate the Merger). Jones Group, Inc. was "the surviving corporation" in the Merger and was then "renamed NWHI." (¶132) The bankruptcy plan created a litigation trust, with a New York-based trustee, to pursue claims on behalf of the NWHI estate. (*See supra*, Background at D, J)

fully" settled, compromised, released and dismissed "any and all manner of claims … that have been, could have been, or in the future can or might be asserted … by or on behalf of Plaintiffs or any member of the Class, whether individual, direct, class, **derivative**, representative, legal, equitable, or of any other type" that "arise out of" or "relate to" the Merger and Carve-Out Transactions, against, among others, the Former Non-Management Directors.  (Ex. C at 8-9, 12 ¶1(q), 10 ¶1(f))  Further confirming the intent to release all claims against the Former Non-Management Directors arising out of or relating to the Merger and Carve-Out Transactions, the Company waived its rights to take any action that "might have the effect of limiting the releases provided in the Settlement."  (Ex. C at 17)

The Court interprets "'a release under traditional contract principles'" and is "compelled to bar claims precluded by the plain language of the release."  *In re WorldCom, Inc.*, 296 B.R. 115, 120-21 (Bankr. S.D.N.Y. 2003) (citation omitted).  When a settlement is clear and unambiguous, "the Court looks to the terms contained therein to determine the intentions of the Settlement Parties and the impact that the Settlement Agreement has on the Claim."  *Id.* at 121.  The unambiguous terms of the Settlement bar the fiduciary duty claims the Litigation Trustee seeks to bring here.  Moreover, the Litigation Trustee fails to challenge the validity of the Settlement.  *Id.* at 120-21 (enforcing settlement; "[plaintiff] has not alleged that the Settlement Agreement fails to reflect the intentions of the Settlement Parties").  As a result, the Court should enforce the Settlement as written and dismiss all of the claims against the Former Non-Management Directors.

Additionally, "*res judicata* operates to bar 'successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was.'" *RA Glob. Servs., Inc. v. Avicenna*

*Overseas Corp.*, 843 F. Supp. 2d 386, 389 (S.D.N.Y. 2012) (citation omitted).  A judgment in a derivative action "'is *res judicata* both as to the corporation and as to all of its stockholders, including stockholders who were not parties to the original action in subsequent actions based upon the same subject matter.'"  *Henik ex rel. LaBranche & Co. v. LaBranche*, 433 F. Supp. 2d 372, 380 (S.D.N.Y. 2006) (citation omitted); *see also In re EZCORP Inc. Consulting Agreement Deriv. Litig.*, 130 A.3d 934, 945-46 (Del. Ch. 2016) ("A judgment in a stockholder derivative action certainly binds the corporation and its stockholders….").

Here, *res judicata* bars the claims the Litigation Trustee seeks to bring against the Former Non-Management Directors.  The New York State Court ordered the 2014 Litigation dismissed "with prejudice, on the merits."  (Ex. D ¶¶2, 5)  A "'dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for *res judicata* purposes.'"  *Deylii v. Novartis Pharms. Corp.*, 2014 WL 2757470, at *5 (S.D.N.Y. 2014) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002)); *TechnoMarine S.A. v. Giftports, Inc.*, 2012 WL 3964734, at *3 (S.D.N.Y. Sept. 10, 2012) (same), *aff'd*, 758 F.3d 493 (2d Cir. 2014).

Next, the Litigation Trustee is inarguably in privity with the Company, which was a party to the Merger and Carve-Out Transactions.  The Settlement binds "trustees" of Jones Group, which includes the Litigation Trustee.  (Ex. C ¶1(f), 1(q) (defining "Released Persons" as "trustees" of the Company); *see also Boguslavsky v. S. Richmond Sec., Inc.*, 225 F.3d 127, 130 (2d Cir. 2000) (whether settlement between plaintiff and party bars suit against another party is question of contractual privity). As discussed above, the Litigation Trustee's rights are entirely derivative of the Company's rights.  *See supra* at I; *Durkin v. Shea*, 957 F. Supp. 1360, 1372 (S.D.N.Y. 1997) (trustee and pre-bankruptcy company in privity because "the trustee stands in the debtor shoes").

"'[O]nce a claim is brought to a final conclusion, all other claims arising out of the same

transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 194 (2d Cir. 2008) (citation omitted).  Accordingly, *res judicata* bars all remaining claims against the Former Non-Management Directors here.

## II.   ALL REMAINING CLAIMS ARE BARRED BY THE SLC PROCESS.

Even if the Settlement did not bar the claims, under Pennsylvania law the results of the SLC process are dispositive.[5]  Pennsylvania is a demand required state. The Business Corporation Law of 1988, as amended (the "BCL"), provides that no stockholder can bring a claim for breach of a fiduciary duty owed by a director unless the stockholder first makes a demand on the board to institute litigation.  15 Pa.C.S. §1781.  This is because the right to bring a claim for breach of fiduciary duty against the director of Pennsylvania corporation belongs only to the corporation. See 15 Pa.C.S. § 1712; *B.T.Z., Inc. v. Grove*, 803 F. Supp. 1019, 1021 (M.D. Pa. 1992).

The BCL further provides that a company may form a special litigation committee to investigate claims raised in a demand or asserted in litigation. 15 Pa.C.S. § 1783(a).  Such a committee is fully empowered to decide whether a demand should be rejected or litigation terminated; either due to lack of merit or because litigation is not in the corporation's best interests. *See id.*; *Cuker v. Mikalauskas*, 692 A.2d 1042, 1045 (Pa. 1997).  If such a committee determines that no wrongdoing occurred and that litigation should not be commenced (or pending litigation should be terminated), the BCL requires that courts enforce that determination:

> If the court finds that the members of the committee met the qualifications required
> under subsection (c)(1) and (2) and that the committee acted in good faith,

---

[5]   Pennsylvania law applies to the fiduciary duty claim and any challenge to the SLC pursuant to the "internal affairs doctrine" because Jones Group was incorporated in Pennsylvania at all relevant times.  (¶39)  *Seybold v. Groenink*, 2007 WL 737502, at *5-7 (S.D.N.Y. Mar. 12, 2007); *see also Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982).

independently and with reasonable care, ***the court shall enforce the determination of the committee***.[6]

15 Pa.C.S. § 1783 (emphasis added); *see also Cuker*, 692 A.2d 1047.

Here, the Board formed an SLC to investigate the claims asserted in the lawsuits and demands.  (Ex. A at 11-13; Ex. C at 3); (*see supra*, Background at G)  The SLC investigation included the Merger, Carve-Out Transactions and claims asserted against the Board in the lawsuits and stockholder demands.  (Ex. A. at 4-8, 18-19, 30-118)

Thus, there can be no doubt that the claims the Litigation Trustee seeks to assert here are exactly the same claims investigated by the SLC and described in the SLC Report.  As shown above, the Litigation Trustee stands in the shoes of the Company and seeks to assert exactly the same fiduciary claims settled in the 2014 Litigation.  (*supra* Part D) (¶8)  The SLC investigated those same allegations.  (Ex. A at 5-8).

As a result, the claims the Litigation Trustee seeks to assert are foreclosed by the SLC's conclusions.  *See Cuker*, 692 A.2d at 1048.  The SLC concluded, among other things, that there was "no evidence to support a breach of fiduciary duty claim against any Board member"; that the Company "should not pursue the shareholder claims against the Board because they lack merit"; the "Board ***more than adequately represented the interests of the Company***"; Jones Group "should not file suit against the Board of Directors"; and "***this decision becomes the decision of the Company***."  (Ex. A at 3-4, 117-118, *see also* 80, 101, 115).

Under Pennsylvania law, "the court shall enforce the determination of the committee."  *See* 15 Pa.C.S. § 1783; *Cuker*, 692 A.2d at 1048; *Lemenestrel v. Warden*, 964 A.2d 902, 904 (Pa.

---

[6]   Subsections (c)(1) and (c)(2) require that the committee be composed of two or more individuals who "are not interested in the claims asserted in the demand or action" and "are capable as a group of objective judgment in the circumstances."  *Id.*  All challenges to compliance with these subsections here was released in the Settlement.  *Supra* at I.

13

Super. Ct. 2008) (affirming trial judge's findings of fact and dismissal of breach of fiduciary duty claims made in deference to SLC process). Accordingly, the claims should be dismissed.

The Litigation Trustee may try to argue that the SLC's conclusion was not binding on the Company and that, as a result, he can maintain the claims. If he does, he will be wrong. As explained above, following the conclusion of the SLC investigation in 2014, the plaintiffs in the 2014 Litigation were given a copy of the SLC Report. *See supra*, Background at G; 15 Pa.C.S. § 1783. Those plaintiffs thereafter amended their pleading to challenge the SLC process. (Ex. B) For example, they alleged that the SLC "did not satisfy its good faith and informational requirements of the business judgment rule" and "directors could not reasonably have determined that rejection of the demand was in the best interests of the corporation." (Ex. B ¶¶167, 181)

After discovery, those plaintiffs "finally and fully" settled, compromised, released and dismissed the 2014 Litigation, including any challenge to the SLC process. (Ex. C at 8-9, 12 ¶1(q), 10 ¶1(f)) Thus, the terms of the Settlement and the doctrine of *res judicata* bar the Litigation Trustee, who just like those stockholders stands in the shoes of the Company, from bringing any challenge to the SLC process. *See supra* at I. Even if the Settlement did not foreclose a challenge to the SLC process and conclusion, the Litigation Trustee does not purport to bring one. Despite standing in the shoes of the Company, with access to the Company's books and records, the Litigation Trustee ignores the SLC process entirely and pleads no facts challenging the SLC process and conclusion. Accordingly, the SLC's determination requires dismissal here. *See, e.g.*, *Braun v. USA Techs, Inc.*, 2017 WL 10087600 (Pa. Com. Pl. Mar. 8, 2017) (dismissing breach of fiduciary duty claims based on SLC process), *aff'd sub nom. Braun v. Herbert*, 180 A.3d 482 (Pa. Super. Ct. 2018); *In re H.J. Heinz Co. Deriv. & Class Action Litig.*, 2013 WL 1905075 (Pa. Com. Pl. Apr. 29, 2013) (same).

## III.   ALL REMAINING CLAIMS ARE BARRED BY THE EXCULPATORY PROVISION IN JONES GROUP'S BYLAWS.

The exculpatory provision in Jones Group's bylaws provides a separate and independent basis to dismiss the claims that seek to "recover damages from Jones Group directors and officers for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and other causes of action." (¶8)  Pennsylvania law empowers a corporation to adopt a bylaw providing that directors "***shall not be personally liable as such for monetary damages for any action taken*** unless … the breach or failure to perform constitutes self-dealing, willful misconduct or recklessness."  15 Pa.C.S. § 1713(a)(emphasis added).  At all relevant times, Jones Group had such a bylaw, and the Litigation Trustee fails to plead one of the exceptions to exculpation.[7]

First, the Litigation Trustee does not plead that the Former Non-Management Directors engaged in self-dealing.  A director engages in self-dealing if he or she appears "on both sides" of a transaction.  *See, e.g.*, *Gilbert v. El Paso Co.*, 1988 WL 124325, at *8 (Del. Ch. Nov. 21, 1988), *aff'd*, 575 A.2d 1131 (Del. 1990).  Here, the Litigation Trustee does not and cannot allege that the Former Non-Management Directors stood on both sides of the Merger or Carve-Out Transactions.  Indeed, they are not alleged to have been affiliated with Sycamore in any way.  *See supra*, Background at B.

Second, the Litigation Trustee does not plead that the Former Non-Management Directors engaged in willful misconduct.  Willful misconduct is "intentional" wrongdoing.  *King v. Breach*, 540 A.2d 976, 981 (Pa. Commw. Ct. 1988) ("[T]he term 'willful misconduct' is synonymous with the term 'intentional tort'.").  The Litigation Trustee nowhere says the Former Non-Management Directors acted intentionally to harm the Company (and the pled facts show otherwise).

---

[7]   *See* The Jones Group Inc., Quarterly Report (Form 10-Q) Ex. 3.1 at 21 (Apr. 27, 2012) (Amended and Restated Bylaw 8.1)

Finally, the Litigation Trustee does not plead that the Former Non-Management Directors acted recklessly.  *See Tayar v. Camelback Ski Corp.*, 47 A.3d 1190, 1200-01 (Pa. 2012) (recklessness requires "an extreme departure from ordinary care").  Instead, he alleges the board engaged a financial advisor to evaluate strategic alternatives, including with at least sixteen potential bidders (¶¶48, 53), met and determined that a $15 per share offer from Sycamore "represented a compelling value for the Company" (¶58), denied Sycamore's request for exclusivity, allowing a superior opportunity to emerge (¶58), received monthly reports from the Jones Group's management in the months leading up to closing (¶95), and the Litigation Trustee fails to allege any better alternative to a transaction with Sycamore ever existed or emerged.  This pleading entirely contradicts the notion that the Former Non-Management Directors acted recklessly, even if they "knew that the Merger and Carve-Out Transactions would not retain all of Jones Group's businesses… thereby reducing RemainCo's ability to service debt."  (¶107); *See, e.g.*, *Simmons v. Sutherland*, 1998 WL 35550554, at *7 (Pa. Com. Pl. Nov. 25, 1998) (finding that board "engaged an investment banker to assist with the sale of the Company" and "substantially relied upon the advice of the investment banker" evidenced good faith and reasonable investigation).

As a result, all claims against the Former Non-Management Directors should be dismissed.

## IV.    COUNT I FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY.

Even if all of the above were not correct, the Litigation Trustee fails to plead the claim.

### A.    The Business Judgment Rule Requires Dismissal.

Under Pennsylvania law, the fiduciary duties owed by directors are set by statute.  15 Pa.C.S. § 1712.  The business judgment rule presumes directors complied with those fiduciary duties. *See Cuker*, 692 A.2d at 1048.  It "recognizes that business decisions frequently entail some degree of risk and consequently provides directors broad discretion in setting policies without judicial or

shareholder second-guessing."  *Id.* at 1046 ("[T]he doctrine prevents courts from becoming enmeshed in complex corporate decision-making, a task they are ill-equipped to perform.").  The business judgment rule is also mandated by statute: "[a]bsent breach of fiduciary duty, lack of good faith or self-dealing, any act as the board of directors, a committee of the board or an individual ***director shall be presumed to be in the best interests of the corporation***.  15 Pa.C.S. § 1715(d).  As a result, if director is "not interested in the subject of the business judgment," the business judgment rule "insulates" him or her "from liability."  *Cuker*, 692. A.2d at 1045.

Some jurisdictions apply *heightened* standards to director action in the context of change of control transactions.  But the opposite is true under Pennsylvania law.  Under Pennsylvania law, in "the merger or acquisition context, a board's decision is entitled to *even greater deference* than decisions in the ordinary course of business."  *Simmons*, 1998 WL 35550554, at \*6 (emphasis added).  Pursuant to 15 Pa. C.S. § 1715(d):

> any act as the board of directors, a committee of the board or an individual director relating to or affecting an acquisition or potential or proposed acquisition of control to which a majority of the disinterested directors shall have assented shall be presumed to satisfy the standard set forth in section 1712, ***unless it is proven by clear and convincing evidence that the disinterested directors did not assent to such act in good faith after reasonable investigation***.

"In enacting Section 1715, the Pennsylvania legislature specifically intended that Courts defer to directors' decisions concerning mergers and acquisitions."  *Simmons*, 1998 WL 35550554, at \*7; *B.T.Z.*, 803 F. Supp. at 1023.

Here, the Litigation Trustee fails to plead facts that could overcome the protections of Section 1715(d).  To start, the Former Non-Management Directors were "disinterested" within the meaning of Section 1715(d).  "[A] disinterested director is deemed to mean any director of the corporation other than (1) a director who has a direct or indirect interest in the person seeking to acquire the corporation, is an affiliate of the potential acquirer of the corporation or was nominated

to the board by the person seeking to acquire the corporation; or (2) depending on the circumstances, a current or former officer or employee of the corporation." 15 Pa.C.S. §1715(e)(1) (emphasis added). The Litigation Trustee fails to allege any facts suggesting that a majority of the Board that approved the Merger had any interest whatsoever in Sycamore, was nominated to the Board by Sycamore or was a current or former officer or employee of Jones Group.

Next, the Litigation Trustee fails to allege facts suggesting the Former Non-Management Directors "did not [approve the Merger] in good faith." 15 Pa.C.S. § 1715(d). To state a claim that directors failed to act in good faith (or "bad faith") requires a plaintiff to plead "a very extreme set of facts." *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 654 (Del. Ch. 2008). This is true because "[d]irectors' decisions need only be reasonable, not perfect. 'In the transactional context, [an] extreme set of facts [is] required to sustain a disloyalty claim premised on the notion that disinterested directors were intentionally disregarding their duties.'" *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243 (Del. 2009) (alterations in original) (citation omitted). Far from that extreme circumstance, as set forth above the Litigation Trustee alleges the hallmarks of a board seeking in good faith the best alternative for the corporation and its stockholders. *See supra* Background at A,B, Part III. His pleading contradicts the notion that the Former Non-Management Directors acted in bad faith. *See Lear*, 967 A.2d at 655 (dismissing bad faith claim because directors "met frequently" and "hired reputable advisors"); *see also In re BJ's Wholesale Club, Inc. S'holders Litig.*, 2013 WL 396202, at *7 (Del. Ch. Jan. 31, 2013) (dismissing bad faith claim because directors "met regularly" and relied upon opinion of financial advisors).

Finally, the Litigation Trustee fails to allege facts suggesting the Former Non-Management Directors did not approve the Merger "after reasonable investigation." 15 Pa.C.S. § 1715(d). Courts reject allegations that a board did not act "in good faith after reasonable investigation"

where, as here, the board "engaged an investment banker to assist with the sale of the Company" and "substantially relied upon the advice of the investment banker as well as independent counsel." *Simmons*, 1998 WL 35550554, at *7.  Here, the Former Non-Management Directors investigated their alternatives with the advice of Citi and further understood their options as a result of a public and open sales process.  *See supra*, Background at B; (¶¶43, 102-103)  The Litigation Trustee brings no challenge to Citi's independence or the quality of its advice (and the Former Non-Management Directors were entitled by statute to rely on Citi's opinions).  *See* 15 Pa.C.S. §1715(d).  On these facts, there can be no plausible claim that the Former Non-Management Directors did not approve the Merger after "reasonable investigation."  15 Pa.C.S. § 1715(d).

The Litigation Trustee's theory that the Merger and Carve-Out Transactions ultimately contributed to NWHI's bankruptcy changes none of this.  Initially, Pennsylvania law "has consistently and realistically recognized the danger of subjecting corporate directors to liability whenever any of the transactions of the company did not meet with success."  *Smith v. Brown-Borhek Co.*, 200 A.2d 398, 401 (Pa. 1964).  Said differently, good faith business decisions that turn out poorly are protected just as much as those that turn out well.  Moreover, the Litigation Trustee expressly and specifically pleads intervening acts far beyond the Former Non-Management Directors' knowledge or control that led to NWHI's insolvency; including Sycamore's acts to secretly manipulate the projections underlying the D&P Solvency Opinion, to set the terms of the Carve-Out Transactions, to cause them to occur and, critically, to operate the post-closing business.  (¶¶84-94, 116-24, 141-47)  Accordingly, the Litigation Trustee has failed to overcome the business judgment rule and the fiduciary duty claim against the Former Non-Management Directors must be dismissed.  15 Pa.C.S. § 1715(d); *Cuker*, 692 A.2d at 1048 ("If all of these criteria are satisfied, the business judgment rule applies and the court should dismiss the

action.").

## B. The Litigation Trustee's Remaining Arguments Are Makeweight.

Unable to present a cognizable challenge to the protections afforded to the Former Non-Management Directors under Pennsylvania law, the Litigation Trustee asserts a hodgepodge of supposed conflicts and missteps, none of which state a claim.

First, he says the Former Non-Management Directors' receipt of merger proceeds constituted disabling interests. (¶¶39-40)  As a matter of Pennsylvania statute, directors' receipt of merger proceeds does not render them interested. 15 Pa.C.S. § 1715(e)(2) ("A person shall not be deemed to be other than a disinterested director solely by reason of any or all of the following: …(ii) The receipt as a holder of any class or series of any distribution made to all owners of shares of that class or series. (iii) The receipt by the director of director's fees or other consideration as a director.").  Indeed, the Former Non-Management Directors' stock ownership aligns their interests with those of the Company and stockholders. *See In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 508 (Del. Ch. 2010).

Second, he says the Former Non-Management Directors' receipt of proceeds from the accelerated vesting, cancellation and conversion of their Restricted Shares and/or Share Equivalent Units constituted disabling interests. (¶¶39-40)  Again, that argument contradicts the Pennsylvania statute explicitly prescribing the standard of "disinterest." *See* 15 Pa.C.S. § 1715(e)(2).  And in any event, "allegations of directors receiving the common perquisites given to a board of directors is not sufficient to show self-dealing, because if this were sufficient, all boards would be self-interested." *Poland v. Caldwell*, 1990 WL 158479, at *4 (E.D. Pa. Oct. 12, 1990).  *See also Fundamental Partners v. Gaudet*, 2011 WL 7141418, at *2 (Pa. Com. Pl. Nov. 23, 2011); *Globis Partners, L.P. v. Plumtree Software, Inc.*, 2007 WL 4292024, at *8 (Del. Ch. Nov. 30, 2007).

Third, he says the Former Non-Management Directors' entitlement to indemnification

constituted disabling interests.  (¶¶39-40) But director indemnification rights are authorized by statute (*see* 15 Pa.C.S. §§ 1741-50), are commonplace and do not render directors interested in a business decision.  *See Fundamental*, 2011 WL 7141418, at *2 ("[I]ndemnification is not viewed as … making him/her interested in the transaction.").

Fourth, he says the Former Non-Management Directors "failed to engage an expert to render a solvency opinion to determine whether the [Merger and Carve-Out Transactions] would render NWHI insolvent, or to otherwise make any investigation, reasonable or otherwise, as to the impact of the [Merger and Carve-Out Transactions] upon NWHI's solvency." (¶165)  Even if true, that is of no consequence.  Everyone agrees that the Former Non-Management Directors did not plan, negotiate, approve, express any view as to the fairness of or cause the Carve-Out Transactions to occur.  *See supra*, Background at C.  Only Sycamore did those things.  *Id.*  As a result, the Former Non-Management Directors can face no fiduciary liability with respect to the Carve-Out Transactions.  *In re Tri-Star Pictures, Inc., Litig.*, 1995 WL 106520, at *2 (Del. Ch. Mar. 9, 1995) ("[A] director who plays no role in the process of deciding whether to approve a challenged transaction cannot be held liable on a claim that the … decision to approve that transaction was wrongful.").  Indeed, the Carve-Out Transactions were approved and carried out *after* the Former Non-Management Directors ceased to be directors of the Company.  *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 758 (Del. Ch. 2005) (holding "former directors owe no fiduciary duties"), *aff'd*, 906 A.2d 27 (Del. 2006); *see also MMC Energy, Inc. v. Miller*, 2009 WL 2981914, at *7 (S.D.N.Y. Sept. 14, 2009).  And Sycamore is alleged to have hidden its manipulation of the D&P Solvency Opinion from everyone, including the Former Non-Management Directors.

Fifth, he says the Former Non-Management Directors breached their fiduciary duties by "assist[ing] in the syndication of the LBO Debt."  (¶168 e; *see also* ¶60).  Yet he pleads no actual

facts identifying what improper act the Former Non-Management Directors supposedly took in order to "assist" Sycamore.  Indeed, he fails even to mention any of the Former Non-Management Directors by name in connection with these conclusory allegations.[8]  Thus, allegations that they "participated and assisted Sycamore in arranging the debt financing" or "provided substantial assistance to Sycamore," cannot form the basis of a claim.  (¶60; *see also, e.g.*, ¶¶4, 6, 9, 63, 68, 70, 80, 83, 95, 98, 99, 103, 106-15, 131, 158-59, 168); *see In re Wonderwork, Inc.*, 611 B.R. 169, 199 (Bankr. S.D.N.Y. 2020); *In re Comverge, Inc. S'holders Litig.*, 2014 WL 6686570, at *13 (Del. Ch. Nov. 25, 2014).

Finally, he says the Former Non-Management Directors should have investigated the impact of the Merger and Carve-Out Transactions on "those Jones Group creditors who would continue to be creditors of NWHI."  (¶168 f)  Yet, there can be no doubt that the Former Non-Management Directors owed no fiduciary duties to future stockholders or creditors.  *See* 15 Pa.C.S. § 1717 (explaining that directors owe duties "solely to the business corporation"); *In re Total Containment, Inc.*, 335 B.R. 589, 603 (Bankr. E.D. Pa. 2005) (explaining that under Pennsylvania law, directors do not owe fiduciary duties to creditors unless and until the company is insolvent). Failing to protect those creditors from Sycamore's future acts and management decisions cannot give rise to a claim against the Former Non-Management Directors.

## V.      COUNT II FAILS TO STATE A CLAIM FOR AIDING AND ABETTING.

The Litigation Trustee says that the Former Non-Management Directors "took numerous actions that enabled Kaluzny and Morrow to breach their fiduciary duties once Kaluzny and Morrow became directors of NWHI."  (¶175)  He says these actions "occurred both before Kaluzny

---

[8]    The Memorandum of Law in Support of the Former Officer Defendants' Motion to Dismiss establishes why these group pleadings fail to state a claim, and the Former Non-Management Directors join in those arguments.

and Morrow assumed their director positions" and "afterward."  (*Id.*).  To state an aiding and abetting claim, a plaintiff must allege: "'(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation in that breach by defendants,' and (4) damages." *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001) (ellipsis and citation omitted).  This "stringent" standard "turns on proof of scienter of the alleged abettor."  *Binks v. DSL.net, Inc.*, 2010 WL 1713629, at *10 (Del. Ch. Apr. 29, 2010).

Initially, the Former Non-Management Directors cannot aid and abet a breach of fiduciary duty that does not exist.  *In re Alloy, Inc. S'holder Litig.*, 2011 WL 4863716, at *14 (Del. Ch. Oct. 13, 2011).  Kaluzny and Morrow owed no duties to the Company until they became directors upon the closing of the Merger.  *In re Walt Disney Co.*, 907 A.2d at 758 ("directors-to-be" do not owe fiduciary duties).  As a result, supposed acts taken "before Kaluzny and Morrow assumed their director positions" cannot form the basis of an aiding and abetting claim.

Moreover, the Litigation Trustee fails to allege facts showing that the Former Non-Management Directors "knowingly participated" in any breaches by Kaluzny and Morrow once they became directors of NWHI.  *Malpiede*, 780 A.2d at 1097. Knowing participation in a breach requires "knowledge" that one is "advocat[ing] or assist[ing] … such a breach." *Id.*  The Litigation Trustee alleges no such facts.  Instead, his fact allegations show that Sycamore, Kaluzny and Morrow acted alone and deliberately kept their bad acts a secret.  (*See supra*, Background at C) Asserting that "the Merger, the incurrence of the LBO Debt, the payments to the Jones Group shareholders, and the Carve-Out Transactions—were all intended to occur together" is insufficient to state a claim because "arm's-length bargaining cannot give rise to aiding and abetting liability." *In re Comverge, Inc.*, 2014 WL 6686570, at *19.

Finally, conclusory assertions (unsupported by fact allegations) that the Former Non-

Management Directors "knew or should have known" or "recklessly disregarded" Sycamore's bad acts do not state a claim.  (¶¶124, 175, 177)  *In re Gen. Motors (Hughes) S'holder Litig.*, 2005 WL 1089021, at \*24 (Del. Ch. May 4, 2005) ("Conclusory statements of knowing participation will not suffice."), *aff'd*, 897 A.2d 162 (Del. 2006).  As a result, Count II should be dismissed.

## VI.  COUNT III OTHERWISE FAILS TO STATE A CLAIM FOR VIOLATION OF PENNSYLVANIA STATUTE TITLE 15 SECTIONS 1551 AND 1553.

Finally, Count III alleges that the $1.2 billion Jones Group's former stockholders received as Merger consideration was an unlawful distribution under Title 15, Section 1551 of the Pennsylvania Statutes.  (¶184)  The Litigation Trustee attempts to hold the Former Non-Management Directors jointly and severally liable for the alleged unlawful "distribution" under Title 15, Section 1553 of the Pennsylvania Statutes because the Former Non-Management Directors approved the Merger consideration.  (¶185)  Pennsylvania law expressly forecloses this theory.  A "distribution," as used in Sections 1551 and 1553, expressly does not include consideration paid in a merger or other fundamental changes to the corporation, like the Merger. *See* 15 Pa.C.S. § 1103 ("Neither the making of … a guaranty … by a corporation … nor a direct or indirect transfer or allocation of assets or liabilities effected under Chapter 3 (relating to entity transactions) or 19 (relating to fundamental changes) with the approval of the shareholders shall constitute a distribution for the purposes of this subpart").  The Merger was approved by Jones Group stockholders and effected pursuant to Chapter 19, and, therefore does not constitute a "distribution." *Id.*; (Ex E (Certificate of Merger, citing 15 Pa.C.S. § 1924(a)); The Jones Group Inc., Current Report (Form 8-K) (Apr. 8, 2014).[9]

---

[9]   A Certificate of Merger is properly considered on a motion to dismiss, *see In re Tribune Co. Fraudulent Conveyance Litig.*, 2019 WL 294807, at \*18 (S.D.N.Y. Jan. 23, 2019), as are public filings with the SEC.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *In*

Even if that were not true, a two-year statute of limitations applies to claims under Pennsylvania's unlawful distribution statute.  *See* 15 Pa.C.S. § 1551(d) (stating the "[l]imitation of actions" is two years); *In re Tri-State Telecomms., Inc.*, 2012 WL 4904537, at *9 (Bankr. E.D. Pa. Oct. 15, 2012) (citing 15 Pa.C.S. § 1551(d)) (dismissing claims under Pennsylvania's unlawful distribution statute as time-barred); *In re Nat'l Forge Co.*, 344 B.R. 340, 372 (W.D. Pa. 2006) (same).  The two year statute of limitations begins to run when the "'distribution' of which the trustee complains occurred."  *See Tri-State.*, 2012 WL 4904537, at *9.  Thus, the statute began to run on April 8, 2014, when Jones Group paid the Merger consideration (¶4) and expired on April 8, 2016, almost four years before the Litigation Trustee brought this action.

## CONCLUSION

For the reasons set forth above, the Former Non-Management Directors respectfully request that this Court grant the Former Non-Management Directors' Motion to Dismiss with prejudice.[10]

---

*re Gen. Motors*, 2005 WL 1089021, at *7 (finding that results of shareholder vote were "not subject to reasonable dispute" and therefore proper subject of judicial notice).

[10] *See Cortec Indus., Inc. v. Sum Hldg. L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").

Respectfully submitted,

DATED:  September 7, 2020

/s/ Scott D. Musoff
Scott D. Musoff (scott.musoff@skadden.com)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York  10001-8602
Tel.: (212) 735-3000
Fax: (212) 735-2000

Robert S. Saunders, *pro hac vice*
(rob.saunders@skadden.com)
Cliff C. Gardner, *pro hac vice*
(cliff.gardner@skadden.com)
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899-0636
Tel.: (302) 651-3000
Fax: (302) 651-3001

*Attorneys for Defendants Gerald C. Crotty, Robert L. Mettler, Robert & Susan Mettler Family Trust U/A 3/27/06, Robert L. Mettler, Susan T. Mettler, Trustees, Mary Margaret Hastings Georgiadis, Telendos, LLC, Ann Marie C. Wilkins, Sidney Kimmel, The Sidney Kimmel Revocable Indenture of Trust, John D. Demsey, Matthew H. Kamens, James A. Mitarotonda, Jeffrey D. Nuechterlein and Lowell W. Robinson.*

871933-WILSR01A - MSW